**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| GARRISON SOUTHFIELD PARK LLC, | Case No. 2:17-cv-783-EAS-EPD |
| Plaintiff, | CHIEF JUDGE EDMUND A. SARGUS, JR. |
| v. | |
| CLOSED LOOP REFINING AND RECOVERY, INC., et al., | MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| Defendants. | |

**MEMORANDUM OF PLAINTIFF GARRISON SOUTHFIELD PARK LLC
CONTRA THE MOTION TO DISMISS OF DEFENDANT MOSHE SILAGI**

Plaintiff Garrison Southfield Park LLC ("Garrison") hereby submits its memorandum in opposition to the motion (Doc. # 256) of Defendant Moshe Silagi ("Silagi") to dismiss Garrison's claims against Silagi in Garrison's First Amended Complaint (Doc. # 85) ("Complaint" or "Compl."). Garrison's claims against Silagi arise from Silagi's fraudulent conduct as the sole member and managing member of MS-South LLC ("MS-South") in selling a warehouse with illegally stockpiled hazardous waste to Garrison while representing that the warehouse had not been used "for the storage, treatment or disposal of Hazardous Substances." Then, over four years later, yet less than one month after Garrison filed this lawsuit, Silagi dissolved MS-South in an attempt to evade liability for his misconduct. Recognizing the fraudulent nature of this event, Silagi tellingly (and without support from the Complaint) attempts to defend the timing of this dissolution (at PageId # 1556 of his motion) as occurring "in the normal course of business." Silagi nevertheless argues that Garrison's Complaint does

not allege some of the facts necessary to pierce the corporate veil of MS-South and hold Silagi liable for his misdeeds.

The dissolution is an obvious example of Silagi's fraudulent conduct.  As stated in Complaint Paragraph 223, Silagi dissolved MS South to evade liability in this lawsuit.  The fact that Silagi dissolved the company less than a month after the lawsuit was filed as stated in Complaint Paragraph 222 provides a more than plausible inference that Silagi knew of the Complaint and was spiriting the company's assets away from Garrison.

As explained below, Silagi's pervasive control over MS-South justifies piercing the company's veil to hold Silagi personally liable for his misconduct.  Section 107(a)(2) of CERCLA imposes liability on "any person who at the time of disposal of any hazardous substance <u>owned</u> or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2) (emphasis added).  Paragraph 11 of the Complaint recounts that MS-South owned the warehouse at 1675 Watkins Road from prior to April 6, 2012 through on or about April 29, 2013 and during that time leased this warehouse to Closed Loop Refining and Recovery, Inc. ("Closed Loop").  During that time, Closed Loop was speculatively accumulating hazardous electronic wastes at the property without any feasible means of recycling them (Compl., ¶ 223), so the wastes were both hazardous wastes under the Resource Conservation and Recovery Act and the Ohio hazardous waste law corollary as well as hazardous substances under CERCLA, contrary to Silagi's representation.  *Id*., ¶¶ 86, 87, 94-104, 193-204.  For that reason, MS-South is liable as an "owner" under CERCLA Section 107(a)(2).  This owner liability should be imposed on Silagi by piercing MS-South's corporate veil as requested in Complaint Paragraph 821.

As explained below, the Complaint contains adequate facts in support of veil piercing to state a claim for relief that is plausible on its face, as required by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

**I.**      **The Complaint States Sufficient Grounds To Pierce The Corporate Veil Against Silagi For Misrepresenting The Environmental Status Of The Warehouse And For Fraudulently Conveying MS-South's Assets To Shield Them From Garrison's Claims.**

