UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GARRISON SOUTHFIELD
PARK LLC,

        Plaintiff,

v.

CLOSED LOOP REFINING
AND RECOVERY, INC., *et al.*,

        Defendants.

Case No. 2:17-cv-783
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

OLYMBEC USA LLC,

        Plaintiff,

v.

CLOSED LOOP REFINING
AND RECOVERY, INC., *et al.*,

        Defendants.

Case No. 2:19-cv-1041
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on the Joint Motion for Approval of Settlement Agreements Executed by Plaintiff Garrison Southfield Park LLC ("Garrison"), Plaintiff Olymbec USA LLC ("Olymbec," along with Garrison referred to as "Plaintiffs"), and Defendants e-Lot Electronics Recycling, LLC, eRevival LLC, and eWorks Electronics Services, Inc. ("Settlors"). (17-cv-783, ECF No. 337; 19-cv-1041, ECF No. 259). Also before the Court is Defendant Waste Commission of Scott County, Iowa's ("Defendant Scott County") Motion for Joinder in the Kuusakoski Defendants' Request for Clarification of the Process for Approval of Future Settlements. (17-cv-783, ECF No. 344; 19-cv-1041, ECF No. 263). In addition, the Court will

rule on all Motions for Joinder in Support of the Kuusakoski Defendants' Memorandum in Opposition to Settlors' Joint Motion. (17-cv-783, ECF Nos. 355, 356, 359, 360, 368; 19-cv-1041, ECF Nos. 274, 275, 277, 278, 298).

For the reasons that follow, the Joint Motion is **GRANTED** (17-cv-783, ECF No. 337; 19-cv-1041, ECF No. 259); Defendant Scott County's Motion for Joinder is **DISMISSED as moot** (17-cv-783, ECF No. 344; 19-cv-1041, ECF No. 263); and the Motions for Joinder in support of the Kuusakoski Defendants are **GRANTED**. (17-cv-783, ECF Nos. 355, 356, 359, 360, 368; 19-cv-1041, ECF Nos. 274, 275, 277, 278, 298).

I.

These related cases arise under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"). (*See generally* First Am. Compl.). Plaintiffs allege that Defendants "collaborated in an elaborate sham recycling scheme that extended across the country to profit from the stockpiling and subsequent abandonment of more than 64,000 tons (128 million pounds) of hazardous electronic waste ("E-Waste")." (First Am. Compl. ¶ 2). According to Plaintiffs, "the costs of removing and/or remediating nearly 10 acres of hazardous e-waste at [Plaintiffs' properties] . . . will exceed $14.2 million." (*Id.*). Thus, Plaintiffs seek "declaratory relief, cost recovery, and common law damages resulting from environmental contamination caused by Defendant Closed Loop, Defendant Silagi, and the Arranger/Transporter Defendants at two contiguous warehouses owned by [Plaintiffs] and located at 1655 and 1675 Watkins Road, Columbus, Ohio 43207." (*Id.* ¶ 1).

Settlors filed their Joint Motion for Approval of Settlement Agreements on July 23, 2019. (17-cv-783, ECF No. 337-1; 19-cv-1041, ECF No. 259). On August 1, 2019, the Kuusakoski Defendants filed a Memorandum in Response to the proposed settlement agreement. (17-cv-783,

2

ECF No. 354; 19-cv-1041, ECF No. 273). Several other Defendants ("Joinder Defendants") subsequently joined in the Memorandum filed by the Kuusakoski Defendants. (17-cv-783, ECF Nos. 355, 356, 358, 359, 360, 368, 373; 19-CV-1041, ECF Nos. 274, 275, 276, 277, 278, 298, 303). Plaintiffs replied on August 12, 2019. (17-cv-783, ECF No. 394; 19-cv-1041, ECF No. 309). Accordingly, the Joint Motion is ripe for review.

