**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| GARRISON SOUTHFIELD PARK LLC, <br><br> Plaintiff, <br><br> v. <br><br> CLOSED LOOP REFINING AND RECOVERY, INC., *et al*., <br><br> Defendants. | Case No. 2:17-cv-783-EAS-EPD <br><br> JUDGE EDMUND A. SARGUS, JR. <br><br> CHIEF MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| OLYMBEC USA LLC, <br><br> Plaintiff, <br><br> v. <br><br> CLOSED LOOP REFINING AND RECOVERY, INC., *et al*., <br><br> Defendants. | Case No. 2:19-cv-1041-EAS-EPD <br><br> JUDGE EDMUND A. SARGUS, JR. <br><br> CHIEF  MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |

**MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT EXECUTED**
**BY PLAINTIFF GARRISON SOUTHFIELD PARK LLC, PLAINTIFF**
**OLYMBEC USA LLC, AND DEFENDANT COMPUPOINT USA, LLC**

Plaintiff Garrison Southfield Park LLC ("Garrison"), Plaintiff Olymbec USA LLC ("Olymbec," along with Garrison referred to as the "Plaintiffs"), and Defendant CompuPoint USA, LLC ("Settlor") move the Court to enter an Order approving the Settlement Agreement between Plaintiffs and Settlor.  This motion is supported by the attached Memorandum and the attached Settlement Agreement.

For the Court's convenience, a proposed order has been attached hereto.

<u>**MEMORANDUM IN SUPPORT**</u>

**I.     <u>Background</u>**

Plaintiffs and Settlor have negotiated a settlement and seek the Court's approval of the

Settlement Agreement attached hereto as Exhibit A ("the Settlement Agreement").  The

Settlement Agreement resolves Plaintiffs' claims against Settlor pursuant to Section 107 of the

Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42

U.S.C. § 9607, and Ohio common law, for past and future costs to clean up cathode ray tubes

and other electronic wastes (collectively, "E-Waste") at Garrison's two contiguous warehouses

located at 1655 and 1675 Watkins Road in Columbus, Ohio and at Olymbec's warehouse located

at 2200 Fairwood Avenue in Columbus, Ohio (collectively, the "Facility").

Defendant Closed Loop Refining and Recovery, Inc. ("Closed Loop") leased the Facility

or portions thereof from the Plaintiffs, and Closed Loop and/or Closed Loop Glass Solutions (an

affiliate of Closed Loop) then received, stockpiled, and abandoned E-Waste received from their

customers at the Facility.  Declaration of Karl R. Heisler ("Heisler Decl."), ¶¶ 4, 6 (Exhibit B);

Declaration of Randall B. Womack (Womack Decl."), ¶¶ 4, 6 (Exhibit C).  Plaintiffs allege that

the E-Waste constitutes hazardous substances subject to CERCLA, based on total lead content

from samples collected from the Facility and common industry knowledge.  Heisler Decl., ¶ 7;

Womack Decl. ¶ 7.  Plaintiffs retained consultants to estimate the total weight of E-Waste in the

Facility and to estimate the necessary costs that Plaintiffs will incur to remove it, to lawfully

dispose of it, and to decontaminate the Facility by removing the lead dust deposited on the floors,

walls, columns, rafters, and contents, all consistent with the U.S. Environmental Protection

Agency National Contingency Plan at 40 C.F.R. Part 300.  Heisler Decl. ¶ 8;  Womack Decl., ¶

8.  The consultants estimate that the Facility contains approximately 159,104,489 pounds (79,552

tons) of E-Waste, and that the response costs will be approximately $22,248,442.[1]  Heisler Decl., ¶¶ 8, 9, 11;  Womack Decl., ¶¶ 8, 9, 11.

Plaintiffs have obtained Closed Loop records providing detailed accounts of the weight of E-Waste that Closed Loop received from its customers, including accounting spreadsheets, commodity purchase agreements, bills of lading, weight tickets, purchase orders, and related shipping documentation.  Heisler Decl., ¶ 6;  Womack Decl., ¶ 6.  According to these records, and as confirmed by Settlor's reasonable inquiry, Settlor arranged for the transport of the weight of E-Waste to the Facility that appears in Appendix A to its Settlement Agreement, which is 2,926,499 lbs.  Heisler Decl., ¶ 6; Womack Decl., ¶ 6.

Plaintiffs have been using a straightforward cost recovery formula in settlement negotiations that allocates a percentage to each potentially responsible party ("PRP") based on records that identify the total weight of E-Waste that the PRP shipped to the Facility, as compared to the total weight of the E-Waste shipped to the Facility by all PRPs.  Heisler Decl., ¶ 11;  Womack Decl., ¶ 11.  Plaintiffs then applied this percentage to the estimated cleanup costs of $22,248,442.  Heisler Decl., ¶ 11; Womack Decl., ¶ 11.  Using this formula, Plaintiffs calculated Settlor's share for settlement purposes at $494,948.  Heisler Decl., ¶ 11;  Womack Decl., ¶ 11.  Plaintiffs, however, have noted in prior motions for approval of settlement agreements that Plaintiffs may make exceptions to this formula for some PRPs when circumstances warrant, such as a PRP that is unable to pay its allocated share.

