**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| GARRISON SOUTHFIELD PARK LLC, | Case No. 2:17-cv-783-EAS-EPD |
| Plaintiff, | JUDGE EDMUND A. SARGUS, JR. |
| v. | CHIEF MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| CLOSED LOOP REFINING AND RECOVERY, INC., *et al.*, | |
| Defendants. | |

| | |
|---|---|
| OLYMBEC USA LLC, | Case No. 2:19-cv-1041-EAS-EPD |
| Plaintiff, | JUDGE EDMUND A. SARGUS, JR. |
| v. | CHIEF MAGISTRATE JUDGE ELIZABETH PRESTON DEAVERS |
| CLOSED LOOP REFINING AND RECOVERY, INC., *et al.*, | |
| Defendants. | |

## AMENDED MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT EXECUTED BY PLAINTIFF GARRISON SOUTHFIELD PARK LLC, PLAINTIFF OLYMBEC USA LLC, AND DEFENDANT SONY ELECTRONICS INC.

Plaintiff Garrison Southfield Park LLC ("Garrison"), Plaintiff Olymbec USA LLC

("Olymbec," along with Garrison referred to as the "Plaintiffs"), and Defendant Sony Electronics

Inc.[1] ("Settlor") jointly move the Court to enter an order approving the Settlement Agreement

---

[1] Sony Electronics Inc., an original equipment manufacturer, is one of the new Defendants included in Garrison's Second Amended Complaint (Doc. # 539) and in Olymbec's First Amended Complaint (Doc. # 425).

between Plaintiffs and Settlor as a final judgment in accordance with Federal Rules of Civil

Procedure 54(b) and 58. This motion is supported by the attached Memorandum in Support and

the attached Settlement Agreement.

For the Court's convenience, a proposed order has been attached hereto.

## MEMORANDUM IN SUPPORT

### i.    Combined Table of Contents and Executive Summary

| I.      **Background** | 5 |
|---|---|
| Summary:  Plaintiffs and Settlor have negotiated a settlement and seek the Court's approval of the Settlement Agreement as well as contribution protection for the Settlor. The Settlement Agreement resolves Plaintiffs' claims arising under CERCLA Section 107 and Ohio common law for the recovery of costs to investigate the extent of and to remove electronic wastes abandoned at Plaintiffs' properties by Defendant Closed Loop Refining and Recovery, Inc.<br><br>Citations to Primary Authority:<br><br>   42 U.S.C. § 9607<br>   42 U.S.C. § 9613(f)(1)<br><br>   40 C.F.R. Part 300 | |
| II.     **Argument** | 11 |
|     **A.    The Settlement Agreement Should Be Approved By The Court Because Settlements Are Favored, And The Settlement Agreement Is Fair, Reasonable, And Satisfies The Requirements of CERCLA.** | 11 |
| Summary: CERCLA settlements are evaluated for fairness, reasonableness and consistency with CERCLA. The settlement negotiations satisfy procedural fairness and substantive fairness. The settlement is reasonable because it is based on the relative strengths and weaknesses of the evidence and the chances of prevailing on the merits. The settlement is also consistent with CERCLA, which is designed to ensure prompt and efficient cleanup.<br><br>Citations to Primary Authority:<br><br>   *United States v. Atlas Lederer*, 494 F. Supp. 2d 629 (S.D. Ohio 2005)<br>   *United States v. Cantrell*, 92 F. Supp. 2d 718 (S.D. Ohio 2000) | |

| | |
|---|---|
| *Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, No. 3:04-cv-013, 2011 WL 382617 (S.D. Ohio Feb. 3, 2011)<br>*United States v. 3M Co.*, No. 3:14-cv-32, 2014 WL 1872914 (S.D. Ohio May 8, 2014)<br>*United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484 (6th Cir. 2010)<br>*United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir. 1991)<br>*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990)<br>*Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837 (4th Cir. 1992), *cert. denied*, 506 U.S. 940 (1992)<br>*Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507, 517 (W.D. Mich. 1989) | |
| **B. The Court Should Approve the Contribution Bar in the Settlement Agreement.** | **16** |
| Summary: The Court has the authority to issue contribution protections to settling defendants pursuant to CERCLA Section 113(f)(1). Courts, including this Court, have routinely done so in the past, and this Court should exercise that authority for Settlor. The contribution bar should bar claims for all potential causes of action, consistent with prior orders in this case and the approach followed in *Hobart Corp.*<br><br>Citations to Primary Authority:<br><br>42 U.S.C. § 9613(f)(1)<br><br>*Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (S.D. Ohio 2014)<br>*Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, No. 3:04-cv-013, 2011 WL 382617 (S.D. Ohio Feb. 3, 2011)<br>*United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 724 (2d Cir. 1993)<br>*Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219 (N.D. Ill. 1990)<br>*Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.*, No. 3:07-CV-66-SEB-WGH, 2010 WL 3781565 (S.D. Ind. Sept. 20, 2010)<br>*Foamseal, Inc. v. Dow Chem. Co.*, 991 F. Supp. 883 (E.D. Mich. 1998)<br>*Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F. Supp. 790 (D.N.J. 1996)<br>*Magigliano v. McDowell*, No. 93 C 7216, 1995 WL 704391 (N.D. Ill. Nov. 28, 1995)<br>*Hillsborough Cnty. v. A & E Rd. Oiling Serv., Inc.*, 853 F. Supp. 1402 (M.D. Fla. 1994)<br>*United States v. SCA Servs. of Indiana, Inc.*, 827 F. Supp. 526 (N.D. Ind. 1993)<br>*Am. Cyanamid Co. v. King Indus., Inc.*, 814 F. Supp. 215 (D.R.I. 1993)<br>*Barton Solvents, Inc. v. Sw. Petro-Chem, Inc.*, 834 F. Supp. 342 (D. Kan. 1993)<br>*Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219 (N.D. Ill. 1990). | |

| | |
|---|---|
| *San Diego Unified Port Dist. v. Gen. Dynamics Corp.*, No. 07-CV-01955-BAS-WVG, 2017 WL 2655285 (S.D. Cal. June 20, 2017)<br>*City of San Diego v. Nat'l Steel & Shipbuilding Corp.*, No. 09CV2275 WQH BGS, 2015 WL 1808527 (S.D. Cal. Apr. 21, 2015)<br>*AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc.*, No. CIVS 00-113 LKK JFM, 2007 WL 1946635 (E.D. Cal. July 2, 2007)<br>*Lewis v. Russell*, No. CIV 2.03-2646 WBS, 2012 WL 671670 (E.D. Cal. Nov. 9, 2012) | |
| **C.    Settlor's Payment Should Be Credited *Pro Tanto*, and Not *Pro Rata*, in Determining Other Defendants' Equitable Shares at Trial.** | **21** |
| <u>Summary</u>: The Court's order approving settlement should credit the settlement payment *pro tanto*, as opposed to *pro rata*, in determining other the Defendants' equitable shares of response costs, as this Court has done for prior settlements in this case. The *pro tanto* approach encourages early settlements and voluntary site cleanups, promotes faster site remediation, and serves judicial economy.<br><br><u>Citations to Primary Authority</u>:<br><br>42 U.S.C. § 9613(f)(2)<br><br>*Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, No. 3:04-cv-013, 2011 WL 382617 (S.D. Ohio Feb. 3, 2011)<br>*Am. Cyanamid Co. v. Capuano*, 381 F.3d 6 (1st Cir. 2004)<br>*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990)<br>*Action Mfg. Co. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288 (E.D. Pa. 2006), *aff'd*, 287 Fed. App'x. 171 (3d Cir. 2008)<br>*Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302 (7th Cir. 1999)<br>*Ameripride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474 (9th Cir. 2015)<br>*Veolia Es Special Servs., Inc. v. Hiltop Invs., Inc.*, No. CIV.A. 3:07-0153, 2010 WL 898097 (S.D. W.Va. Mar. 12, 2010) | |
| **D.    The Court Should Enter the Settlement Agreement as a Final Judgment.** | **25** |
| <u>Summary</u>: The Court's order approving the Settlement Agreement merits entry as a final judgment pursuant to Federal Rules of Civil Procedure 54(b) and 58, based on recent developments and the current litigation posture. The Court is authorized to direct entry of a final judgment as to one or more, but fewer than all, claims or parties if the Court expressly determines that there is no just reason for delay. There is no just reason for delay given the need to allocate these settlement proceeds to the cleanup and in view of CERCLA's policy supporting prompt cleanup and statutory goal of providing finality to settling defendants. | |