Piercing the corporate veil is a theory of corporate law that seeks to hold shareholders liable for a corporation's wrongdoing.  Under this theory, individual shareholders are held liable for a corporation's wrongs when their (1) control over the corporation was so complete that the corporation has no separate mind, will, or existence of its own, *i.e.*, the corporation is the individual's alter ego, (2) extreme misconduct in their control over the corporation was exercised in such a manner as to commit fraud, an illegal act, or a similarly unlawful act, and (3) injury or unjust loss resulted to the plaintiff.  *Belvedere v. Condominium Unit Owners' Ass'n v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 289, 617 N.E.2d 1075, 1086 (1993); *Dombroski v. WellPoint, Inc.,* 2008-Ohio-4827, ¶¶ 18, 29, 119 Ohio St.3d 506, 510-11, 513, 895 N.E.2d 538, 545.  Limited liability companies, like corporations, are subject to the doctrine of piercing the corporate veil.  *Denny v. Breawick, LLC*, 2019-Ohio-2066, ¶ 15, __ N.E.3d __ (citing other Ohio appellate cases).  The courts will pierce the corporate veil when "it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Id*., citing *Belvedere*, 67 Ohio St.3d at 287.

The Sixth Circuit has held that "when a corporation exists solely for the purpose of serving as an alter ego for its owners, the courts will not permit themselves to be blinded or deceived by mere forms or law." *Flynn v. Greg Anthony Constr. Co.*, 95 Fed.Appx. 726, 733-34 (6th Cir. 2003) (internal quotation marks omitted).  Rather, the courts "will deal with the

3

substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." *Id.*

      **A.**    **The Facts In Garrison's Complaint, If Proven, Would Justify A Finding That MS-South Was Moshe Silagi's Alter Ego Due To His Complete Control Over The Company And His Personal Involvement And Control Over Its Wrongful Activities.**

The first element of veil piercing is a restatement of the alter-ego doctrine, which requires that a plaintiff "show that the individual and the corporation are fundamentally indistinguishable." *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6th Cir. 2005), quoting *Belvedere*, 67 Ohio St.3d at 288, 617 N.E.2d at 1086. In deciding whether the company is an individual's alter ego, Ohio courts consider such factors as: (1) grossly inadequate capitalization, (2) failure to observe corporate formalities, (3) insolvency of the debtor corporation at the time the debt is incurred, (4) shareholders holding themselves out as personally liable for certain corporate obligations, (5) diversion of funds or other property of the company property for personal use, (6) absence of corporate records, and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder(s). *Taylor Steel*, 417 F.3d at 605; *Redhawk Glob., LLC v. World Projects Int'l, Inc.,* No. 2:11-CV-666, 2017 WL 4862485, at \*10 (S.D. Ohio, Sept. 26, 2017). However, "because of the equitable nature of the veil-piercing doctrine, no list of factors can be exclusive or exhaustive." *Carter-Jones Lumber Co. v. LTV Steel Co.,* 237 F.3d 745, 749 (6th Cir. 2001) (applying Ohio law).

In fact, none of these factors is necessary to demonstrate that a purported "company" like MS-South is a shareholder's alter ego. Although these factors are instructive, their presence is not required to pierce the corporate veil "where equity demands that the fiction of corporate personhood be ignored." *State ex rel. Petro v. Mercomp, Inc.,* 2006-Ohio-2729, ¶ 26, 167 Ohio App.3d 64, 71, 853 N.E.2d 1193, 1198, quoting *Carter-Jones*, 237 F.3d at 749. Accordingly, the

4

Sixth Circuit has rejected the argument that these factors are necessary to pierce the corporate

veil:

> Denune's argument, if we adopted it, would straightjacket the courts in
> situations where equity demands that the fiction of corporate personhood be
> ignored. Consider, for example, a case in which a corporation with a single
> shareholder kept immaculate corporate records, observed all the formalities
> required by corporate law, and was adequately capitalized. The shareholder
> never commingled funds, and never held himself out as personally liable for the
> corporation's debts. The corporation even does some legitimate business. Can
> it be that the shareholder is immunized from personal liability if he causes the
> corporation to commit an illegal act, no matter the degree of his control over the
> corporation with regard to the illegal act, no matter the harm to third parties, and
> no matter the other equities? Neither we nor the Ohio courts hold that such
> immunity exists.

*Carter-Jones*, 237 F.3d at 749; *accord Mercomp,* 2006-Ohio-2729, ¶ 26, 167 Ohio App.3d at 71,

853 N.E.2d at 1198 (quoting this language from *Carter-Jones*). Thus, this Court has noted that

"none of these factors is a prerequisite to a finding that the corporate form has been violated."