## II.

"The general policy of the law is to support voluntary settlements." *United States v. Cantrell*, 92 F. Supp. 2d 718, 723 (S.D. Ohio 2000). In determining whether to approve a proposed settlement under CERCLA, the Court must determine whether it is "fair, reasonable and adequate[,] in other words, consistent with the purposes that CERCLA is intended to serve." *Responsible Envtl. Sol. All. v. Waste Mgmt, Inc.*, No. 3:04-cv-013, 2011 WL 382617, at *2 (S.D. Ohio Feb. 3, 2011) (quoting *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1989). *See also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990) ("the trial court's review function is only to satisfy itself that the settlement is reasonable, fair and consistent with the purposes that CERCLA is intended to serve").

"In *Akzo Coatings*, the Sixth Circuit stressed that in determining whether settlement is fair, reasonable and consistent with the purposes of CERCLA, the District Court must apply an arbitrary and capricious standard." *Responsible Envtl.*, 2011 WL 382617, at *2 (citing *Akzo Coatings*, 949 F.2d at 1426–1426). Thus, a CERCLA settlement "must be both procedurally and substantively fair." *Id.* (citing *Cannons Eng'g Corp.*, 899 F.2d at 86). It is not the court's "function to determine whether [a settlement] is the best possible settlement that could have been obtained." *Akzo Coatings*, 949 F.2d at 1436.

## III.

### A. Procedural Fairness

With respect to procedural fairness, "[t]here is a strong presumption in favor of voluntary settlements in CERCLA litigation." *United States v. 3M Co.*, No. 3:14-cv-32, 2014 WL 1872914, at *5 (S.D. Ohio May 8, 2014) (citing *Akzo Coatings*, 949 F.2d at 1436). "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Id.* at *3 (quoting *Cannons Eng'g Corp.*, 899 F.2d at 86). For instance, "[p]rocedural fairness requires that settlement negotiations take place at arm's length." *Id.* (quoting *In re Tutu Water Wells CERCLA Litigation*, 326 F.3d 201, 207 (3d Cir. 2003)). In addition, the "Court must determine that the negotiators bargained in good faith." *Cantrell*, 92 F. Supp. 2d at 724.

The Kuusakoski Defendants and Joinder Defendants do not contest the procedural fairness of the proposed settlements. (*See generally* Mem. in Resp.). Moreover, Settlors provide numerous facts to indicate the procedural fairness of the negotiation process. First, Settlors represent that "Plaintiffs' counsel have, by letter, electronic mail, and/or telephone, invited all of these [potentially responsible parties ("PRP")] to negotiate settlements to pay for the removal and remediation of the [E-Waste] that they contributed to the Facility." (Joint Mot. at 6) (citing 17-cv-783, Heisler Decl. ¶ 12, ECF No. 308-3; 17-cv-783, Womack Decl. ¶ 12, ECF No. 308-4). In addition, Settlors state that all parties to the proposed settlement agreements were represented by independent counsel during negotiations. (*Id.* at 7) (citing Womack Decl. ¶ 13; Defendants' Decl. ¶ 5). Finally, Settlors point out that the negotiations included "evaluations of Settlors' potential liability, the evidence tying Settlors to Plaintiffs' Facility, the defenses asserted by

4

Settlors, the potential legal fees and costs if settlement does not occur, and past and projected future remediation costs." (*Id.*) (citing Heisler Decl. ¶ 13; Womack Decl. ¶ 13).

Accordingly, the Court finds that the proposed settlements were negotiated at arm's length and in good faith. The procedural fairness prong of the CERCLA settlement analysis is satisfied.

**B. Substantive Fairness**

As noted by the United States Supreme Court in *Key Tronic Corp.*, "two of the main purposes of CERCLA [are to] prompt cleanup of hazardous waste sites and [the] imposition of all cleanup costs on the responsible party." 511 U.S. 809, 815 n.6 (1994) (quoting *Gen. Elec. Co. v. Litton Indus. Automation Sys., Inc.*, 920 F.2d 1415, 1422 (8th Cir. 1990) (abrogated on other grounds)). Thus, the Court considers whether Settlors' proposed settlement agreements are fair, reasonable, and consistent with these purposes.