Settlor has informed Plaintiffs that Settlor is unable to pay the share assigned to its E-

---

[1] The removal preliminary assessments estimated response costs at approximately $18,371,174.98, which provided the basis for settlements previously submitted to the Court for judicial approval. Heisler Decl., ¶ 8; Womack Decl., ¶ 8. Based on the removal assessment subsequently conducted for purposes of the CERCLA action memoranda and hazardous waste closure plans, the estimate was updated and revised to $22,248,442.  Heisler Decl., ¶ 8; Womack Decl., ¶ 8.

Waste contributions at the Facility under Plaintiffs' cost recovery formula and has provided Plaintiffs with copies income tax returns evidencing financial conditions of the Settlor over the last five (5) years to demonstrate this point. Declaration of Murtaza Dohadwala ("Dohadwala Decl."), ¶ 6 (Exhibit D). Plaintiffs have examined these financial records and concur with Settlor's representation. Heisler Decl., ¶ 11; Womack Decl., ¶ 11.

Settlor has also informed Plaintiffs, however, that Settlor is able to compensate Plaintiffs for most of its share through the provision of in-kind, electronic waste recycling services. As in-kind services for its share of the environmental cleanup costs at the Facility, and at no cost to Plaintiffs, Settlor has agreed to collect, transport, and recycle 2,926,499 lbs of E-Waste from the Facility in compliance with federal, state, and local law. Heisler Decl., ¶ 11; Womack Decl., ¶ 11. Settlor has further agreed to provide such services starting no later than thirty (30) days after the Effective Date of the Settlement Agreement and on a schedule of no less than 250,000 lbs of E-Waste per week thereafter, unless otherwise agreed to in a written modification entered into by the Parties pursuant to Section 13(h) of the Settlement Agreement. Heisler Decl., ¶ 11; Womack Decl., ¶ 11. Taking into consideration the market rate of such services and the nature and quantity of E-Waste to be recycled, Plaintiffs have valued these in-kind services at approximately $400,000. Heisler Decl., ¶ 11; Womack Decl., ¶ 11.

To facilitate the arrangement, Plaintiffs have agreed to make arrangements to pay Settlor per-pound processing fees to recycle an additional 2,926,499 lbs of E-Waste, with all costs of collection and transport to be borne by Settlor. Heisler Decl., ¶ 11; Womack Decl., ¶ 11. Such payments shall be shall be based on prevailing market rates for similar services and shall be made via escrow accounts pursuant to escrow agreements between Plaintiffs and the State of

Ohio EPA set up for purposes of funding the cleanup effort with settlement proceeds from other settlors.  Heisler Decl., ¶ 11; Womack Decl., ¶ 11.

The remaining portion of the share assigned to Settlor for E-Waste contributions to the Facility (*i.e.*, approximately $94,948) cannot be funded from company assets or any projected cashflow that might occur in the near future, after taking into account the costs Settlor will incur to perform the services, which include transportation costs projected to exceed $250,000. Dohadwala Decl., ¶ 6. Settlor does not foresee any opportunity to raise these additional funds through its current or anticipated operations. *Id*., ¶ 6. Consequently, Plaintiffs have agreed to settle their claims against Settlor for in-kind services valued at approximately $400,000. See Appendix A of the Settlement Agreement.

This Court has ruled that it is reasonable to consider a defendant's compromised financial position when evaluating the fairness of CERCLA settlements.  *See, e.g., Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc*., 2011 WL 382617, No. 3:04-cv-013, *3-*4, *10 (S.D. Ohio, Feb. 3, 2011); *United States v. Atlas Lederer Co*., 494 F. Supp.2d 629, 637-38 (S.D. Ohio 2005).  Based on Settlor's limited ability to pay, Plaintiffs and Settlor agree that the Settlement Agreement is fair, adequate, and reasonable.

It is also worth noting that the State of Ohio will not object to the Settlement Agreement and will consider Settlor's CERCLA liability to the State of Ohio satisfied, subject to certain preconditions, including this Court's issuance of contribution protection pursuant to CERCLA Section 113(f)(1).  *See* Exhibit G.

Plaintiffs and Settlor now ask the Court to approve the Settlement Agreement.  Pursuant to Section 6 of the Settlement Agreement, consummation of the settlement is contingent on the Court's entry of an Order providing that the value of Settlor's in-kind services for settlement be

credited *pro tanto*, and not *pro rata*, in determining the equitable share of defendants other than Settlor. Plaintiffs and Settlor ask the Court to enter an Order to that effect.

Plaintiffs and Settlor also request the Court to discharge and/or bar all past, present, and future counterclaims, cross-claims and other claims against Settlor relating to the Facility, including any claims which have been or which could be made by any party to this case or any other person, except for certain claims listed in Paragraphs 4 and 9 of the Settlement Agreement. These exceptions include a reopener in Paragraph 9 if new information reveals the weight of materials attributable to Settlor is twenty percent (20%) or more in excess of the weight of materials identified in Appendix A to the Settlement Agreement, or that the weight of materials attributable to Settlor is at least 50,000 lbs in excess of the weight of the materials identified in Appendix A to the Settlement Agreement, whichever is lower. This reopener is designed to make sure that Settlor pays its fair share even if evidence obtained in future discovery discloses that the Settlor is responsible for a quantity of E-Waste not considered in calculating the settlement amount in the Settlement Agreement.