| | |
|---|---|
| Citations to Primary Authority: | |
| | |
| 42 U.S.C. § 9613(f)(1) | |
| 42 U.S.C. § 9613(f)(2) | |
| | |
| Fed. R. Civ. P. 54(b) | |
| Fed. R. Civ. P. 58 | |
| | |
| *Ball v. Kasich*, No. 2:16-cv-282, 2020 WL 4528822 (S.D. Ohio Aug. 6, 2020) (Sargus, J.), *appeal docketed*, No. 20-3927 (6th Cir. Sept. 3, 2020) | |
| *United States v. Pretty Products, Inc.*, 780 F. Supp. 1488 (S.D. Ohio 1991) | |
| *Curtis–Wright Corp. v. Gen. Elec. Corp.*, 446 U.S. 1 (1980) | |
| *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022 (6th Cir. 1994) | |
| *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir. 1991) | |
| *Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58 (6th Cir. 1986) | |
| *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279 (6th Cir. 1986) | |
| *United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027 (D. Mass. 1989), *aff'd*, *United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) | |
| *Witasick v. Minnesota Mut. Life Ins.*, 803 F.3d 184 (3rd Cir. 2015) | |
| *Otis v. City of Chicago*, 29 F.3d 1159 (7th Cir. 1994) | |
| *Paktootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565 (9th Cir. 2018) | |
| **III.    Conclusion** | 35 |
| Summary: For all of the reasons set forth below, Plaintiffs and Settlor request that the Court approve the Settlement Agreement. | |

## I.    **Background**

Plaintiffs and Settlor have negotiated a settlement and seek the Court's approval of the Settlement Agreement attached hereto as Exhibit A ("the Settlement Agreement"). The Settlement Agreement resolves Plaintiffs' claims against Settlor pursuant to Section 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607, and Ohio common law, for past and projected response costs to clean up cathode ray tubes and other electronic wastes (collectively, "E-Waste") at Garrison's two contiguous warehouses located at 1655 and 1675 Watkins Road in Columbus, Ohio and at Olymbec's warehouse located at 2200 Fairwood Avenue in Columbus, Ohio (collectively, the "Facility").

Defendant Closed Loop Refining and Recovery, Inc. ("Closed Loop") leased the Facility or portions thereof from the Plaintiffs, and Closed Loop and/or Closed Loop Glass Solutions (an affiliate of Closed Loop) then received, stockpiled, and abandoned E-Waste received from their customers at the Facility. Declaration of Karl R. Heisler ("Heisler Decl."), ¶¶ 4, 6 (Exhibit B); Declaration of Randall B. Womack ("Womack Decl."), ¶¶ 4, 6 (Exhibit C). Plaintiffs allege that the E-Waste constitutes hazardous substances subject to CERCLA, based on total lead content from samples collected from the Facility and common industry knowledge. Heisler Decl., ¶ 7; Womack Decl., ¶ 7. Plaintiffs retained consultants to estimate the total weight of E-Waste in the Facility and to estimate the necessary costs that Plaintiffs will incur to remove it, to lawfully dispose of it, and to decontaminate the Facility by removing the lead dust deposited on the floors, walls, columns, rafters, and contents, all consistent with the U.S. Environmental Protection Agency National Contingency Plan at 40 C.F.R. Part 300. Heisler Decl., ¶ 8; Womack Decl., ¶ 8. The consultants estimated that the Facility contains approximately 159,104,489 pounds (79,552 tons) of E-Waste, and that the response costs will be approximately $21,933,193. Heisler Decl., ¶¶ 8, 9; Womack Decl., ¶¶ 8, 9.

Plaintiffs have obtained Closed Loop records providing detailed accounts of the weight of E-Waste that Closed Loop received from its customers, including accounting spreadsheets, commodity purchase agreements, bills of lading, weight tickets, purchase orders, and related shipping documentation. Heisler Decl., ¶ 6; Womack Decl., ¶ 6. Plaintiffs have also obtained discovery from one or more Defendants that evidence contractual relationships between (a) those entities that contracted with Defendant Closed Loop for the disposal or treatment of E-Waste; and (b) original equipment manufacturers ("OEMs") claiming extended producer responsibility ("EPR") credit in various states for such E-Waste. Heisler Decl., ¶ 6; Womack Decl., ¶ 6. Based

on these records and information, Plaintiffs have alleged that Settlor arranged for the transport of E-Waste to the Facility. Heisler Decl., ¶ 6; Womack Decl., ¶ 6.

Plaintiffs have been using a straightforward cost recovery formula in settlement negotiations that allocates a percentage to each potentially responsible party ("PRP") based on records that identify the total weight of E-Waste that the PRP shipped to the Facility, as compared to the total weight of the E-Waste shipped to the Facility by all PRPs. Heisler Decl., ¶ 11; Womack Decl., ¶ 11. Plaintiffs then applied this percentage to the cleanup cost estimate of $21,933,193. Heisler Decl., ¶ 11; Womack Decl., ¶ 11.

Plaintiffs, however, have noted in prior motions for approval of settlement agreements that exceptions to this formula may be appropriate for some PRPs when circumstances warrant. In this case, both Plaintiffs and the Settlor agree that the cost recovery formula used for prior Settlors is not suitable to the allocation of liability for Settlor, but that other considerations, including, but not limited to, Settlor's national market share of products that generate the type of E-Waste disposed at the Facility, compel the conclusion that $1.2 million is a fair, adequate, and reasonable settlement of Settlor's liability. Heisler Decl., ¶¶ 12-15; Womack Decl., ¶¶ 12-15; Defendant Decl., ¶¶ 5, 6.

OEMs like Settlor are a different class of Defendants as compared to prior Settlors in terms of the factual underpinnings of their alleged liability. Heisler Decl., ¶ 12(a); Womack Decl., ¶ 12(a); Defendant Decl., ¶ 5(a). Plaintiffs' theory of liability for OEMs rests in part on the fact that OEMs are subject to various state EPR laws requiring them to provide for the disposition of E-Waste in exchange for authorization to sell electronic equipment in that state. Heisler Decl., ¶ 12(a); Womack Decl., ¶ 12(a); Defendant Decl., ¶ 5(a). Plaintiffs contend that state EPR laws thus create a basis for CERCLA arranger liability for OEMs that elect to

participate in the electronic equipment market, but in a way that is different from CERCLA arranger liability for the prior Settlors, which contracted directly with Defendant Closed Loop. Heisler Decl., ¶ 12(a); Womack Decl., ¶ 12(a); Defendant Decl., ¶ 5(a).

An OEM's EPR obligation to any given state is generally based on the OEM's market share. Heisler Decl., ¶ 12(a); Womack Decl., ¶ 12(a); Defendant Decl., ¶ 5(a). Pennsylvania, for example, requires OEMs to "establish, conduct and manage a plan to collect, transport and recycle a quantity of covered devices equal to the manufacturer's market share." 35 PA. STAT. CONS. STAT. § 6031.305(a)(1). An OEM seeking to sell electronic equipment in states like Pennsylvania must therefore accept financial responsibility to provide for the disposition of a certain quantity of E-Waste commensurate with its market share; for this reason, both Plaintiffs and the Settlor agree that an OEM's market share is at least one important consideration in evaluating the reasonableness of settlement with an OEM. Heisler Decl., ¶ 13; Womack Decl., ¶ 13; Defendant Decl., ¶ 5. Moreover, consideration of an OEM's market share aligns with Plaintiffs' theory of liability, which rests in part on the market power and influence that OEMs exert by virtue of state EPR laws, which help prop up the e-waste recycling industry; specifically, Plaintiffs allege that the OEMs have the commercial leverage to set downstream E-Waste markets by using the prospect of high volumes of E-Waste. Heisler Decl., ¶ 12(a); Womack Decl., ¶ 12(a); Defendant Decl., ¶ 5(a).

The manner in which the EPR obligations are discharged also make it exceedingly difficult to ascribe specific weights of E-Waste at the Facility to specific OEMs with any reasonable degree of certainty so as to support application of the same cost recovery formula used for prior Settlors. Heisler Decl., ¶ 12(b); Womack Decl., ¶ 12(b); Defendant Decl., ¶ 5(b). OEMs demonstrate compliance with EPR laws by providing for the disposition of E-Waste

through third parties, which complicates E-Waste tracking. Heisler Decl., ¶ 12(b); Womack Decl., ¶ 12(b); Defendant Decl., ¶ 5(b). In many cases, OEMs contract with third parties to provide for E-Waste to be transported to one location, where some disassembly takes place, and with the residuals transported by yet other third parties to another location. Heisler Decl., ¶ 12(b); Womack Decl., ¶ 12(b); Defendant Decl., ¶ 5(b). The bill of lading for any given load of E-Waste transported to the Facility, for example, does not identify whether any OEM claimed EPR credit for all or a part of that shipment, making it difficult to attribute individual shipments E-Waste to any particular OEM. Heisler Decl., ¶ 12(b); Womack Decl., ¶ 12(b); Defendant Decl., ¶ 5(b).