*Redhawk*, 2017 WL 4862485, at *13 (quoting *Transition Healthcare Assocs. v. Tri-State Health*

*Investors, LLC,* 306 Fed.Appx. 273, 280 (6th Cir. 2009)).

   Accordingly, the Sixth Circuit has held that, where necessary to prevent injustice, a

company may be deemed the alter ego of its owner under Ohio case law based solely on the

degree of control exercised by the wrongdoer over the corporation or the owner's involvement in

or control of the wrongful deed. *Carter-Jones*, 237 F.3d at 749 (citing *Janos v. Murduck,* 109

Ohio App.3d 583, 672 N.E.2d 1021 (1996) (finding the corporation to be an alter ego due to the

owner's control of the corporation, with an emphasis on the owner's control over the wrongful

act), and *Sintel, Inc. v. Budget Sys.,* No. 74249, 1999 WL 401409, at *9 (8th Dist., June 17, 1999)

(finding the corporation to be an alter ego solely due to the owner's complete control over the

corporation)).

   The Sixth Circuit also has advised that the piercing theory must be applied in a manner

that effectuates CERCLA's purpose:

> Congress enacted CERCLA with the intent of ensuring that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions.  Courts applying state veil piercing law in conjunction with a CERCLA action must keep this statute's broad legislative purpose in mind.

*Carter Jones*, 237 F.3d at 749 (quoting *AT & T Glob. Info. Sols. Co. v. Union Tank Car Co.,* 29 F. Supp.2d 857, 868 (S.D. Ohio 1998).

Consistent with this principle, the Sixth Circuit has observed that "Ohio courts have held that the existence of only a single shareholder can be a powerful indicator of that shareholder's exercising control so complete over the corporation that it had no separate mind, will or existence of its own." *Taylor Steel*, 417 F.3d at 607 (internal quotes omitted).  *Taylor Steel* cited three Ohio appellate decisions to illustrate this point: (i) *Stypula v. Chandler,* No.2002–G–2468, 2003 WL 22844296, at *2 (11th Dist., Nov. 26, 2003), *overruled on other grounds by Dombroski*, 2008-Ohio-4827, 119 Ohio St.3d 506, 895 N.E.2d 538 (*Stypula* noted that some Ohio courts have regarded an individual's status as the sole owner and director as sufficient to satisfy *Belvedere's* alter ego prong); (ii) *Zimmerman v. Eagle Mortg. Corp.,* 110 Ohio App.3d 762, 772, 675 N.E.2d 480, 486 (2d Dist. 1996) (basing its judgment that the corporation was the individual's alter ego solely on the individual's status as the company's sole stockholder and director); and (iii) *Intergy, Inc. v. Carrigan*, No. 62210, 1993 WL 127089, at *2 (8th Dist., Apr. 22, 1993) (basing its alter ego finding on the defendant's status as the sole owner and director of the company).  For the same reason, the first element in the *Belvedere* test was satisfied in *Mercomp* because the individual solely controlled the company as its sole shareholder, director, and officer.  *Mercomp,* 2006-Ohio-2729, at ¶ 23, 167 Ohio App.3d at 70-71, 853 N.E.2d at 1198.

The claims against Silagi expressed in Garrison's Complaint comply with the foregoing standards and are not subject to dismissal.  Consistent with *Carter-Jones*, *Taylor Steel*, and the Ohio case law cited therein, the Complaint identifies the following facts to establish that Silagi pervasively controlled MS-South and its wrongful acts:

63.     Defendant Silagi was the sole member and the managing member of MS-South LLC, which owned all right, title and interest in 1675 Watkins Road from prior to April 6, 2012, through on or about April 29, 2013.

214.    Defendant Silagi exercised exclusive control over MS-South LLC as the property owner of 1675 Watkins Road from prior to April 6, 2012, through on or about April 29, 2013.

215.    According to the State of California Secretary of State filings, Defendant Silagi exercised extensive and exclusive control over MS-South LLC, serving as its managing member, its sole member, and its registered agent for service of process.