In their Memorandum in Response, the Kuusakoski Defendants state they "do not object to the proposed settlements, assuming that the Kuusakoski [D]efendants reserve all rights and that the current proposed settlements do not establish a precedent that later settlements must contain the same settlement terms or utilize the same settlement formula." (17-cv-783, Mem. in Resp. at 2, ECF No. 354). In other words, "[w]hile the Kuusakoski Defendants do not object to these proposed settlements, given the early stage of this litigation, these defendants cannot judge and therefore do not agree that the settlements are 'fair[], reasonable[] and consisten[t] with the [CERCLA] statute." (*Id.* at 1).

First, the Kuusakoski Defendants argue "[n]o discovery has been taken by any party." (*Id.*). Accordingly, the Kuusakoski Defendants claim the "proposed settlements are based on Plaintiffs' <u>allegations</u> of the relative volume of material sent to the sites by each settlor." (*Id.* at

5

3) (emphasis in original). Second, the Kuusakoski Defendants point out that the proposed settlements are "likely more than the proportionate liability of those settlors because Plaintiffs' settlement methodology fails to consider the owner, operator, or transporter shares." (*Id.* at 4–5). Specifically, the Kuusakoski Defendants argue the proposed formula disregards "the owner (i.e., plaintiff) share." (*Id.* at 5). In the Kuusakoski Defendants' view, the proposed settlement formula incorrectly "has the settling arranger parties (only one of the four CERCLA categories of potentially responsible parties) splitting up 100 percent of the remediation costs as opposed to splitting only the 'arranger share' of the remediation costs." (*Id.*).

Third, the Kuusakoski Defendants maintain that other terms of the proposed settlements "should not be assumed fair or precedential." (*Id.* at 7). According to the Kuusakoski Defendants the scope of protection offered to Settlors may be insufficient because "the settlement agreements are not contingent on the settling parties receiving CERCLA § 122(f) covenant not to sue protection." (*Id.*). The Kuusakoski Defendants further contend that it "is too early, and unnecessary, to decide on a blanket application of [a pro tanto] approach [to the allocation of settlement proceeds.]" (*Id.* at 7–8).

Settlors contend that the proposed settlements are substantively fair. (Joint Mot. at 7). According to Settlors, "each Settlor has agreed to pay a percentage of the total cleanup costs equivalent to the percentage of the E-Waste attributed to the Settlor." (*Id.* at 8). In addition, Settlors note that the proposed agreements "contain reopeners that allow Plaintiffs to seek additional costs from each Settlor if new evidence reveals that the amount of Settlor's E-Waste generates cleanup costs that are substantially higher than the amount of E-Waste currently attributed to Settlor." (*Id.*). Settlors also reject the Kuusakoski Defendants' argument that the proposed settlements are based on mere allegations. (Reply at 6–8). Although Settlors

6

acknowledge that no formal discovery has taken place, they submit that settlement discussions began nearly two years ago. (*Id.*).

During the past two years Settlors maintain that: (1) they often exchanged weekly emails and telephone calls with the Kuusakoski and Joinder Defendants; (2) collectively discussed "environmental cleanup estimates, the proposed approach for environmental cleanup, related litigation, ongoing negotiations with the Ohio Attorney General's Office, . . . and the terms and conditions of a potential settlement[;]" (3) produced thousands of pages of records to the Kuusakoski Defendants; and (4) permitted the Kuusakoski Defendants to conduct "multiple site visits a the Plaintiffs' properties . . . [to observe] firsthand perhaps the most critical 'evidence' in this case.'" (*Id.* at 6–7). Settlors assert that the same records and information was provided to all Joinder Defendants, with the exception of Defendants Accurate IT Services Ltd., Environmental Coordination Services & Recycling, Inc., and the Waste Commission of Scott County, Iowa, who declined invitations to negotiate in September 2017. (*Id.* at 7).