## II.  **Argument**

### A.  **The Settlement Agreement Should Be Approved By The Court Because Settlements Are Favored, And The Settlement Agreement Is Fair, Is Reasonable, And Satisfies The Requirements of CERCLA.**

"The general policy of the law is to support voluntary settlements." *United States v. Cantrell*, 92 F. Supp.2d 718, 723 (S.D. Ohio 2000) (approving CERCLA consent decrees). *See also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("In the first place, it is the policy of the law to encourage settlements"). While a trial court must evaluate a settlement agreement, "public policy generally supports 'a presumption in favor of voluntary settlement' of litigation." *United States v. Lexington-Fayette Urban County Gov't*, 591 F.3d 484, 490 (6th Cir. 2010), *quoting United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991).

The Sixth Circuit has stated that the district courts must evaluate a CERCLA settlement for "fairness, reasonableness and consistency with the statute." *Akzo Coatings*, 949 F.2d at 1426. *Accord, Cannons Eng'g*, 899 F.2d at 85. The same standards apply to CERCLA settlements between private parties. *Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, 2011 WL 382617, No. 3:04-cv-013, *2 (S.D. Ohio, Feb. 3, 2011).

A district court is not required to delve into the fine points of a settlement, or to determine if other options are available. It is not the court's "function to determine whether [a settlement] is the best possible settlement that could have been obtained, but only whether it is fair, adequate and reasonable." *Akzo Coatings*, 949 F.2d at 1436. As explained in Subsections 1 through 4 below, the proposed settlement is fair, reasonable, and consistent with CERCLA.

### 1.    The Settlement Negotiations Satisfy Procedural Fairness.

A CERCLA settlement "must be both procedurally and substantively fair." *Responsible Envtl. Solutions*, 2011 WL 382617 at *2, *citing Cannons Eng'g*, 899 F.2d at 86. With respect to procedural fairness, "[t]here is a strong presumption in favor of voluntary settlements in CERCLA litigation." *United States v. 3M Co.*, 2014 WL 1872914, at *5, No. 3:14-cv-32 (S.D. Ohio, May 8, 2014), *citing Akzo Coatings*, 949 F.2d at 1436.

The procedural component is satisfied if the negotiations were conducted fairly. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons Eng'g*, 899 F.2d at 86. While "there can be no easy-to-apply check list of relevant factors" to measure fairness, one factor to be considered is whether all defendants have "had an opportunity to participate in the negotiations." *Id.* at 86-87. "The Court must determine that the negotiators bargained in good faith." *Cantrell*, 92 F. Supp.2d at 724, *citing Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507,

517 (W.D. Mich. 1989).  *See also Cantrell*, 92 F. Supp.2d at 724 ("The Court should gauge the candor, openness, and bargaining balance of the negotiations," *citing Cannons Eng'g*).

In this case, Plaintiffs have reviewed Closed Loop's records to identify the PRPs that arranged for E-Waste to be transported to the Facility.  Heisler Decl., ¶¶ 6, 12;  Womack Decl., ¶¶ 6, 12.  Plaintiffs' counsel have, by letter, electronic mail, and/or telephone, invited all of these PRPs to negotiate settlements to pay for the removal and remediation of the E-Waste that they contributed to the Facility, except for bankrupt, dissolved, or defunct PRPs and PRPs that sent only a *de minimus* amount of Waste that will cost no more than $6000 to remediate.  Heisler Decl., ¶ 12; Womack Decl., ¶ 12.  Plaintiffs have negotiated with all PRPs that have expressed an interest in negotiations, and those negotiations are continuing.  Heisler Decl., ¶ 12;  Womack Decl., ¶ 12.  These negotiations led to the settlement with Settlor, and may result in other settlements.  Heisler Decl., ¶ 12; Womack Decl., ¶ 12 .

The parties to the Settlement Agreement negotiated in good faith over a period of time.  Heisler Decl., ¶ 13;  Womack Decl., ¶ 13;  Dohadwala Decl., ¶ 5.  These negotiations included, but were not limited to, evaluations of Settlor's potential liability, the evidence tying Settlor to Plaintiffs' Facility, the defenses asserted by Settlor, the potential legal fees and costs if settlement does not occur, past and projected future remediation costs, Settlor's capability to handle the in-kind services in compliance with applicable law, and Settlor's ability to pay.  Heisler Decl., ¶ 13;  Womack Decl., ¶ 13;  Dohadwala Decl., ¶ 7.  Thus, the settlement is the product of arm's length negotiations conducted in good faith.  Plaintiffs' counsel have used and will continue to consider the same factors to negotiate settlements with other PRPs, except where warranted by unusual circumstances.  Heisler Decl., ¶ 13; Womack Decl., ¶ 13.  Thus, the procedural fairness test has been met.

### 2. The Settlement Agreement Is Substantively Fair.

The substantive fairness test relates to the actual harm caused by a party at the subject site.  "[A] party should bear the cost of the harm for which it is legally responsible."  *3M Co.*, 2014 WL 1872914 at *5, *quoting Cannons Eng'g*, 899 F.2d at 87.  But "[t]here is no universally correct approach" to determining substantive fairness.  *Atlas Lederer*, 494 F. Supp.2d 629, 636 (S.D. Ohio 2005), *quoting Cannons Eng'g*, 899 F.2d at 87.