Further complicating the analysis is the fact that OEMs "buy" weight for purposes of meeting their EPR obligations as opposed to full loads; E-Waste subject to an OEM's EPR credits can therefore be commingled on the same truck with other E-Waste and delivered on the same bill of lading. Heisler Decl., ¶ 12(b); Womack Decl., ¶ 12(b); Defendant Decl., ¶ 5(b). OEMs also typically relied on representations made by third parties shipping E-Waste for purposes of securing EPR credits, without any reliable accounting controls or other means of independent verification. Heisler Decl., ¶ 12(b); Womack Decl., ¶ 12(b); Defendant Decl., ¶ 5(b).

Thus, Plaintiffs and Settlor agree that the discovery necessary to attempt to attribute specific weights of E-Waste at the Facility to Settlor to any reasonable degree of certainty would be costly and potentially inconclusive. Heisler Decl., ¶ 12(b); Womack Decl., ¶ 12(b); Defendant Decl., ¶ 5(b). Even if it were possible to tie specific E-Waste at the Facility to any specific OEM, the result would belie the broader and more fundamental role that Plaintiffs allege the OEMs played in creating the CRT recycling market in the first instance – *i.e.*, the market that provided the opportunity for Defendant Closed Loop to launch and advance its enterprise. Heisler Decl., ¶

12(a); Womack Decl., ¶ 12(a).

In view of the foregoing, and given that the cost recovery formula used for prior Settlors does not appear suitable for the OEM class of Defendants, Plaintiffs have taken into consideration other information, including, but not limited to, (1) information provided by Settlor regarding Settlor's modest national market share of the electronic equipment sales that generate the type of E-Waste abandoned at the Facility; (2) Settlor's commitment from the outset of settlement negotiations to participate in the funding of cleanup activities; (3) Settlor's commitment to continue to cooperate with Plaintiffs; (4) records and information provided by the Settlor relevant to the matter; (5) the availability of settlement proceeds to address a portion of the growing orphan share created by other PRPs, including PRPs that are bankrupt, defunct, dissolved, or otherwise lack ability to pay; and (6) the inclusion of a "No Windfall" provision in the Settlement Agreement designed to prevent a double recovery by Plaintiffs. Heisler Decl., ¶ 13; Womack Decl., ¶ 13.

Based on considerations identified above, as informed by their respective positions, both Plaintiffs and Settlor agree that $1.2 million is a fair, adequate, and reasonable settlement of Settlor's liability. Heisler Decl., ¶ 15; Womack Decl., ¶ 15; Defendant's Decl., ¶ 6.

It is also worth noting that the State of Ohio will not object to the Settlement Agreement and will consider Settlor's CERCLA liability to the State of Ohio satisfied, subject to certain preconditions, including this Court's issuance of contribution protection pursuant to CERCLA Section 113(f)(1). *See* Exhibit G.

Plaintiffs and Settlor now ask the Court to approve the Settlement Agreement. Pursuant to Section 6 of the Settlement Agreement, consummation of the settlement is contingent on the Court's entry of an Order providing that Settlor's settlement payments be credited *pro tanto*, and

not *pro rata*, in determining the equitable share of defendants other than Settlor, just as the Court has done for the previous settlements in this action. Plaintiffs and Settlor ask the Court to enter an Order to that effect.

Plaintiffs and Settlor also request the Court to discharge and/or bar all past, present, and future counterclaims, cross-claims and other claims against Settlor relating to the Facility, including any claims that have been or which could be made by any party to this case or any other person, except for certain claims listed in Paragraphs 4 and 9 of the Settlement Agreement. These exceptions include a reopener in Paragraph 9 if new information is discovered demonstrating that a non-settling PRP was an affiliate of Settlor in connection with this matter. This reopener is designed to make sure that Settlor pays its fair share even if evidence obtained in future discovery discloses that the Settlor is responsible for a quantity of E-Waste not considered in calculating the settlement amount in the Settlement Agreement.

## II. Argument

### A. The Settlement Agreement Should Be Approved By The Court Because Settlements Are Favored, And The Settlement Agreement Is Fair, Reasonable, And Satisfies The Requirements of CERCLA.

"The general policy of the law is to support voluntary settlements." *United States v. Cantrell*, 92 F. Supp. 2d 718, 723 (S.D. Ohio 2000) (approving CERCLA consent decrees). *See also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("In the first place, it is the policy of the law to encourage settlements."). While a trial court must evaluate a settlement agreement, "public policy generally supports 'a presumption in favor of voluntary settlement' of litigation." *United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 490 (6th Cir. 2010) (quoting *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991)).

The Sixth Circuit has stated that district courts must evaluate a CERCLA settlement for "fairness, reasonableness and consistency with the statute." *Akzo Coatings*, 949 F.2d at 1426. *Accord Cannons Eng'g*, 899 F.2d at 85. The same standards apply to CERCLA settlements between private parties. *Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc.*, No. 3:04-cv-013, 2011 WL 382617, at *2 (S.D. Ohio Feb. 3, 2011).

A district court is not required to delve into the fine points of a settlement, or to determine if other options are available. It is not the court's "function to determine whether [a settlement] is the best possible settlement that could have been obtained, but only whether it is fair, adequate and reasonable." *Akzo Coatings*, 949 F.2d at 1436. As explained in Subsections 1 through 4 below, the proposed settlement is fair, reasonable, and consistent with CERCLA.

### 1. The Settlement Negotiations Satisfy Procedural Fairness.

A CERCLA settlement "must be both procedurally and substantively fair." *Responsible Envtl. Solutions*, 2011 WL 382617 at *2 (citing *Cannons Eng'g*, 899 F.2d at 86). With respect to procedural fairness, "[t]here is a strong presumption in favor of voluntary settlements in CERCLA litigation." *United States v. 3M Co.*, No. 3:14-cv-32, 2014 WL 1872914, at *5, (S.D. Ohio May 8, 2014) (citing *Akzo Coatings*, 949 F.2d at 1436).

The procedural component is satisfied if the negotiations were conducted fairly. "To measure procedural fairness, a court should ordinarily look to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Cannons Eng'g*, 899 F.2d at 86. While "there can be no easy-to-apply check list of relevant factors" to measure fairness, one factor to be considered is whether all defendants have "had an opportunity to participate in the negotiations." *Id.* at 86-87. "The Court must determine that the negotiators bargained in good faith." *Cantrell*, 92 F. Supp. 2d at 724 (citing *Kelley v. Thomas Solvent Co.*, 717 F. Supp. 507,

517 (W.D. Mich. 1989)). *See also id.* ("The Court should gauge the candor, openness, and bargaining balance of the negotiations" (citing *Cannons Eng'g.*)).

In this case, Plaintiffs have reviewed Closed Loop's records as well as recent discovery responses made by the existing Defendants to identify the PRPs that arranged for E-Waste to be transported to the Facility. Heisler Decl., ¶ 6; Womack Decl., ¶ 6. Plaintiffs' counsel have, by letter, electronic mail, and/or telephone, invited PRPs to negotiate settlements to pay for the removal and/or remediation of the E-Waste that they contributed to the Facility, except for bankrupt, dissolved, or defunct PRPs and PRPs that sent only a *de minimus* amount of Waste that will cost no more than $6000 to cleanup. Heisler Decl., ¶ 14*;* Womack Decl., ¶ 14. Plaintiffs have negotiated with PRPs that have expressed an interest in negotiations, and those negotiations are continuing. Heisler Decl., ¶ 14*;* Womack Decl., ¶ 14. These negotiations led to the settlement with Settlor, and may result in other settlements. Heisler Decl., ¶ 14; Womack Decl., ¶ 14.

The parties to the Settlement Agreement were represented in negotiations by independent counsel. Heisler Decl., ¶ 15; Womack Decl., ¶ 15; Defendant's Decl., ¶ 4 (Exhibit D). These negotiations included, but were not limited to, evaluations of Settlor's potential liability, the evidence tying Settlor to Plaintiffs' Facility, the defenses asserted by Settlor, the potential legal fees and costs if settlement does not occur, and past and projected response costs. Heisler Decl., ¶ 15; Womack Decl., ¶ 15; Defendant's Decl., ¶ 5. The settlement is accordingly the product of arm's length negotiations conducted in good faith. Plaintiffs' counsel have used and will continue to consider the same factors to negotiate settlements with other PRPs, except where warranted by particular circumstances. Heisler Decl., ¶ 15; Womack Decl., ¶ 15. Thus, the procedural fairness test has been met.