216.    Defendant Silagi's current principal place of business for Silagi Development and Management Inc. is the same address listed on the Lease Agreement entered into by and between MS-South LLC and Defendant Closed Loop on or about April 6, 2012 for 1675 Watkins Road.

217.    Upon information and belief, Defendant Silagi managed, directed, and conducted the operations of MS-South LLC as they related to tenant disposal of hazardous waste and/or tenant compliance with environmental regulations.

218.    Defendant Silagi signed the Lease Agreement with Defendant Closed Loop for 1675 Watkins Road in the presence of a notary public on or about April 9, 2012; the Lease Agreement expressly permitted the "electronic recycling . . . of cathode ray tubes," which contain lead.

220.    Defendant Silagi thereafter misrepresented to Garrison in a Purchase and Sale Agreement ("PSA") dated April 29, 2013, that "[t]o Seller's knowledge, except as set forth on Schedule 3.1.10 . . . during Seller's term of ownership, the Property [which included 1675 Watkins Road] has not been used for industrial purposes or for the storage, treatment or disposal of Hazardous Substances (as hereinafter defined), other than products customarily used or stored incidental to the operation and/or maintenance of the Property, all of which are stored and used in accordance with all applicable Environmental Laws."

        a.      The PSA, Schedule 3.1.10, listed no scheduled exceptions.

        b.      The PSA defined "Hazardous Substances" to include "lead."

        c.      The PSA defined "to Seller's Knowledge" as "the actual current knowledge of Guarantor, after due inquiry of (i) the individuals in Seller's organization who have knowledge of the matters contained herein and (ii) Kevin McLewee, the general manager of the Property, and an employee of Cassidy Turley."

        d.      The PSA defined "Guarantor" as Defendant Silagi.

221. Defendant Silagi provided a guaranty in the PSA which "unconditionally guaranties to [Garrison] the full and faithful payment and performance by [Defendant MS-South LLC] of all of its obligations to [Garrison]," which obligations are "absolute, primary, unconditional and irrevocable."

222. MS-South LLC was dissolved on or about October 3, 2017, *i.e.*, less than one month after Garrison filed the original Complaint in this matter.

223. Upon information and belief, Defendant Silagi dissolved MS-South LLC in an effort to avoid liability in connection with the CRTs and other e-waste that were stockpiled and speculatively accumulated at 1675 Watkins Road during MS-South LLC's period of ownership from April 6, 2012 through April 29, 2013.

Under the mandated Rule 12 analysis, this Court is required to accept the factual allegations of the Complaint as true. *Redhawk*, 2017 WL 4862485, at *5.

Silagi's status as the sole member and managing member of MS-South is "a powerful indicator of that shareholder's exercising control so complete over the corporation that it had no separate mind, will or existence of its own," as that standard is expressed in *Taylor Steel*. As stated in *Taylor Steel* and the Ohio decisions cited therein, these facts alone may be enough to establish MS-South to be Silagi's alter ego. Silagi further revealed his control over MS-South by signing a personal guaranty for the company's obligations to Garrison under the purchase agreement and later dissolving the company in purview of the instant action. Compl., ¶¶ 220.d, 221, 222, 223. The identification of these facts is sufficient at the case's pleadings stage to withstand dismissal of Garrison's claims against Silagi.[1]

In addition, the Complaint recounts Silagi's personal involvement in and control over the fraudulent activities from which Garrison's claims against him arose. Silagi misrepresented to Garrison in April 2013 that the property had not been used for the storage, treatment or disposal of hazardous substances. Compl., ¶ 220. By that time, Closed Loop had been speculatively accumulating hazardous electronic wastes at the property since 2012, without any feasible means

---

[1] The fact that "MS" in "MS-South obviously stands for "Moshe Silagi" also indicates that the company was Silagi's alter ego.

of recycling them (*id*., ¶ 223), so the wastes were both hazardous wastes under the Resource

Conservation and Recovery Act and the Ohio hazardous waste law corollary as well as

hazardous substances under CERCLA, contrary to Silagi's representation.  *Id*., ¶¶ 86, 87, 94-104,

193-204.  Silagi also dissolved MS-South less than a month after Garrison filed this lawsuit in an

effort to avoid liability in connection with the wastes.  *Id*., ¶¶ 222, 223.  Under *Carter-Jones* and

the Ohio decisions cited therein, MS-South may be deemed to be Silagi's alter ego due to his

personal involvement and control over these wrongful deeds.