Settlors also contend "there is no basis for the assertion that the proposed settlement agreements and the settlement strategy disregard Plaintiffs' liability." (Reply at 10). Settlors argue that Plaintiffs are potentially liable for a portion of the "orphan share" of PRPs who have declared bankruptcy. (*Id.*). Moreover, Settlors aver that Plaintiffs have: (1) funded the litigation, (2) funded the acquisition of Defendant Closed Loop's records, (3) born the costs of drafting and negotiating the settlement agreements, and (4) have suffered significant financial losses from Defendants' operations, justifying a lower allocation of liability. (*Id.* at 10–11).[1]

---

[1] Settlors distinguish the current facts from *Carolina Pines I, LLC v. City of Abbeville Pub. Works*, No. 142-3:16-cv-01124-TLW (D.S.C. Nov. 14, 2018), a case cited by Defendants. In *Carolina Pines*, the District of South Carolina found that the defendants' CERCLA response cost allocation should be reduced by 60% based on the plaintiff's own liability. *Id.* at 26. However, unlike the facts before the Court, Settlors note that the *Carolina Pines* property owner had exclusive access to the property and "ultimately benefitted from the timely clean up of the e-waste" when it sold the affected warehouse. *Id.* at

7

Settlors further contend they: (1) cannot account for operator liability because "Defendant Closed Loop is defunct and all three of its principals declared bankruptcy[;]" and (2) are not aware of any transporters that "'selected' Plaintiffs' properties as the site for treatment or disposal, in keeping with the requirements for transporter liability [under] CERCLA." (*Id.* at 12–13). Finally, Settlors maintain that the "settlement terms are fair and warrant precedential consideration." (*Id.* at 13). First, Settlors argue that "the Kuusakoski Defendants have no standing to complain about the scope of contribution protection provided to other PRPs." (*Id.* at 14). In their view, a settlement agreement can be fair, reasonable, and consistent with the purposes of CERCLA in the absence of a covenant not to sue under CERCLA § 122(f). (*Id.*). Second, Settlors argue that this Court has previously found "the pro tanto approach is more conducive to achieving CERCLA's goals of early settlement and private remediation of hazardous waste sites." (*Id.*) (quoting *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (S.D. Ohio Apr. 18, 2016)) (Exhibit F, ECF No. 337-7). Thus, Settlors aver their proposed settlements should be upheld as substantively fair. (Joint Mot. at 7).

### 1. Is the Apportionment of Liability Fair and Reasonable?

Settlors' arguments are well taken. When reviewing the Settlors' proposed settlement agreements under the arbitrary and capricious standard, the Court need only consider whether there is "some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Responsible Envtl.*, 2011 WL 382617, at *2 (quoting *Cannons Eng'g Corp.*, 899 F.2d at 87). Here, Settlors present sufficient evidence to suggest their proposed apportionment of

---

24. Here, Settlors argue the Ohio Environmental Protection Agency ("EPA") routinely inspected the property. (Reply at 11). In addition, Settlors point out that Plaintiffs have suffered severe financial losses from Defendants' operations. (*Id.*).

8

liability is fair and reasonable. For one, Settlors provide affidavits from Karl Heisler and Randall Womack, the attorneys representing Garrison and Olymbec in this matter. (Heisler Decl. ¶ 2–3; Womack Decl. ¶ 2–3). Both Mr. Heisler and Mr. Womack testified as follows:

> Plaintiffs are using a straightforward cost recovery formula in settlement negotiations that allocates a percentage of the remediation costs to each PRP based on records that identify the total weight of E-Waste that the PRP shipped to the Facility, as compared to the total weight of the E-Waste shipped by all PRPs. Plaintiffs then applied this percentage to the estimated combined cleanup costs of $18,371,174.98. Using this formula, Plaintiffs have calculated each Settlor's fair share for settlement purposes to be the Settlement Amount listed in Appendix A to the Settlement Agreements, and each Settlor has agreed to pay this amount.

(Heisler Decl. ¶ 11; Womack Decl. ¶ 11) (footnote omitted).