Settlements must be "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done."  *Cannons Eng'g*, 899 F.2d at 87.  However, a settlement is not held to a rigid formula for comparing fault, but can "diverge from an apportionment formula in order to address special factors not conducive to regimented treatment," such as uncertainty about a settlor's liability and discounts for early settlements.  *Id*. at 87-88.  "There is no universally correct approach" for assessing comparative fault, and a settlement allocation with "a plausible explanation" will be approved.  *Id*. at 87.

Consistent with these principles, Plaintiffs have considered the amount of Settlor's E-Waste contributions to the Facility as well as Settlor's ability to pay.  The Settlement Agreement contains reopeners that allow Plaintiffs to seek additional in-kind services or cleanup costs from Settlor if new evidence reveals that the amount of Settlor's E-Waste is substantially greater than the amount of E-Waste currently attributed to Settlor.  Thus, Plaintiffs and Settlor have entered into a Settlement Agreement that is fair to everyone and satisfies the substantive fairness test.

### 3. The Settlement Agreement Is Reasonable Because It Reflects Settlor's Actual or Potential Liability.

The Court has the task of determining if a Settlement Agreement compensates "for the actual (and anticipated) costs of remedial and response measures."  *Cannons Eng'g,* 899 F.2d at

9

90.  Plaintiffs have evaluated the alleged quantity of E-Waste disposed by Settlor, and have determined that Settlor's settlement is fair and reasonable given the past and projected future remediation costs, Settlor's connection to the Facility, and Settlor's ability to pay.  Heisler Decl., ¶¶ 6, 11, 13;  Womack Decl., ¶¶ 6, 11, 13.

The strength of the evidence and the probability of success on the merits also come into play in determining if a specific settlement agreement is reasonable.  *Cannons Eng'g,* 899 F.2d at 90.  Thus, a "reasonableness equation relates to the relative strengths of the parties' litigation positions."  *Id.*  The strengths and weaknesses of plaintiffs' and defendants' evidence in a contribution action will by necessity impact the outcome of settlement negotiations.

The negotiations between Plaintiffs and Settlor included, but were not limited to, evaluations of Settlor's potential liability, the strengths and weaknesses of the evidence tying Settlor to Plaintiffs' Facility, the defenses asserted by Settlor, the potential legal fees and costs if settlement does not occur, past and projected future remediation costs, Settlor's capability to handle the in-kind services in compliance with applicable law, and Settlor's ability to pay. Heisler Decl., ¶ 13;  Womack Decl., ¶ 13;  Dohadwala Decl., ¶ 7.  Based on these considerations, Plaintiffs and Settlor believe that the Settlement Agreement is fair, adequate, and reasonable. Heisler Decl., ¶ 13; Womack Decl., ¶ 13;  Dohadwala Decl., ¶ 7.  Thus, this settlement is reasonable, since it is based on the relative strengths and weaknesses of the evidence and the chances of prevailing on the merits for both Plaintiffs and Settlor.

### 4.    The Settlement Agreement Is Consistent With CERCLA.

The primary policy underlying CERCLA's provisions is "to ensure prompt and efficient cleanup of hazardous waste sites and to place the costs of those cleanups on the PRPs." *Akzo Coatings*, 949 F.2d at 1417.  Settlement agreements with PRPs further the primary policy of CERCLA to investigate and remediate hazardous substances in a prompt and efficient manner.

10

Settlement funds help to continue the work commenced by Plaintiffs to address the E-Waste.

In addition, the settlement furthers CERCLA's goal of requiring that "those responsible for problems caused by the disposal … bear the costs and responsibility for remedying the harmful conditions they created." *3M Co.*, 2014 WL 1872914 at *7, *quoting Cannons Eng'g*, 899 F.2d at 90-91. *See Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 841 (4th Cir.), *cert. denied*, 506 U.S. 940 (1992) ("The statute encourages private cleanup of such [environmental] hazards by providing a cause of action for the recovery of costs incurred in responding to a 'release' of hazardous substances at any 'facility.'").

Finally, the Settlement Agreement relieves the settling parties and the Court of the burden of proceeding with the claims against Settlor all the way to trial, thereby conserving the Court's and the parties' resources in time and in money. The Settlement Agreement reached with Settlor is consistent with the underlying intent and policies of CERCLA.

## B.  The Court Should Approve the Contribution Bar in the Settlement Agreement.

The Court should approve the contribution bar in the Settlement Agreement so that Settlor can be dismissed from this case without facing claims from other PRPs. Defendants who wish to settle will have little incentive to do so if they cannot exit the litigation and avoid additional monetary claims from non-settlors, as aptly noted by one court that granted the settling parties' request for a contribution bar:

> Courts have recognized a strong federal interest in promoting settlement. This interest is especially pronounced in complex matters such as CERCLA claims, where the amount of evidence to be gathered for assessing liability is voluminous. It is hard to imagine that any defendant in a CERCLA action would be willing to settle if, after the settlement, it would remain open to contribution claims from other defendants. The measure of finality which a cross-claim bar provides will make settlements more desirable. A settling defendant therefore "buys its peace" from the plaintiff, as being relieved of liability to co-defendants frees the settling defendant from the litigation. The court finds that the degree to which a bar on contribution cross-claims will

11

> facilitate settlement outweighs the prejudice of such a bar on non-settling
> defendants. Accordingly, the court grants this aspect of the motions of
> Plaintiffs and Defendants Hydrosol and Henkel.

*Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219, 222 (N.D. Ill. 1990) (internal

cites omitted).

The Court has the authority to encourage settlement by terminating and precluding all

present and future claims against Settlor, and should do so because it furthers the purposes of

CERCLA. *See Responsible Envtl. Solutions*, 2011 WL 382617, at *5 (approving settlement with

contribution bar because "the imposition of such a bar rests on equitable considerations, and,

further, since contribution bars will foster the voluntary settlement of complex CERCLA

lawsuits, a goal which is worthy of being furthered").

The federal courts, including the Southern District of Ohio, have routinely issued orders

under CERCLA Section 113(f)(1) approving settlement agreements containing contribution bars

prohibiting non-settling PRPs from filing claims against settling PRPs. The following language

of CERCLA Section 113(f)(1) provides for court-approved settlements that can cut off

contribution claims by non-settling PRPs:

> (f) Contribution
>
> (1) Contribution
> <u>Any person may seek contribution from any other person who is liable or
> potentially liable under section 9607(a) of this title, during or following any
> civil action</u> under section 9606 of this title or <u>under section 9607(a) of this title</u>.
> Such claims shall be brought in accordance with this section and the Federal
> Rules of Civil Procedure, and shall be governed by Federal law. <u>In resolving
> contribution claims, the court may allocate response costs among liable parties
> using such equitable factors as the court determines are appropriate</u>. Nothing in
> this subsection shall diminish the right of any person to bring an action for
> contribution in the absence of a civil action under section 9606 of this title or
> section 9607 of this title.

42 U.S.C. § 9613(f)(1) (emphasis added).

The courts have used the principles in model laws such as the 1977 Uniform Comparative Fault Act ("UFCA") and the Uniform Contribution Among Tortfeasors Act ("UCATA") to equitably allocate cleanup costs among PRPs. *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 724 (2d Cir. 1993); *Responsible Envtl. Solutions*, 2011 WL 382617, at *4. These model acts shield settling parties from claims of non-settlors on the premise that the settlors have paid their fair share. *Alcan*, 990 F.2d at 725. The courts have found that these equitable principles implement congressional intent underlying CERCLA, and have adopted these principles as federal common law. *Id*. at 724-25; *Responsible Envtl. Solutions*, 2011 WL 382617, at *4.

A decision by the Southern District of Ohio explains how the courts use Section 113(f)(1) to impose a contribution bar against non-settling PRPs:

> Nevertheless, a number of courts have held that it is permissible to bar contribution claims against the settling parties in a CERCLA contribution action, in accordance with the federal common law as exemplified by § 6 of the Uniform Comparative Fault Act or § 4 of the Uniform Contribution Among Tortfeasors Act.
>
> ****
>
> In its Decision of March 27, 2008, this Court indicated that it was inclined to follow the decisions adopting a contribution bar as part of the federal common law, even though such a bar is not authorized by § 113(f)(2), because such a holding is in accordance with § 113(f)(1) of CERCLA, which provides that, "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate" (42 U.S.C. § 9613(f)(1)), given that the imposition of such a bar rests on equitable considerations, and, further, since contribution bars will foster the voluntary settlement of complex CERCLA lawsuits, a goal which is worthy of being furthered. . . . Quite simply, there has been no intervening authority, nor has CWM presented any argument causing this Court to decline to follow its earlier inclination. Therefore, this Court adopts a bar, preventing CWM and every other PRP from seeking contribution from the Settling Defendants and TLC.

*Id*. This rationale resulted in an order that barred all PRPs from bringing contribution claims against the settling defendants. *Id*. at *5. This approach has also been productive for fostering

CERCLA settlements in *Hobart Corp. v. Dayton Power & Light Co*., No. 3:13-cv-115 (S.D. Ohio 2014). *See* Exhibit E hereto, providing a sample of the orders in that case approving settlement agreements and barring all claims against the settlors in Paragraph 3 of each order. This Court also has applied the contribution bar in the instant case for each of the previous settlements approved by the Court. Doc. # 312, PageId # 3655, ¶ 3; Doc. # 400, PageId # 4506, ¶ 3; Doc. # 536, PageId # 6035, ¶ 3.

Examples of other cases that have used Section 113(f)(1) to bar contribution claims against settling PRPs in private cases include the following: *Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.,* No. 3:07-CV-66-SEB-WGH, 2010 WL 3781565, at *4, n. 3 (S.D. Ind., Sept. 20, 2010); *Foamseal, Inc. v. Dow Chem. Co.,* 991 F. Supp. 883, 886 (E.D. Mich. 1998); *Stearns & Foster Bedding Co. v. Franklin Holding Corp.,* 947 F. Supp. 790, 813 (D. N.J. 1996); *Mavigliano v. McDowell*, No. 93 C 7216, 1995 WL 704391, at *2 (N.D. Ill., Nov. 28, 1995); *Hillsborough Cty. v. A & E Rd. Oiling Serv., Inc.,* 853 F. Supp. 1402, 1408 (M.D. Fla. 1994); *United States v. SCA Servs. of Indiana, Inc.,* 827 F. Supp. 526, 532 (N.D. Ind. 1993); *Am. Cyanamid Co. v. King Indus., Inc.,* 814 F. Supp. 215, 217-19 (D. R.I. 1993); *Barton Solvents, Inc. v. Sw. Petro-Chem, Inc.,* 834 F. Supp. 342, 345–46 (D. Kan. 1993); and *Allied Corp. v. ACME Solvent Reclaiming, Inc.,* 771 F. Supp. 219, 222 (N.D. Ill. 1990). Additional cases in support of contribution bars are cited in the next two paragraphs below.