## 2.    The Settlement Agreement Is Substantively Fair.

The substantive fairness test relates to the actual harm caused by a party at the subject site. "[A] party should bear the cost of the harm for which it is legally responsible." *3M Co.*, 2014 WL 1872914 at *5 (quoting *Cannons Eng'g*, 899 F.2d at 87). But "[t]here is no universally correct approach" to determining substantive fairness. *United States v. Atlas Lederer*, 494 F. Supp. 2d 629, 636 (S.D. Ohio 2005) (quoting *Cannons Eng'g*, 899 F.2d at 87).

Settlements must be "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Cannons Eng'g*, 899 F.2d at 87. A settlement, however, is not held to a rigid formula for comparing fault, but can "diverge from an apportionment formula in order to address special factors not conducive to regimented treatment," such as uncertainty about a settlor's liability and discounts for early settlements. *Id.* at 87-88. "There is no universally correct approach" for assessing comparative fault, and a settlement allocation with "a plausible explanation" will be approved. *Id.* at 87.

Consistent with these principles, Plaintiffs have evaluated information provided by Settlor, including information regarding Settlor's market share for electronic equipment sales. The Settlement Agreement contains a reopener that allows Plaintiffs to seek additional cleanup costs from Settlor if information is discovered demonstrating that a non-settling PRP was an affiliate of Settlor in connection with this matter. Thus, Plaintiffs and Settlor have entered into a Settlement Agreement that is fair to everyone and satisfies the substantive fairness test.

## 3.    The Settlement Agreement Is Reasonable Because It Reflects Settlor's Actual or Potential Liability.

The Court has the task of determining if a Settlement Agreement compensates "for the actual (and anticipated) costs of remedial and response measures." *Cannons Eng'g,* 899 F.2d at

14

90. Plaintiffs have evaluated information provided by Settlor, including information regarding Settlor's market share for electronic equipment sales in purview of EPR obligations under various state laws, and have determined that Settlor's settlement amount is fair, adequate, and reasonable given the past and projected response costs and Settlor's connection to the Facility. Heisler Decl., ¶¶ 6, 12-15; Womack Decl., ¶¶ 6, 12- 15.

The strength of the evidence and the probability of success on the merits also come into play in determining if a specific settlement agreement is reasonable. *Cannons Eng'g,* 899 F.2d at 90. Thus, a "reasonableness equation relates to the relative strengths of the parties' litigation positions." *Id.* The strengths and weaknesses of plaintiffs' and defendants' evidence in a contribution action will by necessity impact the outcome of settlement negotiations.

The negotiations between Plaintiffs and Settlor included, but were not limited to, evaluations of Settlor's potential liability, the strengths and weaknesses of the evidence tying Settlor to Plaintiffs' Facility, the defenses asserted by Settlor, potential legal fees and costs if settlement does not occur, and past and projected response costs. Heisler Decl., ¶ 15; Womack Decl., ¶ 15; Defendant's Decl., ¶ 5. Based on these considerations, Plaintiffs and Settlor believe that the Settlement Agreement is fair, adequate, and reasonable. Heisler Decl., ¶ 15; Womack Decl., ¶ 15; Defendant's Decl., ¶ 6. Thus, this settlement is reasonable, since it is based on the relative strengths and weaknesses of the evidence and the chances of prevailing on the merits for both Plaintiffs and Settlor.

### 4.    The Settlement Agreement Is Consistent With CERCLA.

The primary policy underlying CERCLA's provisions is "to ensure prompt and efficient cleanup of hazardous waste sites and to place the costs of those cleanups on the PRPs." *Akzo Coatings*, 949 F.2d at 1417. Settlement agreements with PRPs further the primary policy of CERCLA to investigate and remediate hazardous substances in a prompt and efficient manner.

Settlement funds help to continue the work commenced by Plaintiffs to address the E-Waste.

In addition, the settlement furthers CERCLA's goal of requiring that "those responsible for problems caused by the disposal … bear the costs and responsibility for remedying the harmful conditions they created." *3M Co.*, 2014 WL 1872914 at *7 (quoting *Cannons Eng'g*, 899 F.2d at 90-91). *See also Nurad, Inc. v. William E. Hooper & Sons Co.*, 966 F.2d 837, 841 (4th Cir. 1992), *cert. denied*, 506 U.S. 940 (1992) ("The statute encourages private cleanup of such [environmental] hazards by providing a cause of action for the recovery of costs incurred in responding to a 'release' of hazardous substances at any 'facility.'").

Finally, the Settlement Agreement relieves the settling parties and the Court of the burden of proceeding with the claims against Settlor all the way to trial, thereby conserving the Court's and the parties' resources in time and in money. The Settlement Agreement reached with Settlor is consistent with the underlying intent and policies of CERCLA.

**B.**     <u>The Court Should Approve the Contribution Bar in the Settlement Agreement.</u>

The Court should approve the contribution bar in the Settlement Agreement so that Settlor can be dismissed from this case without facing claims from other PRPs. Defendants who wish to settle will have little incentive to do so if they cannot exit the litigation and avoid additional monetary claims from non-settlors, as aptly noted by one court that granted the settling parties' request for a contribution bar:

> Courts have recognized a strong federal interest in promoting settlement. This interest is especially pronounced in complex matters such as CERCLA claims, where the amount of evidence to be gathered for assessing liability is voluminous. It is hard to imagine that any defendant in a CERCLA action would be willing to settle if, after the settlement, it would remain open to contribution claims from other defendants. The measure of finality which a cross-claim bar provides will make settlements more desirable. A settling defendant therefore "buys its peace" from the plaintiff, as being relieved of liability to co-defendants frees the settling defendant from the litigation. The court finds that the degree to which a bar on contribution cross-claims will

16

> facilitate settlement outweighs the prejudice of such a bar on non-settling defendants. Accordingly, the court grants this aspect of the motions of Plaintiffs and Defendants Hydrosol and Henkel.

*Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219, 222 (N.D. Ill. 1990) (internal citations omitted).

The Court has the authority to encourage settlement by terminating and precluding all present and future claims against Settlor, and should do so because it furthers the purposes of CERCLA. *See Responsible Envtl. Solutions*, 2011 WL 382617, at *5 (approving settlement with contribution bar because "the imposition of such a bar rests on equitable considerations, and, further, since contribution bars will foster the voluntary settlement of complex CERCLA lawsuits, a goal which is worthy of being furthered").

The federal courts, including the Southern District of Ohio, have routinely issued orders under CERCLA Section 113(f)(1) approving settlement agreements containing contribution bars prohibiting non-settling PRPs from filing claims against settling PRPs. The following language of CERCLA Section 113(f)(1) provides for court-approved settlements that can cut off contribution claims by non-settling PRPs:

> (f) Contribution
>
> (1) Contribution
> <u>Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action</u> under section 9606 of this title or <u>under section 9607(a) of this title</u>. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. <u>In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate</u>. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.

42 U.S.C. § 9613(f)(1) (emphasis added).

The courts have used the principles in model laws such as the 1977 Uniform Comparative Fault Act ("UFCA") and the Uniform Contribution Among Tortfeasors Act ("UCATA") to equitably allocate cleanup costs among PRPs. *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 724 (2d Cir. 1993); *Responsible Envtl. Solutions*, 2011 WL 382617, at *4. These model acts shield settling parties from claims of non-settlors on the premise that the settlors have paid their fair share. *Alcan*, 990 F.2d at 725. The courts have found that these equitable principles implement congressional intent underlying CERCLA, and have adopted these principles as federal common law. *Id*. at 724-25; *Responsible Envtl. Solutions*, 2011 WL 382617, at *4.

A decision by the Southern District of Ohio explains how the courts use Section 113(f)(1) to impose a contribution bar against non-settling PRPs:

> Nevertheless, a number of courts have held that it is permissible to bar contribution claims against the settling parties in a CERCLA contribution action, in accordance with the federal common law as exemplified by § 6 of the Uniform Comparative Fault Act or § 4 of the Uniform Contribution Among Tortfeasors Act.
>
> ****
>
> In its Decision of March 27, 2008, this Court indicated that it was inclined to follow the decisions adopting a contribution bar as part of the federal common law, even though such a bar is not authorized by § 113(f)(2), because such a holding is in accordance with § 113(f)(1) of CERCLA, which provides that, "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate" (42 U.S.C. § 9613(f)(1)), given that the imposition of such a bar rests on equitable considerations, and, further, since contribution bars will foster the voluntary settlement of complex CERCLA lawsuits, a goal which is worthy of being furthered. . . . Quite simply, there has been no intervening authority, nor has CWM presented any argument causing this Court to decline to follow its earlier inclination. Therefore, this Court adopts a bar, preventing CWM and every other PRP from seeking contribution from the Settling Defendants and TLC.