Even if the Court decides that the Complaint does not contain sufficient allegations about

Silagi's control over MS-South, the Court should not dismiss the claims against Silagi.  This

Court has repeatedly ruled that the question of whether a shareholder exercised a degree of

control over a corporation justifying a court's holding it accountable by veil piercing is a fact-

sensitive question which should not be answered until a plaintiff has had some opportunity to

conduct discovery on this matter.  *Allied Diversified Constr., Inc. v. Elite Mech., Inc.,* No.

1:16CV334, 2016 WL 7034238, at *4 (S.D. Ohio, Dec. 2, 2016); *Cap City Dental Lab, LLC v.

Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *12 (S.D. Ohio, Sept. 1, 2016); *Orrand v. Kin

Contractors, LLC*, No. 2:09 CV 1129, 2011 WL 1238301, at *4 (S.D. Ohio, Mar. 30, 2011).

Due to the importance of discovery in establishing the element of control, a plaintiff's complaint

will not be dismissed for failure to plead sufficient facts regarding the requisite level of control

necessary to hold the defendant personally liable.  *Allied*, 2016 WL 7034238, at *4; *Cap City

Dental Lab, LLC v. Ladd*, No. 2:15-CV-2407, 2016 WL 4573993, at *12; *Orrand*, 2011 WL

1238301, at *4.  Accordingly, even if a plaintiff's well-pleaded allegations are insufficient to

affirmatively establish the element of control under *Belvedere*, the Court declines to dismiss any

veil-piercing claims against a defendant on this sole basis at this stage.  *Allied*, 2016 WL

7034238, at *4–5; *Cap City,* 2016 WL 4573993, at *12.  Most of the facts demonstrating Silagi's

control over MS-South are particularly within Silagi's possession and cannot be unearthed without discovery.  Consequently, this is a case in which it would only be fair to provide Garrison with the opportunity to uncover additional facts about Silagi's control over his company.

> **B.** **The Complaint Satisfies The Second Element For Piercing MS-South's Veil By Alleging That Silagi Misrepresented The Contents Of The Warehouse And That He Fraudulently Dissolved MS-South In An Attempt To Evade Garrison's Claims.**

The second element of veil piercing is satisfied if extreme misconduct in an owner's control over the corporation was exercised in such a manner as to commit fraud, an illegal act, or a similarly unlawful act.  Silagi claims that the Complaint does not contain enough allegations about common law fraud to support this element.  However, Silagi's misconduct constitutes fraud that satisfies the second element of veil piercing in two respects, one of which constitutes common law fraud and another grounds that need not rely on common law fraud.

First, Silagi misrepresented to Garrison in a Purchase and Sale Agreement dated April 29, 2013, that "[t]o Seller's knowledge, except as set forth on Schedule 3.1.10 . . . during Seller's term of ownership, the Property [which included 1675 Watkins Road] has not been used for industrial purposes or for the storage, treatment or disposal of Hazardous Substances (as hereinafter defined), other than products customarily used or stored incidental to the operation and/or maintenance of the Property, all of which are stored and used in accordance with all applicable Environmental Laws." Compl., ¶ 220.  This misrepresentation is alleged with specificity (including the date of misrepresentation) in the Complaint and is set forth in Exhibit 1 to Silagi's motion.  Silagi knew that Closed Loop was storing hazardous substances other than products customarily used or stored incidental to the operation and/or maintenance of the Property, since he represented in the Purchase and Sale Agreement that he had made due inquiry with individuals in MS-South's organization who had knowledge of this matter.  Compl., ¶¶ 220,

220.c.  And if Silagi did not know that his representation was false, then he exhibited disregard and/or recklessness in making his statement, since the agreement required him to make the inquiries necessary to make this representation.  *See Volbers-Klarich v. Middletown Mgt., Inc.*, 2010-Ohio-2057, ¶ 27, 125 Ohio St.3d 494, 500, 929 N.E.2d 434, 440 (a fraudulent statement is "made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred").  Moreover, if Silagi did not conduct the inquiry necessary to determine the accuracy of his representation about hazardous substances, then he misrepresented that he had made "due inquiry" about this subject.  Compl., ¶¶ 220, 220.c.