In addition, both Mr. Heisler and Mr. Womack represent that all PRPs were invited "to negotiate settlements to pay for the removal and remediation of the E-Waste that they contributed to the Facility, except for bankrupt, dissolved, or defunct PRPs and PRPs that sent a *de minimus* amount of E-Waste that will cost no more than $6000 to remediate." (Heisler Decl. ¶ 12; Womack Decl. ¶ 12). Mark Granger, counsel for settling Defendant Arrow Recovery Group, testified that when negotiating the proposed settlement agreement, "Settlor considered its potential liability, the evidence tying Settlor to Plaintiffs' warehouses, Settlor's defenses, the potential legal fees and costs if settlement were not reached, and past and projected future cleanup costs for Plaintiffs' warehouses." (Granger Decl. ¶ 6, ECF No. 308-5).

Examining these facts, the Court finds that Settlors rationally apportioned liability in their proposed settlement agreements. The percentage of liability attributed to each PRP is based on information currently available to the parties, i.e., the total weight of E-Waste that each PRP shipped to Plaintiffs' properties. Other courts have upheld this volumetric approach as reasonable. *See Cannons Eng'g*, 899 F.2d at 88 ("[Settlors] adhere generally to principles of comparative fault according to a volumetric standard, determining the liability of each PRP

9

according to volumetric contribution. And, to the extent they deviate from this formulaic approach, they do so on the basis of adequate justification"); *see also United States v. Rohm & Haas Co.*, 721 F. Supp. 666, 687 (D. N.J. 1989) ("[t]he volumetric share and concomitant dollar sum which underlie this settlement do, it seems to [the court], reside comfortably within the plausible parameters of those settlors' potential equitable liability, be it high or low").

Moreover, the fact that the Settlors' liability apportionments are imprecise estimates is not dispositive. *See Responsible Envtl.*, 2011 WL 382617, at *2; *see also Rohm*, 721 F. Supp. at 685 ("[w]e need not determine if the settlement precisely reflects what we feel to be the settlors' most likely volumetric share of the waste dumped at [the plaintiff's property]. Such a finding would be akin to that made at trial and would involve no savings in terms of judicial or enforcement resources"). Finally, the Kuusakoski Defendants' argument that the Plaintiffs' methodology fails to consider owner, operator, or transporter shares is not well taken. As this Court noted in *Responsible Environmental*, "the Court is not determining whether such liability can be imposed upon any one [PRP] or more or all of them. Rather, the Court is assessing whether the Plaintiff's position that such liability [can or] cannot be imposed is objectively reasonable." 2011 WL 382617, at *3.

Settlors explain that Plaintiffs should bear a reduced liability apportionment because: (1) they have not benefitted from any clean-up efforts; (2) they did not have exclusive access to the affected properties; and (3) they are funding this litigation, as well as ongoing negotiations. Similarly, Settlors offer a reasonable explanation as to the absence of operator or transporter liability. If operator Defendant Closed Loop and its operator subsidiaries are defunct, Plaintiffs cannot recover from them. Furthermore, Plaintiff plausibly indicates that it is not aware of any transporter Defendants who selected Plaintiffs' properties for e-waste disposal. Thus, Plaintiff

10

reasonably contends there are no transporter defendants pursuant to CERCLA § 107(a)(4).[2] Consequently, the Court concludes Settlors' liability allocation in the proposed settlement agreements is fair and reasonable.

### 2. Are the Proposed Terms Inconsistent with the Purposes of CERCLA?

The Court finds Settlors' proposed terms consistent with the purposes of CERCLA. As noted *supra*, Congress enacted CERCLA in order to effectuate the "prompt cleanup of hazardous waste sites and [the] imposition of all cleanup costs on the responsible party." *Key Tronic*, 511 U.S. at 815 n.6. First, the Court agrees with Settlors that CERCLA § 122(f), or 42 U.S.C. § 9622(f), does not apply to settlement agreements between private parties. The statute states that: "[t]he President may, in his discretion, provide any person with a covenant not to sue concerning any liability to the United States under this chapter, including future liability." 42 U.S.C. § 9622(f). Here, Settlors are all private parties. Moreover, even if this instant action involved the United States, nothing in § 122(f) requires the imposition of a covenant not to sue.