Because a non-settling defendant could circumvent a contribution bar against CERCLA claims by suing a settling defendant under a different cause of action, the courts have used CERCLA Section 113(f)(1) to bar claims for all potential causes of action. The Southern District of Ohio followed this approach in *Hobart Corp. See* Paragraph 3 of the orders in Exhibit E hereto, barring "[a]ll claims … under Sections 106, 107 or 113 of CERCLA and/or any other

14

federal, state or local statute, regulation, rule, ordinance, law or common law." *Also see San Diego Unified Port Dist. v. Gen. Dynamics Corp.,* No. 07-CV-01955-BAS-WVG, 2017 WL 2655285, at *8-*10 (S.D. Cal., June 20, 2017) (barring all claims "pursuant to any federal or state statute, common laws, or any other theory"); *City of San Diego v. Nat'l Steel & Shipbuilding Corp.,* No. 09CV2275 WQH BGS, 2015 WL 1808527, at *11-*13 (S.D. Cal., Apr. 21, 2015) (barring state law claims); *AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc.,* No. CIVS 00-113 LKK JFM, 2007 WL 1946635, at *2-*5 (E.D. Cal., July 2, 2007) (barring claims under state law and common law). In accordance with this principle, Plaintiffs and Settlor request that the Court bar all claims against Settlor under all legal theories, as it has done in its past approvals of settlements in this case.

Some decisions have applied the contribution bar against every PRP, including PRPs who were not parties to the lawsuits in which the settlements were approved. *San Diego Unified Port Dist.,* 2017 WL 2655285, at *10 (barring all claims "regardless of when such claims are asserted or by whom"); *Lewis v. Russell,* 2012 WL 671670, No. CIV 2.03-2646 WBS, at *6 (E.D. Cal., Nov. 9, 2012). This is the approach followed by the Southern District of Ohio in *Hobart Corporation.* *See* Paragraph 3 of the orders included in Exhibit E. This Court has also followed this approach for the previous settlements in the instant case. Doc. # 312, PageId # 3655, ¶ 3; Doc. # 400, PageId # 4506, ¶ 3, Doc. # 536, PageID # 6035, ¶ 3. Plaintiffs and Settlor request that the Court follow the same approach for the attached settlement.

Plaintiffs have served a copy of the Motion for Approval of Settlement Agreement on all defendants and will soon send it to all other currently known PRPs. Heisler Decl., ¶ 14; Womack Decl., ¶ 14. Plaintiffs and Settlor request that the contribution bar apply to all claims that could be asserted against Settlor.

C.    **The Value of Settlor's In-Kind Services Should Be Credited *Pro Tanto*, and Not *Pro Rata*, in Determining Other Defendants' Equitable Shares at Trial.**

The Court's order approving this Settlement Agreement should credit the value of Settlor's in-kind services *pro tanto* and not *pro rata* in determining other defendants' equitable shares of remediation costs, just as the Court has done for the previous settlements in the instant case.  Doc. # 312, PageId # 3655, ¶ 4;  Doc. # 400, PageId # 4506, ¶ 4;  Doc. # 536, PageID # 6035, ¶ 3.  As explained below, *pro tanto* crediting encourages early settlements, encourages voluntary site cleanups, promotes faster site remediation, and reduces trial time.

The *pro tanto* and *pro rata* methods are derived from the UCATA and the UCFA, respectively, which advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability.  *Ameripride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 483 (9th Cir. 2015).  When a litigant has settled with one party, the UCFA would reduce the shares of other liable persons by the percentage of the settlor's fault (UCFA § 2).  *Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 308 (7th Cir. 1999).  This allocation method is known as the *pro rata*, or proportionate share, method.  "Courts adopting the UCFA proportionate share approach 'must therefore determine the responsibility of all firms that have settled, as well as those still involved in the litigation.'"  *Ameripride*, 782 F.3d at 483-84 (quoting *American Cyanamid Co. v. Capuano*, 381 F.3d 6, 20 (1st Cir. 2004)). The consequence of this approach is that tortfeasors who have not settled "will be responsible only for their proportionate share of the costs, even if the settling tortfeasor settles for less than its fair share of the injury."  *Ameripride,* 782 F.3d at 484.

The UCATA's *pro tanto* method, by contrast, reduces non-settlors' liability only by the dollar amount of the settlements (UCATA § 4).  *Id*.  CERCLA Section 113(f)(2) (42 U.S.C. § 9613(f)(2)) applies the *pro tanto* method to PRP settlements with the United States or a state.  *Id*.