*Id*. This rationale resulted in an order that barred all PRPs from bringing contribution claims against the settling defendants. *Id*. at *5. This approach has also been productive for fostering

CERCLA settlements in *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115 (S.D.

Ohio 2014). *See* Exhibit E hereto, providing a sample of the orders in that case approving

settlement agreements and barring all claims against the settlors in Paragraph 3 of each order.

This Court also has applied the contribution bar in the instant case for each of the previous

settlements approved by the Court. Doc. # 312, PageId ## 3656-3657, ¶ 3; Doc. # 400, PageId #

4506, ¶ 3; Doc. # 536, PageId ## 6035-6036, ¶ 3.

Examples of other cases that have used Section 113(f)(1) to bar contribution claims

against settling PRPs in private cases include the following: *Evansville Greenway &*

*Remediation Tr. v. S. Ind. Gas & Elec. Co.,* No. 3:07-CV-66-SEB-WGH, 2010 WL 3781565, at

\*4, n. 3 (S.D. Ind. Sept. 20, 2010); *Foamseal, Inc. v. Dow Chem. Co.,* 991 F. Supp. 883, 886

(E.D. Mich. 1998); *Stearns & Foster Bedding Co. v. Franklin Holding Corp.,* 947 F. Supp. 790,

813 (D.N.J. 1996); *Mavigliano v. McDowell*, No. 93 C 7216, 1995 WL 704391, at \*2 (N.D. Ill.

Nov. 28, 1995); *Hillsborough Cnty. v. A & E Rd. Oiling Serv., Inc.,* 853 F. Supp. 1402, 1408

(M.D. Fla. 1994); *United States v. SCA Servs. of Indiana, Inc.,* 827 F. Supp. 526, 532 (N.D. Ind.

1993); *Am. Cyanamid Co. v. King Indus., Inc.,* 814 F. Supp. 215, 217-19 (D.R.I. 1993); *Barton*

*Solvents, Inc. v. Sw. Petro-Chem, Inc.,* 834 F. Supp. 342, 345–46 (D. Kan. 1993); and *Allied*

*Corp. v. ACME Solvent Reclaiming, Inc.,* 771 F. Supp. 219, 222 (N.D. Ill. 1990). Additional

cases in support of contribution bars are cited in the next two paragraphs below.

Because a non-settling defendant could circumvent a contribution bar against CERCLA

claims by suing a settling defendant under a different cause of action, the courts have used

CERCLA Section 113(f)(1) to bar claims for all potential causes of action. The Southern District

of Ohio followed this approach in *Hobart Corp. See* Paragraph 3 of the orders in Exhibit E

hereto, barring "[a]ll claims … under Sections 106, 107 or 113 of CERCLA and/or any other

federal, state or local statute, regulation, rule, ordinance, law or common law." *See also San Diego Unified Port Dist. v. Gen. Dynamics Corp.,* No. 07-CV-01955-BAS-WVG, 2017 WL 2655285, at *8-10 (S.D. Cal. June 20, 2017) (barring all claims "pursuant to any federal or state statute, common laws, or any other theory"); *City of San Diego v. Nat'l Steel & Shipbuilding Corp.,* No. 09CV2275 WQH BGS, 2015 WL 1808527, at *11-13 (S.D. Cal. Apr. 21, 2015) (barring state law claims); *AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc.,* No. CIVS 00-113 LKK JFM, 2007 WL 1946635, at *2-5 (E.D. Cal. July 2, 2007) (barring claims under state law and common law). In accordance with this principle, Plaintiffs and Settlor request that the Court bar all claims against Settlor under all legal theories, as it has done in its past approvals of settlements in this case.

Some decisions have applied the contribution bar against every PRP, including PRPs who were not parties to the lawsuits in which the settlements were approved. *San Diego Unified Port Dist.,* 2017 WL 2655285, at *10 (barring all claims "regardless of when such claims are asserted or by whom"); *Lewis v. Russell*, No. CIV 2.03-2646 WBS, 2012 WL 671670, at *6 (E.D. Cal. Nov. 9, 2012). This is the approach followed by the Southern District of Ohio in *Hobart Corporation. See* Paragraph 3 of the orders included in Exhibit E. This Court has also followed this approach for the previous settlements in the instant case. Doc. # 312, PageId ## 3656-3657, ¶ 3; Doc. # 400, PageId # 4506, ¶ 3; Doc. # 536, PageId # 6035-6036, ¶ 3. Plaintiffs and Settlor request that the Court follow the same approach for the attached settlement.

Plaintiffs have served a copy of the Motion for Approval of Settlement Agreement on all defendants and will soon send it to all other currently known PRPs. Heisler Decl., ¶ 16; Womack Decl., ¶ 16. Plaintiffs and Settlor request that the contribution bar apply to all claims that could be asserted against Settlor.

### C. Settlor's Payment Should Be Credited *Pro Tanto*, and Not *Pro Rata*, in Determining Other Defendants' Equitable Shares at Trial.

The Court's order approving this Settlement Agreement should credit Settlor's settlement payment *pro tanto* and not *pro rata* in determining other defendants' equitable shares of response costs, just as the Court has done for the previous settlements in the instant case. Doc. # 312, PageId # 3657, ¶ 4;  Doc. # 400, PageId # 4506, ¶ 4; Doc. # 536, PageId # 6036, ¶ 4. As explained below, *pro tanto* crediting encourages early settlements, encourages voluntary site cleanups, promotes faster site remediation, and reduces trial time.

The *pro tanto* and *pro rata* methods are derived from the UCATA and the UCFA, respectively, which advocate competing methods of accounting for a settling party's share when determining the amount of a nonsettling defendant's liability. *Ameripride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 483 (9th Cir. 2015). When a litigant has settled with one party, the UCFA would reduce the shares of other liable persons by the percentage of the settlor's fault (UCFA § 2). *Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 308 (7th Cir. 1999). This allocation method is known as the *pro rata*, or proportionate share, method. "Courts adopting the UCFA proportionate share approach 'must therefore determine the responsibility of all firms that have settled, as well as those still involved in the litigation.'" *Ameripride*, 782 F.3d at 483-84 (quoting *Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 20 (1st Cir. 2004)). The consequence of this approach is that tortfeasors who have not settled "will be responsible only for their proportionate share of the costs, even if the settling tortfeasor settles for less than its fair share of the injury." *Ameripride,* 782 F.3d at 484.

The UCATA's *pro tanto* method, by contrast, reduces non-settlors' liability only by the dollar amount of the settlements (UCATA § 4). *Id*. CERCLA Section 113(f)(2) (42 U.S.C. § 9613(f)(2)) applies the *pro tanto* method to PRP settlements with the United States or a State. *Id*.

(noting that Section 113(f)(2) provides that a settlement with the United States or a State "reduces the potential liability of the others by the amount of the settlement"). CERCLA does not prescribe the accounting method to be used in private settlements.

The Seventh Circuit has mandated the use of *pro tanto* as the only acceptable allocation method in CERCLA cases, observing that any other method would undermine the congressional preference for *pro tanto* revealed in CERCLA Section 113(f)(2)). *Akzo*, 197 F.3d at 307-08. Other circuits have ruled that the district courts have the discretion to use whichever of the two methods is most suited to the facts of the case. *Ameripride Servs. Inc.*, 782 F.3d at 487 (district courts may use either method, whichever is "'the most equitable method of accounting for settling parties' in private-party contribution actions"); *Am. Cyanamid*, 381 F.3d at 21 (stating that "CERCLA provides the district court with the discretion to allocate response costs among liable parties" and affirming the district court's use of *pro tanto* allocation).

"These competing approaches can produce substantial differences in incentives to settle and in the complexity of litigation." *Akzo*, 197 F.3d at 307. *Pro rata* is sometimes employed on the premise that it ensures, "in theory, that damages are apportioned equitably among the liable parties." *Am. Cyanamid*, 381 F.3d at 20. *Pro tanto*, however, has several important advantages in the context of this case.