The Complaint's allegations contain enough facts to state a claim for relief that is plausible on its face, as required by *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  Silagi obviously intended for Garrison to rely on his misrepresentation in order to persuade Garrison to purchase the building.  Equally obvious is the fact that Garrison relied on Silagi's false representation, because it would not have purchased a warehouse known to contain hazardous substances that would cost millions of dollars to remediate.  Garrison's reliance on Silagi's statement was justifiable, since Silagi represented that he had made due inquiry to determine that the electronic devices in the warehouse were not hazardous substances.

Second, Silagi's dissolution of MS-South satisfies the second element for veil piercing without the application of common law fraud.  A fraudulent conveyance under the Ohio Uniform Fraudulent Transfer Act in Ohio Revised Code ("R.C.") Chapter 1336 satisfies *Dombroski's* second element for veil piercing.  *Flagstar Bank, FSB v. Sellers*, 2010-Ohio-3951, ¶¶ 13-15, 23 (12th Dist.); *Stewart v. R.A. Eberts Co.,* 2009-Ohio-4418, ¶¶ 25-26 (4th Dist.).  R.C. § 1336.05(A) provides that a "debtor," which is defined by R.C. 1336.01(F) as "a person who is liable on a claim," is liable to the claimant for a "transfer" made after the claim arose if the

debtor became insolvent as a result of the transfer. R.C. § 1336.01(L) defines a "transfer" to include every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance. A debtor is liable for a fraudulent transfer without regard to intent and even in the absence of misrepresentation. *Wagner v. Galipo*, 50 Ohio St.3d 194, 197, 553 N.E.2d 610, 613 (1990). Instead, fraud is imputed to the debtor when the statutory elements of a fraudulent transfer have been met. *Stewart*, 2009-Ohio-4418, at ¶ 26.

Accordingly, the court in *Stewart* pierced the veil of a company whose owner ceased its operations and transferred its assets elsewhere to avoid liability. *Stewart*, 2009-Ohio-4418, at ¶ 23. The court found that this fraudulent transfer satisfied the second element for veil piercing. *Id.*

Ohio courts do not require allegations of fraudulent conveyance to be made with particularity, or even require such allegations to be alleged at all. *Id.*; *Flagstar Bank*, 2010-Ohio-3951, at ¶ 15. Nevertheless, the Complaint contains sufficient facts to demonstrate that Silagi's acts are a fraudulent conveyance under R.C. 1336.05(A).

The Complaint alleges that "MS-South LLC was dissolved on or about October 3, 2017, *i.e.*, less than one month after Garrison filed the original Complaint in this matter." Compl., ¶ 222. The Complaint further states that Silagi dissolved MS-South in an effort to avoid liability in connection with the electronic wastes that were stockpiled and speculatively accumulated at 1675 Watkins Road during MS-South's ownership from April 6, 2012 through April 29, 2013. *Id.*, ¶ 223. Garrison purchased the warehouse for "good and valuable consideration" on April 29, 2013. *Id.*, ¶64. The purchase agreement attached to Silagi's motion reveals that Garrison made a

12

large monetary payment to MS-South for this warehouse and other properties.  *See* Exh. 1, Pg. 2 of Silagi's motion.