Second, this Court has previously upheld CERCLA settlement agreements utilizing a pro tanto approach. *Hobart*, No. 3:13-cv-115, at *12 (Exhibit F). In *Hobart*, this Court explained the pro rata and pro tanto methodologies as follows:

> The [pro rata] approach, embodied in the Uniform Comparative Fault Act ("UCFA"), reduces the plaintiffs' claims against the non-settling defendants by the amount of the settling defendant's proportionate share of fault, as later determined at trial. Because the non-settling defendants are held responsible for their own proportional share, the plaintiffs must absorb any shortfall if they settle for too little. *AmeriPride Servs. Inc. v. Texas Eastern Overseas Inc.*, 782 F.3d 474, 483–84 (9th Cir. 2015).

---

[2] CERCLA § 107(a)(4), or 42 U.S.C. § 9607(a)(4), defines "transporter" as follows:

> any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for—

11

> In contrast, the pro tanto approach, embodied in the Uniform Contribution Among Tortfeasors Act ("UCATA"), reduces the plaintiffs' claims against the non-settling defendants by the dollar value of the settlement. Under this scenario, if the plaintiffs settle for too little, all non-settling PRPs bear the risk of being liable for more than their fair share of the response costs.

*Hobart*, No. 3:13-cv-115, at *2–*3 (Exhibit F).

The *Hobart* court noted the pro tanto approach facilitates the purposes of CERCLA because it "encourages early settlement by 'placing the risk of lenient settlements on PRP holdouts,' who know that they may be called upon to make up any shortfall." *Id.* at 5 (quoting *Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288, 326 (E.D. Pa. 23006). In addition the *Hobart* court pointed out that the pro tanto approach "encourages private remediation of hazardous waste sites, because private parties who undertake clean-up efforts are more likely to be able to completely recoup their response costs." *Id.* Finally, the *Hobart* court stated that a pro rata or proportionate share analysis can be a very "complex and unproductive inquiry and may be unrealistic in situations where waste was deposited by hundreds of polluters for years, if not decades, prior to the litigation." *Id.* at 7 (quoting *American Cyanamid Co. v. Capuano*, 381 F.3d 6, 20 (1st Cir. 2004) (internal quotations omitted).

As the Court understands the Kuusakoski Defendants' position, they and the Joinder Defendants do not oppose the application of a pro tanto method in the proposed settlement agreements presently before the Court. However, the Kuusakoski Defendants request the right to object to any future applications of the pro tanto approach. (Reply at 7–8). At this stage in the litigation, the Court need not decide on a blanket application of a pro rata or pro tanto approach. When future settlors would like to apply a specific methodology, they are free to submit that proposal to the Court. Likewise, the Kuusakoski Defendants are free to object in accordance with the Court's July 23, 2019 Order. (17-cv-783, ECF No. 341). However, the Court notes that

its decision in this instance will weigh in favor or against the application of a pro tanto approach in future settlement agreements. In *AmeriPride*, the Ninth Circuit stated that:

> Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion . . . Because a district court's chosen method will likely affect parties' decisions to settle or contest a proposed settlement, once a district court selects a method in a final order approving a settlement agreement, failing to follow that approach may produce a result that is inequitable and inconsistent with CERCLA's goals.

*AmeriPride*, 782 F.3d at 488.

The Court finds the application of the pro tanto approach in these particular settlement agreements is consistent with the purposes of CERCLA. Of the original 52 Defendants in the Garrison litigation (17-cv-783), only a handful have settled. A pro tanto methodology will encourage faster settlements, and a faster clean-up of the e-waste, by shifting the financial risks of an overly lenient settlement to the non-settling Defendants. In addition, a pro rata analysis may be unrealistic under the present circumstances. Although the Garrison litigation has been pending since September 2017, the Olymbec litigation began in March 2019. Discovery is not complete in either case. In fact, the Court only consolidated the cases for fact discovery on May 29, 2019. (ECF No. 119). Although Plaintiffs do not allege that Defendants have mishandled e-waste for decades like the defendants *American Cyanamid*, they do allege that misconduct extends back to 2014. (19-cv-1041, Compl. ¶ 3). Accordingly, any attempt to conduct a pro rata analysis at this time could yield significant inaccuracies.