16

(noting that Section 113(f)(2) provides that a settlement with the United States or a state "reduces the potential liability of the others by the amount of the settlement"). CERCLA does not prescribe the accounting method to be used in private settlements.

The Seventh Circuit has mandated the use of *pro tanto* as the only acceptable allocation method in CERCLA cases, observing that any other method would undermine the congressional preference for *pro tanto* revealed in CERCLA Section 113(f)(2)). *Akzo*, 197 F.3d at 307-308. Other circuits have ruled that the district courts have the discretion to use whichever of the two methods is most suited to the facts of the case. *Ameripride Servs. Inc.*, 782 F.3d at 487 (district courts may use either method, whichever is "'the most equitable method of accounting for settling parties' in private-party contribution actions"); *American Cyanamid*, 381 F.3d at 21 (stating that "CERCLA provides the district court with the discretion to allocate response costs among liable parties" and affirming the district court's use of *pro tanto* allocation).

"These competing approaches can produce substantial differences in incentives to settle and in the complexity of litigation." *Akzo*, 197 F.3d at 307. *Pro rata* is sometimes employed on the premise that it ensures, "in theory, that damages are apportioned equitably among the liable parties." *American Cyanamid*, 381 F.3d at 20. However, *pro tanto* has several important advantages in the context of this case.

First, the *pro tanto* method is better at furthering CERCLA's goals than *pro rata*, because it encourages PRPs to negotiate and leads to earlier settlements:

> In general, the pro tanto approach, by placing the risk of lenient settlements on PRP hold-outs …, facilitates CERCLA's goal of encouraging early settlement and private remediation. In a pro rata regime, PRPs … who assume responsibility for cleanup … will have no flexibility to negotiate in settlements. If they accept anything less from a PRP than what a court later determines to have been that PRP's proportionate share, they will have to pay for the difference out of their own pockets. Further, the defendant PRPs will have no incentive to settle early on, because the early settlements of other PRPs will have no effect on the

potential liability of remaining PRPs. In such a regime, it would be more difficult
to settle with contribution defendants. As a result, contribution plaintiffs would be
forced to litigate against more PRPs, spending non-recoverable attorneys fees.
Such a prospect would make it less likely that PRPs would be willing to sign
consent decrees … and voluntarily undertake remediation of polluted sites.

In contrast, under a pro tanto regime, contribution plaintiffs will have more
flexibility in settling with defendant PRPs, because any potential shortfalls of
early settlements can be shared by the contribution plaintiffs and non-settling
PRPs in an equitable allocation at trial.… If it is easier for PRP groups to recover
costs by settling early with other PRPs, they are more likely to come forward to
settle … and take on the task of remediating contaminated sites, furthering
CERLCA's goals of private party remediation and early settlement.

*Action Mfg. Co. v. Simon Wrecking Co.*, 428 F. Supp.2d 288, 326 (E.D. Pa. 2006), *aff'd,* 287

Fed. Appx. 171 (3d Cir. 2008), *citing* Joseph A. Fischer, "All CERCLA Plaintiffs Are Not

Created Equal: Private Parties, Settlements, and the UCATA," 30 Hous. L. Rev. 1979 (1994).

Another court has noted that *pro tanto* accounting, unlike the *pro rata* method, encourages a

plaintiff to voluntarily clean up hazardous substances:

The *pro tanto* approach best furthers CERCLA's primary goal of promoting
prompt and effective cleanups by assuring that the private-party § 9607 plaintiff
will not be shortchanged in their attempt to recover cleanup costs. Because the
plaintiff knows the precise amount their settlement will be worth and the rest of
the response costs will be recoverable from other PRP's held strictly liable under
the statue, the plaintiff can be virtually assured of complete recovery. By
contrast, under the proportionate approach, the private party who conducted
cleanup is likely to be left holding the proverbial bag if they inaccurately
forecast the relative culpability of a settling defendant.… Since a non-PRP
private party who conducts CERCLA related cleanup already faces the hurdle
and expense of pursuing litigation to receive compensation for its response
costs, the prospect of less than full recovery would add an additional
disincentive to private party cleanups and would therefore be contrary to
CERCLA's principle goals.

*Veolia Es Special Servs., Inc. v. Hiltop Investments Inc.,* No. CIV.A. 3:07-0153, 2010 WL

898097, at *7 (S.D. W.Va., Mar. 12, 2010). The Southern District of Ohio has expressed the

same sentiments as reasons for approving *pro tanto* accounting in CERCLA settlements. *See*

*Hobart Corp.*, Order of Apr. 18, 2016 (Exhibit F), pp. 5-6. The Court in the instant case has

concurred in this rationale as well with respect to the previous settlements. This Court has found the *pro tanto* approach to be appropriate for the previous settlements in the instant case. Doc. # 400, PageId ## 4503-4505; Doc # 536, PageId ## 6032-6036. In cases with multiple defendants, like this case, the *pro rata* approach "encourages defendants to hold out until a fault-based allocation can be made, requiring the plaintiff to continuing litigating and thereby reduce its net recovery." *Veolia*, 2010 WL 898097, at *7.