First, the *pro tanto* method is better at furthering CERCLA's goals than *pro rata*, because it encourages PRPs to negotiate and leads to earlier settlements:

> In general, the pro tanto approach, by placing the risk of lenient settlements on PRP hold-outs …, facilitates CERCLA's goal of encouraging early settlement and private remediation. In a pro rata regime, PRPs … who assume responsibility for cleanup … will have no flexibility to negotiate in settlements. If they accept anything less from a PRP than what a court later determines to have been that PRP's proportionate share, they will have to pay for the difference out of their own pockets. Further, the defendant PRPs will have no incentive to settle early on, because the early settlements of other PRPs will have no effect on the

potential liability of remaining PRPs. In such a regime, it would be more difficult to settle with contribution defendants. As a result, contribution plaintiffs would be forced to litigate against more PRPs, spending non-recoverable attorneys fees. Such a prospect would make it less likely that PRPs would be willing to sign consent decrees … and voluntarily undertake remediation of polluted sites.

In contrast, under a pro tanto regime, contribution plaintiffs will have more flexibility in settling with defendant PRPs, because any potential shortfalls of early settlements can be shared by the contribution plaintiffs and non-settling PRPs in an equitable allocation at trial.… If it is easier for PRP groups to recover costs by settling early with other PRPs, they are more likely to come forward to settle … and take on the task of remediating contaminated sites, furthering CERLCA's goals of private party remediation and early settlement.

*Action Mfg. Co. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288, 326 (E.D. Pa. 2006), *aff'd,* 287

Fed. App'x 171 (3d Cir. 2008) (citing Joseph A. Fischer, "All CERCLA Plaintiffs Are Not

Created Equal: Private Parties, Settlements, and the UCATA," 30 Hous. L. Rev. 1979 (1994)).

Another court has noted that *pro tanto* accounting, unlike the *pro rata* method, encourages a

plaintiff to voluntarily clean up hazardous substances:

The *pro tanto* approach best furthers CERCLA's primary goal of promoting prompt and effective cleanups by assuring that the private-party § 9607 plaintiff will not be shortchanged in their attempt to recover cleanup costs. Because the plaintiff knows the precise amount their settlement will be worth and the rest of the response costs will be recoverable from other PRP's held strictly liable under the statue, the plaintiff can be virtually assured of complete recovery. By contrast, under the proportionate approach, the private party who conducted cleanup is likely to be left holding the proverbial bag if they inaccurately forecast the relative culpability of a settling defendant.… Since a non-PRP private party who conducts CERCLA related cleanup already faces the hurdle and expense of pursuing litigation to receive compensation for its response costs, the prospect of less than full recovery would add an additional disincentive to private party cleanups and would therefore be contrary to CERCLA's principle goals.

*Veolia Es Special Servs., Inc. v. Hiltop Invs., Inc.,* No. CIV.A. 3:07-0153, 2010 WL 898097, at

*7 (S.D. W.Va. Mar. 12, 2010). The Southern District of Ohio has expressed the same

sentiments as reasons for approving *pro tanto* accounting in CERCLA settlements. *See Hobart*

*Corp.*, Order of Apr. 18, 2016 (Exhibit F), pp. 5-6. The Court in the instant case has concurred in

this rationale as well with respect to the previous settlements. This Court has found the *pro tanto* approach to be appropriate for the previous settlements in the instant case. Doc. # 312, PageId # 3657, ¶ 4; Doc. # 400, PageId ## 4503-4505; Doc. # 536, PageId # 6035, ¶ 4. In cases with multiple defendants, like this case, the *pro rata* approach "encourages defendants to hold out until a fault-based allocation can be made, requiring the plaintiff to continuing litigating and thereby reduce its net recovery." *Veolia*, 2010 WL 898097, at *7.

The second advantage of using the *pro tanto* method in this case is that it will serve judicial economy. Under both methods, a court must determine the settlement's fairness. *Id.* at *8. For the *pro rata* method, "a court must determine the relative culpability of all parties - including settling parties - and their equitable share at trial." *Id.* In CERCLA cases, "the assignment of liability to missing parties at trial will often be more time consuming and costly." *Id.* (citing *Am. Cyanamid*, 381 F.3d at 20 (noting that "[s]uch a process can lead to a "complex and unproductive inquiry")); *Akzo Nobel Coating*, 197 F.3d at 308; *Action Mfg.*, 428 F. Supp. 2d at 326 (*pro tanto* is easier to administer).

A court using the *pro tanto* approach evaluates fairness at the time of settlement, not trial. *Action Mfg.*, 428 F. Supp. 2d at 326 (recognizing that the *pro tanto* approach places the risk of lenient settlements on PRP hold-outs subject to pending litigation). No evidentiary fairness hearing is necessary prior to their approval. *Cannons Eng'g*, 899 F.2d at 94 (stating that "[i]n general, we believe that evidentiary hearings are not required under CERCLA when a court is merely deciding whether monetary settlements comprise fair and reasonable vehicles for disposition of Superfund claims"). The Southern District of Ohio, in declining to hold a fairness hearing in another CERCLA case employing *pro tanto* accounting, has found that evidentiary hearings for CERCLA settlements are rarely granted, are unnecessary in the absence of any

evidence of collusion or unfairness, and would be the "functional equivalent of a full-blown trial" that would discourage settlement by PRPs who want to settle to avoid litigation costs. *Hobart Corp.*, Order of Apr. 18, 2016 (Exhibit F), pp. 9-12. Based on this principle, settlements in the instant case are appropriate for *pro tanto* accounting, which will serve the purpose of judicial economy.

Thus, the "[a]doption of the *pro tanto* rule in CERCLA cases encourages early settlement, the allocation of private resources towards the hazardous waste disposal problem, and ultimately the expeditious cleanup of hazardous waste sites." *Veolia,* 2010 WL 898097, at *7. This accounting method also efficiently conserves the resources of the court and the parties. The same principles apply here. The Court should approve the Settlement Agreement and direct that Settlor's settlement be credited *pro tanto*, just as the Southern District of Ohio has done in the instant case and other cases. *See* Doc. # 312, PageId # 3657, ¶ 4; Doc. # 400, PageId # 4506, ¶ 4; Doc. # 536, PageId # 6036, ¶ 4. *Hobart Corp.*, No. 3:13-cv-115 (S.D. Ohio 2014, Apr. 4, 2016) (Exhibit E); *Responsible Envtl. Solutions*, 2011 WL 382617 at *2-5 (approving motion for approval of settlement agreement with request for *pro tanto* allocation). *See also* Paragraph 4 in the orders in *Hobart Corporation* included in Exhibit E.

### D. <u>The Court Should Enter the Settlement Agreement as a Final Judgment.</u>

For the reasons that follow, the Parties jointly request that the Court make explicit its determination of finality with respect to the Settlement Agreement by directing the entry of final judgment and by finding that there is no just reason to delay an appeal pursuant to Federal Rules of Civil Procedure 54(b) and 58.

1.    <u>**Entry of the Settlement Agreement as a Final Judgment Is Warranted.**</u>

Based on recent developments and the current litigation posture, the Court's order approving this Settlement Agreement merits entry as a final judgment pursuant to Rules 54(b) and 58.

First, with respect to recent developments, this settlement agreement is the first settlement submitted for judicial approval since Garrison commenced onsite removal activities at 1655 and 1675 Watkins Road on September 21, 2020. These activities are being, and will be, paid for with settlement proceeds from this litigation in furtherance of a hazardous waste closure plan and CERCLA engineering evaluation/cost analysis ("EE/CA") approved by the Ohio Environmental Protection Agency ("Ohio EPA") on September 3, 2020.[2] Olymbec likewise anticipates commencement of onsite removal activities at 2200 Fairwood Avenue in early 2021 pursuant to an Ohio EPA-approved closure plan and EE/CA and intends to fund such activities with the proceeds of settlement agreements. Without the additional layer of finality in judgment provided by the entry of an order pursuant to Rules 54(b) and 58, Plaintiffs cannot commit the settlement proceeds from Settlor to these cleanup efforts without risking substantial financial exposure, as Plaintiffs would otherwise retain the risk of having to return the settlement proceeds to Settlor until a court approval of the settlement agreement is final and non-appealable. Plaintiffs are entitled to know if they will obtain the benefit of the bargain reached with Settlor before incurring these costs.

---

[2] Garrison voluntarily submitted the closure plan and EE/CA to demonstrate compliance with, among other things, the U.S. Environmental Protection Agency National Contingency Plan at 40 C.F.R. Part 300. See https://www.ensafe.com/closedloop/watkins/ (providing the full Watkins Road administrative record, including response to public comments).