As noted above and in the Complaint, Closed Loop had been speculatively accumulating leaded electronic wastes at the property since 2012 without any feasible means of recycling them (*id.*, ¶ 223), so the wastes were hazardous wastes under the Resource Conservation and Recovery Act and hazardous substances under CERCLA at the time Silagi sold the warehouse to Garrison. *Id.*, ¶¶ 86, 87, 94-104, 193-204.  Consequently, Garrison had a claim against MS-South under Section 107(a) of CERCLA, because it owned the warehouse at the time that hazardous substances were disposed of the facility.  42 U.S.C. § 9607(a) (imposing liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of").  Thus, any transfer by MS-South of the sale proceeds for the warehouse had to occur after Garrison's claim arose, thereby qualifying as a fraudulent transfer under R.C. § 1336.05(A).  This transfer left the defunct MS-South insolvent.  Silagi's fraudulent conveyance is fraud, an illegal act, or a similarly unlawful act that qualifies for the second element of veil piercing.

> **C.** **The Complaint Alleges That Silagi's Fraudulent Conduct Has Caused Garrison To Incur Remediation Costs, Thus Satisfying The Third Element For Piercing MS-South's Veil.**

The third prerequisite for piercing the veil is a showing that injury or unjust loss resulted to the plaintiff.  This injury occurred (i) when Garrison was stuck with a huge cleanup bill to address the hazardous substances in the warehouse, and (ii) when Silagi plundered MS-South's assets to prevent Garrison from obtaining the company's contribution to the remediation costs, sticking Garrison with a huge remediation bill.

As expressed by an Ohio appellate court, a person's asset transfer to avoid the cost of remediating wastes produces an unjust result that merits the application of the third piercing

element.  *Kays v. Schregardus*, 138 Ohio App.3d 225, 230–31, 740 N.E.2d 1123, 1127–28 (11th Dist. 2000).  In *Kays*, a person transferred a contaminated property from himself to shell corporations lacking the assets to remediate it.  The court pierced the corporations' veils to hold the owner liable, finding that his subterfuge would leave Ohio EPA "holding the proverbial bag for the cost of the cleanup, thus fulfilling the third prong of the *Belvedere* test."  *Id*. at 231, 740 N.E.2d at 1128.

The same principle applies to Silagi's misrepresentations about the contents of the warehouse and his transfer of MS-South's assets to avoid his responsibility for contributing to the warehouse remediation.  The Court should deny his attempt to insulate his funds from liability and allow Garrison to continue with its veil piercing action.

## II.      Conclusion

Silagi has sought to evade his fair share of remediation costs by thinly cloaking his activities with the veil of a limited liability company, pocketing the money Garrison paid to the company to purchase the warehouses, and then dissolving the company less than a month after Garrison filed this lawsuit.  Allowing Silagi to succeed in this scheme would circumvent CERCLA's intent to make all responsible parties pay their fair share to remediate contaminated facilities.  The Court should deny Silagi's attempt to sidestep his responsibility.

Respectfully submitted,

**VAN KLEY & WALKER, LLC**

/s/ Jack A. Van Kley
Jack A. Van Kley (#0016961)
Trial Attorney
132 Northwoods Blvd., Suite C-1
Columbus, Ohio 43235
Tel:  (614) 431-8900
Fax:  (614) 431-8905
Email:  jvankley@vankleywalker.com

14

Of Counsel:

**KATTEN MUCHIN ROSENMAN LLP**

/s/ Karl R. Heisler
Karl R. Heisler (*pro hac vice*)
525 West Monroe Street
Chicago, IL 60661-3693
Tel:  (312) 902-5430
Fax:  (312) 902-1061
Email:  karl.heisler@kattenlaw.com


**FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP**

/s/ Matthew Parrott
Matthew Parrott (*pro hac vice*)
One New York Plaza
New York, New York 10004
Tel:  (212) 859-8000
Fax:  (212) 859-4000
Email:  M.Parrott@friedfrank.com

Attorneys for Plaintiff Garrison
Southfield Park LLC


<u>**CERTIFICATE OF SERVICE**</u>

     The undersigned hereby certifies that, on August 2, 2019, a copy of the foregoing motion

was filed electronically with the Court's CM/ECF system, which will send notification to all

attorneys registered to receive such service.  Parties may access this filing through the Court's

electronic filing system.

/s Jack A. Van Kley
Jack A. Van Kley
Trial Attorney for Plaintiff
Garrison Southfield Park LLC

15