Because the Court finds the contested terms of the proposed settlement agreements, i.e., the allocation of liability, absence of a covenant not to sue, and application of pro tanto, are fair, reasonable, and consistent with the purposes of CERCLA, the proposed agreements are substantively fair. Accordingly, the Court finds the following:

1. Settlors' Joint Motion is **GRANTED**.

2. Settlors' Settlement Agreements, attached as Exhibit A, are approved, and the terms and conditions of the Settlement Agreements are hereby incorporated by reference into this Order as if fully restated herein.

3. Except for the exceptions stated in the Settlement Agreements, all claims asserted, to be asserted, or which could be asserted against Defendants by persons who are defendants or third-party defendants in this case (whether by cross-claim or otherwise) or by any other person or entity (except the U.S. Environmental Protection Agency ("U.S. EPA"), the United States acting on U.S. EPA's behalf, the Ohio Environmental Protection Agency ("Ohio EPA"), and the State of Ohio acting on Ohio EPA's behalf) in connection with the presence, generation, transportation, storage, treatment, disposal, abandonment, release, threatened release, removal, remediation, monitoring, or engineering control of electronic waste at, to or migrating from Garrison's properties located at 1655 and 1675 Watkins Road in Columbus, Ohio and Olymbec's property located at 2200 Fairwood Avenue in Columbus, Ohio under Sections 107 or 113 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9607 and § 9613, and/or any other federal, state or local statute, regulation, rule, ordinance, law, contract, common law, or any other legal theory are hereby discharged, barred, permanently enjoined, dismissed with prejudice, satisfied, and are otherwise unenforceable in this case or in any other proceeding.

4. The payments by Defendants to Plaintiffs shall be credited *pro tanto,* and not *pro rata,* during any equitable allocation of response costs among liable parties by the Court in this matter pursuant to 42 U.S.C. § 9613(f)(1). The liability of the remaining liable parties shall accordingly be reduced by the dollar amount of Defendants' settlement payments, and the Court need not determine Defendants' proportionate share of liability.

5. Defendants are dismissed from this lawsuit.

6. Pursuant to the authority contained in *Kokkonen* v. *Guardian Life Ins. Co. of America,* 511 U.S. 375 (1994), this Court hereby retains jurisdiction and shall retain jurisdiction after entry of final judgment in this case to enforce the terms and conditions of the Settlement Agreements.

## IV.

The Court issued an Order in response to the Kuusakoski Defendants' Request for Clarification of Process for Approval of Future Settlements (17-cv-783, ECF No. 328) on July 23, 2019. (17-cv-783, ECF No. 341). Accordingly, Scott County's Motion for Joinder in the Kuusakoski Defendants' Request is **DISMISSED as moot**. (17-cv-783, ECF No. 344; 19-cv-1041, ECF No. 263).

## V.

For the reasons stated above, Settlors' Joint Motion for Approval of Settlement Agreements is **GRANTED** (17-cv-783, ECF No. 337; 19-cv-1041, ECF No. 259); Defendant Scott County's Motion for Joinder is **DISMISSED as moot** (17-cv-783, ECF No. 344; 19-cv-1041, ECF No. 263); and the Motions for Joinder in support of the Kuusakoski Defendants are **GRANTED.** (17-cv-783, ECF Nos. 355, 356, 359, 360, 368; 19-cv-1041, ECF Nos. 274, 275, 277, 278, 298). The Clerk is **DIRECTED** to remove Defendants E-Lot Electronics Recycling, LLC; eRevival LLC; and eWorks Electronics Services, Inc. from Case No. 17-cv-783 and Case No. 19-cv-1041.

**IT IS SO ORDERED.**

\_\_\_8-21-2019\_\_\_  
DATE

EDMUND A. SARGUS, JR.  
CHIEF UNITED STATES DISTRICT JUDGE

15