The second advantage of using the *pro tanto* method in this case is that it will serve judicial economy. Under both methods, a court must determine the settlement's fairness. *Veolia,* 2010 WL 898097, at *8. For the *pro rata* method, "a court must determine the relative culpability of all parties - including settling parties - and their equitable share at trial." *Id*. In CERCLA cases, "the assignment of liability to missing parties at trial will often be more time consuming and costly." *Id.*, citing *American Cyanamid,* 381 F.3d at 20 (which notes that "[s]uch a process can lead to a "complex and unproductive inquiry"); *Akzo Nobel Coating* 197 F.3d at 308; *Action Mfg.*, 428 F. Supp.2d at 326 (*pro tanto* is easier to administer).

A court using the *pro tanto* approach evaluates fairness at the time of settlement, not trial. *Id*. No evidentiary fairness hearing is necessary prior to approval of the settlement. *See Cannons Eng'g*, 899 F.2d at 94 (stating that "[i]n general, we believe that evidentiary hearings are not required under CERCLA when a court is merely deciding whether monetary settlements comprise fair and reasonable vehicles for disposition of Superfund claims"). The Southern District of Ohio, in declining to hold a fairness hearing in another CERCLA case employing *pro tanto* accounting, has found that evidentiary hearings for CERCLA settlements are rarely granted, are unnecessary in the absence of any evidence of collusion or unfairness, and would be the "functional equivalent of a full-blown trial" that would discourage settlement by PRPs who

want to settle to avoid litigation costs.  *Hobart Corp.*, Order of Apr. 18, 2016 (Exhibit F), pp. 9-12.  Based on this principle, settlements in the instant case are appropriate for *pro tanto* accounting, which will serve the purpose of judicial economy.

Thus, the "[a]doption of the *pro tanto* rule in CERCLA cases encourages early settlement, the allocation of private resources towards the hazardous waste disposal problem, and ultimately the expeditious cleanup of hazardous waste sites."  *Veolia,* 2010 WL 898097, at *7.  This accounting method also efficiently conserves the resources of the court and the parties.  The same principles apply here.  The Court should approve the Settlement Agreement and direct that Settlor's settlement be credited *pro tanto*, just as the Southern District of Ohio has done in the instant case and other cases.  *See* Doc. # 312, PageId # 3655, ¶ 4;  Doc. # 400, PageId # 4506, ¶ 4; Doc. # 536, PageID # 6035, ¶ 4. *Hobart Corp.*, No. 3:13-cv-115 (S.D. Ohio 2014, Apr. 4, 2016) (Exhibit E);  *Responsible Envtl. Solutions*, 2011 WL 382617 at *2-*5 (approving motion for approval of settlement agreement with request for *pro tanto* allocation).  *Also see* Paragraph 4 in the orders in *Hobart Corporation* included in Exhibit E.

## V.    **Conclusion**

For all the foregoing reasons, Plaintiffs and Settlor request that the Court grant the Order approving their Settlement Agreement.

Respectfully submitted,

<table>
<tr><td><strong>BROWN LAW OFFICE LLC</strong></td><td><strong>VAN KLEY &amp; WALKER, LLC</strong></td></tr>
<tr><td>/s/ Daniel A. Brown</td><td>/s/ Jack A. Van Kley</td></tr>
<tr><td>Daniel A. Brown (#0041132)<br>Trial Attorney<br>204 S. Ludlow St., Suite 300<br>Dayton, OH 45402<br>Tel:  (937) 224-1216 (direct)<br>Fax:  (937) 224-1217<br>Email:  dbrown@brownlawdayton.com</td><td>Jack A. Van Kley (#0016961)<br>Trial Attorney<br>132 Northwoods Blvd., Suite C-1<br>Columbus, OH 43235<br>Tel:  (614) 431-8900<br>Fax:  (614) 431-8905<br>Email:  jvankley@vankleywalker.com</td></tr>
</table>

Of Counsel:                                    Of Counsel:

**GLANKLER BROWN, PLLC**                        **KING & SPALDING LLP**

/s/ Randall B. Womack_____               /s/ Karl R. Heisler  _____
Randall B. Womack (*pro hac vice*)             Karl R. Heisler (*pro hac vice*)
6000 Poplar Avenue, Suite 400                  353 N. Clark Street, 12th Floor
Memphis, TN 38119                              Chicago, IL 60654
Tel:  (901) 525-1322 (direct)                  Tel:  (312) 764-6927
Fax:  (901) 525-2389                           Fax:  (312) 995-6330
Email:  rwomack@glankler.com                   Email:  kheisler@kslaw.com

*Attorneys for Plaintiff Olymbec USA LLC*      *Attorneys for Plaintiff Garrison*
                                               *Southfield Park LLC*


                                               **GRANGER CO., L.P.A.**

                                               s/ Mark R.Granger_____
                                               Mark S. Granger (#0068620)
                                               132 Northwoods Blvd., Suite B
                                               Columbus, Ohio 43235
                                               Tel: (614) 854-0615
                                               Fax: (614) 885-7574
                                               mgranger@grangercolpa.com

                                               *Attorney for Defendant CompuPoint USA, LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on September 1, 2020, a copy of the foregoing

Motion to Approve Settlement Agreement was filed electronically with the Court's CM/ECF

system, which will send notification to all attorneys registered to receive such service.  Parties

may access this filing through the Court's electronic filing system.


                                               /s Jack A. Van Kley_____
                                               Jack A. Van Kley (#0016961)
                                               Trial Attorney