Second, with respect to the litigation posture, this is the first settlement submitted for judicial approval since the Plaintiffs amended their respective complaints in August 2020 to add the new class of OEM Defendants, with the exception of one settlement for like-kind services that did not involve a cash settlement payment. Garrison Doc. # 539; Olymbec Doc. # 425. Plaintiffs amended their complaints to add these Defendants following discovery that was expressly designed to identify potential new Defendants in keeping with the Court's Preliminary Pretrial Order, dated January 22, 2020. Doc. # 502; PageId # 5655, n. 1. Any additional amendments to add new parties will require leave from the Court with good cause shown. Based on Closed Loop's records as well as these recent discovery responses, the addition of the OEM Defendants completes the classes of defendants to the litigation and, therefore, all classes of defendants are now accounted for. Accordingly, it is appropriate to render finality in judgment..

### 2. Fed. R. Civ P. 54(b)

As this Court has recently explained, achieving finality pursuant to Rule 54(b) involves a two-step analysis: "'the district court must expressly direct the entry of final judgment as to one or more but fewer than' all of the claims in the case and then the court must expressly find that there is no just reason to delay an appeal." *Ball v. Kasich*, No. 2:16-cv-282, 2020 WL 4528822, at *3 (S.D. Ohio Aug. 6, 2020) (Sargus, J.), *appeal docketed*, No. 20-3927 (6th Cir. Sept. 3, 2020) (citing *Gen. Acquisition, Inc. v. GenCorp., Inc.,* 23 F.3d 1022, 1027 (6th Cir. 1994). For the reasons that follow, the Settlement Agreement meets the legal test provided by Rule 54(b).

### a. Step 1: Final Judgment

Rule 54(b) authorizes the Court "to direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." This first step is implicated in the ultimate disposition of one or more but fewer than

all claims or parties in a multi-claim/multi-party action, like this CERCLA litigation. The rule "relaxes the traditional finality requirement for appellate review," and is specifically "designed to facilitate the entry of judgment on one or more claims, or as to one or more parties, in a multi-claim/multiparty action." *Gen. Acquisition,* 23 F.3d at 1026 (citing *Solomon v. Aetna Life Ins. Co.,* 782 F.2d 58, 60 (6th Cir. 1986)).

To satisfy this first step: "A district court must first determine that it is dealing with a 'final judgment.' It must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* at 1027 (quoting *Curtis-Wright Corp. v. Gen. Elec. Corp.*, 446 U.S. 1, 7 (1980)); *see also United States v. Cannons Eng'g Corp.*, 720 F. Supp. 1027, 1053 (D. Mass. 1989), *aff'd, United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990) (internal citations omitted) (finding that, for purposes of Fed. R. Civ. P. 54(b), (1) CERCLA "Consent Decrees constitute 'judgments' because they resolve all liability of the settling defendants on 'cognizable claim[s] for relief' brought by plaintiffs under CERCLA" and (2) the "judgment is 'final' because the Consent Decrees constitute an 'ultimate disposition of an individual claim entered in the course of a multiple claims action.'"); U.S. ENVTL. PROTECTION AGENCY, "Model Remedial Design /Remedial Action Consent Decree," at https://cfpub.epa.gov/compliance/models/view.cfm?model_ID=81 (providing: "The Court [**if this CD is a partial judgment, i.e., it resolves fewer than all claims alleged in the complaint and/or fewer than all parties named in the complaint, insert**: finds that there is no just reason for delay and therefore] enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58") (emphasis in original).

As a threshold matter, the Court has already implicitly entered judgment on the 23 settlement agreements and the consent decree approved thus far. Judgment was entered in connection with all claims "asserted, to be asserted, or which could be asserted against the[se] Settling Defendants" arising from E-Waste at the Facility, with such claims "discharged, barred, permanently enjoined, dismissed with prejudice, satisfied, and [] otherwise enforceable in this case or in any other proceeding." Doc. # 312, PageId ## 3656-3657, ¶ 3; Doc. # 400, PageId # 4506, ¶ 3; Doc # 536, PageId ## 6035-6036, ¶ 3. These terms are decisive, absolute and were intended to resolve all liability of the Settlors for those specific and cognizable claims raised by Plaintiffs in the instant actions. This Court applied similar logic in *Ball v. Kasich*, finding that, under the circumstances presented in that case, Rule 54(b) certification was supported by the fact that the Court had previously "implicitly entered judgement on all claims between the Plaintiffs, the Plaintiff Class, the Defendants and the County Board-Intervenors when it resolved those claims." 2020 WL 4528822, at *3. The same is true here.

By the same reasoning, the Court's judgments approving the prior settlement agreements and consent decree were also intended to confer some measure of finality on the Settlors. Indeed, the contribution protection in CERCLA, which the Court has granted for all settlements approved thus far in this litigation, "was designed to encourage settlements and provide PRPs a measure of finality in return for their willingness to settle." *Cannons Eng'g,* 899 F.2d at 92. Further, implicit in the Court's limited retention of jurisdiction "after entry of final judgment" to enforce the terms and conditions of the prior settlement agreements and the consent decree is the fact that the Court's orders were otherwise intended to be "final." Doc. # 312, PageId # 3657, ¶ 6; Doc. # 400, PageId # 4507, ¶ 6; Doc. # 536; PageId # 6036, ¶ 6. The Court thereupon dismissed the Settlors from the litigation, expressly directing the Clerk in its most recent two

orders to remove the dismissed Settlors from the litigation. Doc. # 312, PageId # 3657; ¶ 5; Doc. # 400, PageId # 4507; Doc. # 536; PageId ## 6036-6037. The dockets in the cases similarly reflect that the settling parties are "TERMINATED" from the litigation. It stands to reason that no one intended for litigation against any of these dismissed Settlors to be resurrected years from now, long after Plaintiffs have used those settlement payments to fund the cleanup at the Facility.

To satisfy step one, and to make explicit what might otherwise be implicit, the Court should direct the Clerk to enter an order approving this Settlement Agreement as having the full force and effect of a final judgment under Federal Rule of Civil Procedure 54(b).

      **b.**     **<u>Step 2: Delay</u>**

Rule 54(b) authorizes the Court "to direct entry of a final judgment as to one or more, but fewer than all, claims or parties <u>only if the court expressly determines that there is no just reason for delay</u>." Fed. R. Civ. P. 54(b). This <u>second step</u> is "required to determine if there is no just reason for delay of an immediate appeal." *Ball*, 2020 WL 4528822, at \*3. The opinion accompanying the judgment entry must also provide a reasoned analysis of the grounds for such a determination. *See Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc*., 807 F.2d 1279, 1284-85 (6th Cir. 1986). This analysis involves, among other things, "strik[ing] a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." *Gen. Acquisition*, 23 F.3d at 1027 (quoting WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2655 (1983 & Supp. 1993)).

Citing to the Sixth Circuit's decision in *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc*., this Court has articulated the following non-exhaustive factors to consider in making a

determination that "there is no just reason for delay" for purposes of the second step of the Rule 54(b) analysis:

> (1) the relationship between the adjudicated and non-adjudicated claims; (2) the possibility that the need for appellate review might become moot due to future developments in the district court; (3) the possibility that the appellate court might be required to hear the same issue twice; (4) the presence or absence of a claim or counterclaim that might result in a set-off against the final judgment; and (5) other miscellaneous factors, including "delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like."

*Ball*, 2020 WL 4524822, at *3 (quoting *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 596 (6th Cir. 2013)). Each is addressed below.

First, with respect to any relationship between adjudicated and non-adjudicated claims, the proposed order dismisses only those claims asserted, to be asserted, or which could be asserted against Settlor, including, by incorporation of the Settlement Agreement, the "Claims brought in *Garrison Southfield Park LLC v. Closed Loop Refining and Recovery, Inc., et al.*, Case No. 2:17-cv-00783-EAS-EPD (S.D. Ohio), and *Olymbec USA LLC v. Closed Loop Refining and Recovery, Inc., et al.*, Case No. 2:19-cv-01041-EAS-EPD (S.D. Ohio), against SETTLOR." Although these non-adjudicated claims "relate to" the claims being adjudicated and to be adjudicated by and against other Defendants given that they all collectively arise out of CERCLA liability for the same Facility, the remaining claims involving other Defendants can nonetheless be "fully and fairly adjudicated independently." *See Ball*, 2020 WL 4528822, at *4. Moreover, CERCLA authorizes a court to immunize PRPs like Settlor "for claims for contribution regarding matters addressed in the settlement," despite the existence of claims left to be adjudicated, given that the settlement "reduces the potential liability of the others by the amount of the settlement." 42 U.S.C. § 9613(f)(2). The same concept applies in private cost recovery actions where contribution protection is provided via CERCLA § 113(f)(1). Any

construction to the contrary would constitute an end run around CERCLA's statutory scheme to immunize settling parties from liability despite the "corresponding detriment to their more recalcitrant counterparts." *Cannons Eng'g*, 899 F.2d at 91; *see also United States v. Pretty Prods., Inc.*, 780 F. Supp. 1488, 1496 n. 7 (S.D. Ohio 1991) (barring contractual indemnification claim by non-settling party against settling party pursuant to CERCLA § 113(f)(2), and noting "this Court would be skeptical of any attempt to make an end run around CERCLA's contribution immunity").

Second, assuming the Court grants this motion and accompanying proposed order, there is no possibility that the need for appellate review might become moot due to future developments in the district court. The issues that would be presented for appellate review are limited to whether the Settlement Agreement with Settlor is fair and reasonable, and whether the terms of the proposed order extending contribution protections to Settlor are consistent with CERCLA and applicable law. These issues are specific to Settlor, which would be dismissed from the case with prejudice. There will accordingly be no future rulings in this Court involving Settlor that would moot any need for appellate review of these issues.

Third, there is little possibility that the appellate court might be required to hear the same issue twice for all of the reasons noted immediately above: the appellate review would be specific to Settlor, which would be dismissed from the case with prejudice. Any concern with piecemeal appeals involving future settlement agreements with Defendants based on similar grounds is mitigated by the fact that the approval of settlements is "committed to the discretion of the district court," with such "discretion to be exercised in light of the strong policy in favor of voluntary settlement of litigation." *Cannons Eng'g Corp.*, 720 F. Supp. at 1053 (granting a

motion for entry of the "Major PRP Consent Decree" as a final judgment pursuant to Fed. R. Civ. P. 54(b)).

Fourth, with respect to claims or counterclaims that might result in a "set-off" against the final judgment, set-offs are not only contemplated, but commanded in CERCLA litigation. This Court has found on multiple occasions that payments by the Settling Defendants to Plaintiffs should be credited *pro tanto*, thus reducing the liability of the remaining liable parties by the dollar amount of Settling Defendants' settlement payments. For all of the reasons set forth above and in prior motions to approve settlement agreements, Plaintiffs and Settlor similarly request a *pro tanto* approach because it "will best serve the purposes of CERCLA at this time given that the approach is known to facilitate settlement among holdout defendants. . . ." Doc. #536, PageId # 6034.

Fifth, there are several other miscellaneous factors that weigh in favor of a finding that there is no just reason for delay. Perhaps most notably, Garrison commenced onsite removal activities at 1655 and 1675 Watkins Road on September 21, 2020, and Olymbec anticipates that it will begin of onsite removal activities at 2200 Fairwood Avenue in early 2021. Because Plaintiffs have begun expending settlement funds on cleanup activities, the prospect of an appeal of this Settlement Agreement that could take place years from now would undermine the primary policy of CERCLA to remediate hazardous substances in a "prompt and efficient" manner, given the import of this settlement to the ongoing effort and the challenges the parties overcame to reach agreement. *Akzo Coatings*, 949 F.2d at 1417. Moreover, it would "disserve a principal end of [CERCLA] – achievement of prompt settlement and a concomitant head start on response activities – to leave matters in limbo until more precise information was amassed." *Cannons Eng'g,* 899 F.2d at 88; *see also Pakootas v. Teck Cominco Metals, Ltd*., 905 F.3d 565, 576 (9th

Cir. 2018) (finding that the appellate court had jurisdiction under Fed. R. Civ. P. 54(b) to hear the appeal because "[t]his is a complex case that has been ongoing for fourteen years, and the entry of partial judgment against Teck would help ensure that a responsible party promptly pays for the contamination of the Upper Columbia River, advancing CERCLA's goals and easing the Tribes' burden of financing the litigation effort").

In this case, Plaintiffs' burden of financing this litigation has been compounded with the burden of financing ancillary litigations, including litigation with the insurance carrier for Defendant Closed Loop. Separate and apart from these litigations, Plaintiffs have further suffered severe financial losses in connection with Closed Loop's abandonment of the Facility, including lost rent and attorneys' fees, much of which is not recoverable under CERCLA. Doc. # 539; PageId # 6025, n. 6. Plaintiffs respectfully submit that these losses and the prospect of future financial risk, including potential refunding of the settlement proceeds, provide additional support for entering the Settlement Agreement as a final judgment to provide Plaintiffs and Settlor with a more durable indicia of finality.

Finally, equitable factors specific to CERCLA cost recovery actions likewise warrant a finding that there is no just reason for delay. As discussed by the lower court (and as affirmed on appeal) in *United States v. Cannons Engineering Corp*:

> Moreover, in view of the complexity of this litigation, the public interest in prompt cleanup, and the statutory goal of providing finality to settling defendants, the court finds that there is no just reason to delay the entry of final judgment. The settling defendants who have negotiated a settlement of their claims in good faith should not have to wait until the resolution of plaintiffs' claims against non-settling defendants to learn whether the settlements are final, particularly because CERCLA expressly authorizes the United States to enter into settlements which do not involve all potential defendants. *See* 42 U.S.C. § 9622. The settling defendants are, under the Consent Decrees, obligated to make payments and/or perform work. They are entitled to know if they will obtain the benefit of their bargains before incurring these substantial costs.

34

720 F. Supp. at 1053; *see also Evansville Greenway & Remediation Tr. v. S. Ind. Gas & Elec. Co.,* No. 3:07-CV-66-SEB-WGH (filed May 21, 2007) (routinely approving joint motions to approve CERCLA settlement agreements as final, appealable judgments pursuant to Rule 54(b) (*e.g.*, Doc. ## 873, 874, 882, 893, 898)).

### 3. <u>Fed. R. Civ. P. 58</u>

Rule 58 requires that "[e]very judgment . . . must be set out in a separate document" subject to certain delineated exceptions, none of which apply. Fed. R. Civ. P. 58. The Court should accordingly enter an order approving this Settlement Agreement as a document separate and apart from the Court's opinion in order to satisfy Rule 58.

## III. <u>Conclusion</u>

For all the foregoing reasons, Plaintiffs and Settlor request that the Court grant the Order approving their Settlement Agreement.

Respectfully submitted,

**BROWN LAW OFFICE LLC**

/s/ Daniel A. Brown
Daniel A. Brown (#0041132)
Trial Attorney
204 S. Ludlow St., Suite 300
Dayton, OH 45402
Tel: (937) 224-1216 (direct)
Fax: (937) 224-1217
Email: dbrown@brownlawdayton.com

**VAN KLEY & WALKER, LLC**

/s/ Jack A. Van Kley
Jack A. Van Kley (#0016961)
Trial Attorney
132 Northwoods Blvd., Suite C-1
Columbus, OH 43235
Tel: (614) 431-8900
Fax: (614) 431-8905
Email: jvankley@vankleywalker.com

Of Counsel:

**GLANKLER BROWN, PLLC**

/s/ Randall B. Womack
Randall B. Womack (*pro hac vice*)
6000 Poplar Avenue, Suite 400
Memphis, TN 38119
Tel: (901) 525-1322 (direct)
Fax: (901) 525-2389
Email:  rwomack@glankler.com

*Attorneys for Plaintiff Olymbec USA LLC*

Of Counsel:

**KING & SPALDING LLP**

/s/ Karl R. Heisler
Karl R. Heisler (*pro hac vice*)
353 N. Clark Street, 12th Floor
Chicago, IL 60654
Tel: (312) 764-6927
Fax: (312) 995-6330
Email:  kheisler@kslaw.com

*Attorneys for Plaintiff Garrison
Southfield Park LLC*

**GRANGER CO., L.P.A.**

s/ Mark R.Granger
Mark S. Granger (#0068620)
Trial Counsel
132 Northwoods Blvd., Suite B
Columbus, Ohio 43235
Tel: (614) 854-0615
Fax: (614) 885-7574
mgranger@grangercolpa.com

**SIVE PAGET & RIESEL P.C.**

/s/ Scott Furman (pro hac vice pending)
560 Lexington Avenue, 15th Floor
New York, NY 10022
Tel: (212) 421-2150
Fax: (212) 421-1891
Email:  sfurman@sprlaw.com

*Attorneys for Sony Electronics Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on November 12, 2020, a copy of the foregoing

Amended Motion to Approve Settlement Agreement was filed electronically with the Court's

CM/ECF system, which will send notification to all attorneys registered to receive such service.

Parties may access this filing through the Court's electronic filing system.

/s Jack A. Van Kley<br>Jack A. Van Kley (#0016961)<br>Trial Attorney