UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GARRISON SOUTHFIELD
PARK LLC,

          Plaintiff,                 Case No. 2:17-cv-783
                                          JUDGE EDMUND A. SARGUS, JR.
     v.                         Magistrate Judge Elizabeth P. Deavers

CLOSED LOOP REFINING
AND RECOVERY, INC., *et al.*,

          Defendants.

OLYMBEC USA LLC,

          Plaintiff,                 Case No. 2:19-cv-1041
                                          JUDGE EDMUND A. SARGUS, JR.
     v.                         Magistrate Judge Elizabeth P. Deavers

CLOSED LOOP REFINING
AND RECOVERY, INC., *et al.*,

          Defendants.

## <u>OPINION AND ORDER</u>

This matter is before the Court on several motions:

- Plaintiff Garrison Southfield Park LLC and Plaintiff Olymbec USA LLC's Motion for Settlement with Sony Electronics (ECF Nos. 614, 616)[1];

- Plaintiffs' Motion for Settlement with the Kuusakoski Defendants (ECF No. 669);

- The Kuusakoski Defendants' Motion to Stay and Enjoin (ECF No. 708);

- Defendant Vintage Tech LLC's Motion to Dismiss (ECF No. 717);

---

[1] For convenience, the Court will cite to the Garrison docket (2:17-cv-783) unless otherwise noted.

- Defendant Samsung's Electronics America, Inc.'s Motion for Leave to file Sur-Reply to Plaintiffs' Motion Seeking Approval of Settlement with the Kuusakoski Defendants and to File Sur-Reply Under Seal (ECF No. 746); and

- Defendant LG's Electronics, U.SA., Inc.'s Motion for Leave to File to File Sur-Reply to Plaintiffs' Motion Seeking Approval of Settlement with the Kuusakoski Defendants and to File Certain Exhibits Under Seal (ECF No. 752).

## I. Background

The background of this case is set out in greater detail in the Court's prior opinions approving settlements in this case. See *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, No. 2:17-CV-783, 2020 WL 4435130, at *1 (S.D. Ohio Aug. 3, 2020); *Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, No. 2:17-CV-783, 2019 WL 3997683, at *1 (S.D. Ohio Aug. 23, 2019).  However, a brief overview is still necessary.

These cases arise under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA").  (Second Am. Compl., ECF No. 539.)  Plaintiffs allege that Defendant Closed Loop and others collaborated in a sham scheme to recycle cathode ray tubes, resulting in over 128 million pounds of hazardous e-waste at Plaintiff Garrison's properties and over 30 million pounds of hazardous e-waste at Plaintiff Olympec's property.  (*Id.* ¶ 2; Olymbec Second Am. Compl. ¶ 2, ECF No. 425.)  Plaintiffs estimate that it will cost nearly $22 million to clean up the e-waste at the Garrison and Olymbec properties.  (Heisler Decl. ¶ 9, ECF No. 614-3.)  This action is a cost recovery action under Section 107 of CERCLA, 42 U.S.C. § 9607(a).  (Second Am. Compl. ¶ 472.)

Throughout this case, the Court has approved 24 settlement agreements and a consent decree to facilitate cleanup of the e-waste.  (ECF Nos. 312, 400, 536, 683). The earlier-named

2

Defendants in this case generally were in the "Arranger/Transporter" class, or those Defendants that arranged for the transportation or did transport e-waste to the Closed Loop facilities. The Kuusakoski Defendants are in the Arranger/Transporter class. The Second Amended Complaint added a class of Original Equipment Manufacturers ("OEM"). Defendant Sony is one of the OEM Defendants.

## II. Settlement Motions

This Court has explained that "[t]he general policy of the law is to support voluntary settlements." *United States v. Cantrell*, 92 F. Supp. 2d 718, 723 (S.D. Ohio 2000). To answer the question of whether a proposed CERCLA settlement should be approved, the Court must determine whether it is "fair, reasonable and adequate[,] in other words, consistent with the purposes that CERCLA is intended to serve." *Responsible Envtl. Sol. All. v. Waste Mgmt, Inc.*, No. 3:04-cv-013, 2011 WL 382617, at \*2 (S.D. Ohio Feb. 3, 2011) (quoting *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1989)); *see United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990) (explaining that approval of a settlement agreement is based on a trial court's determination that "the settlement is reasonable, fair and consistent with the purposes that CERCLA is intended to serve").

A CERCLA settlement must be "procedurally and substantively fair." *Responsible Envtl.*, 2011 WL 382617, at \*2 (citing *Cannons Eng'g Corp.*, 899 F.2d at 86). "Procedural fairness is one aspect of a settlement that is reasonable, fair, and consistent with CERCLA." *United States v. 3M Co.*, No. 3:14-cv-32, 2014 U.S. Dist. LEXIS 63934, at \*8 (S.D. Ohio May 5, 2014). There is a strong presumption of procedural fairness when CERCLA settlements are entered into voluntarily. *Id.* at \*12 (citing *Akzo Coatings*, 949 F.2d at 1436). Yet, courts should still look "to the negotiation process and attempt to gauge its candor, openness, and bargaining balance." *Id.* at \*8 (quoting

3

*Cannons Eng'g Corp.*, 899 F.2d at 86). Additionally, "[p]rocedural fairness requires that settlement negotiations take place at arm's length," which includes consideration of whether the parties had quality representation throughout their negotiations. *See Garrison Southfield Park LLC*, 2019 WL 3997683, at *2 (quoting *3M Co.*, 2014 WL 182914, at *3). Finally, the "Court must determine that the negotiators bargained in good faith." *Id.*

"Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible." *Cannons Eng'g Corp.*, 899 F.2d at 87. In other words, "settlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each [potentially responsible party ("PRP")] has done." *Id.*

In deciding whether to approve a settlement agreement, the ultimate goal of the district court is to ensure the settlements are "fair, reasonable and consistent with the purposes of CERCLA" which, as the Supreme Court has explained, is the "prompt cleanup of hazardous waste sites and impose . . . all cleanup costs on the responsible party." *Garrison Southfield Park LLC*, 2019 WL 3997683, at *2 (citing *Key Tronic Corp. v. United States*, 511 U.S. 809, 815 n.6 (1994)). Yet, "[t]here is no universally correct approach" for determining comparative fault and, by extension, substantive fairness. *United States v. Atlas Lederer*, 494 F. Supp. 2d 629, 636 (S.D. Ohio July 13, 2005) (quoting *Cannons Eng'g*, 899 F.2d at 87).

The Court now considers two separate settlement motions. Plaintiffs have negotiated a settlement with Sony and seek the Court's approval of the settlement agreement. Plaintiffs have also negotiated a settlement with the Kuusakoski Defendants and seek the Court's approval of that settlement agreement. The Court will analyze the agreements separately.

4

Before analyzing the agreements, the Court will address an issue contested by Objecting Defendants on both motions: whether the settlements should be credited pro tanto or pro rata. The Court's prior settlement opinions in this case uniformly applied the pro tanto method. But the Court did not commit to a blanket application of the pro tanto method for all settlements in this case and left the door open for Defendants to object to future settlements seeking application of the pro tanto method. *Garrison Southfield Park LLC*, 2019 WL 3997683, at \*6. As the Court will explain, the Court now finds it appropriate to commit to uniform application of the pro tanto method in this case. The Court will therefore evaluate the fairness of the instant proposed settlements from the starting point that any settlement, if approved, will be credited pro tanto, consistent with all prior settlement approvals in this case and consistent with the goals of CERCLA.

### A. The Court Will Apply the Pro Tanto Method in Crediting All Settlements in this Case

On both settlement motions before the Court, Objecting Defendants uniformly challenge the Settlors' request that the settlement be credited pro tanto instead of pro rata. The Court applied the pro tanto approach in each of the prior orders in this case approving a total of 24 settlement agreements and a consent decree. *See Garrison Southfield Park LLC v. Closed Loop Ref. & Recovery, Inc.*, No. 2:17-CV-783, 2020 WL 4435130, at \*11 (S.D. Ohio Aug. 3, 2020).

Plaintiffs and Sony initially sought application of the pro tanto approach. In their reply brief, however, Plaintiffs and Sony changed course in response to Objecting Defendants, agreeing that the settlement "can be credited pro rata, and not pro tanto," for the Sony settlement only, in hopes that this concession would expedite the Court's approval of the settlement agreement. (ECF No. 667 at 36.) Plaintiffs and the Kuusakoski Defendants seek application of the pro tanto approach. (ECF No. 669 at 19.)

### 1.  Pro tanto vs. pro rata in private-party CERCLA cases

In CERCLA cases when less than all the PRPs reach a settlement with the plaintiff, a court must determine how to credit that settlement against the liability to be apportioned among the non-settling defendants.  *AmeriPride Servs. Inc. v. Texas E. Overseas Inc.*, 782 F.3d 474, 483 (9th Cir. 2015).  When a PRP reaches a settlement with the government, CERCLA mandates that a court "reduce the potential liability of the [other PRPs] by the amount of the settlement"—otherwise known as the pro tanto approach from the Uniform Contribution Among Tortfeasors Act (UCATA).  42 U.S.C. § 9613(f)(2); *AmeriPride Servs. Inc.*, 782 F.3d at 483.  However, the settlements at issue here involve private parties.  The statute is silent about how courts should credit settlements among private parties. 42 U.S.C. § 9613(f)(1).  It simply instructs courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate."  *Id.*

Because the statute leaves open how courts should credit settlements between private parties, courts evaluating CERCLA settlements have considered two approaches: the UCATA "pro tanto" approach, and the proportionate share or "pro rata" approach from the Uniform Comparative Fault Act (UCFA).  *AmeriPride Servs. Inc.*, 782 F.3d at 483; *see also, e.g.*, *Hobart Corp. v. Dayton Power & Light Co.*, 2016 U.S. Dist. LEXIS 202349, *67 (S.D. Ohio Apr. 18, 2016).  Under the UCFA pro rata approach, a settlement reduces the plaintiff's claim against the non-settling defendants by the settling party's equitable share of the damages.  *AmeriPride Servs. Inc.*, 782 F.3d at 483.  In contrast, as discussed above, the UCATA pro tanto approach reduces the non-settling defendants' liability by the dollar amount of the settlement.  *Id.*

The two approaches can "produce substantial differences in incentives to settle and in the complexity of litigation."  *Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302, 307 (7th Cir.

1999).  The pro tanto approach can facilitate quicker settlements in CERCLA cases involving many PRPs by "placing the risk of lenient settlements on PRP holdouts, who know that they may be called upon to make up any shortfall."  *Hobart*, 2016 U.S. Dist. LEXIS 202349, at *66 (citing *Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 428 F. Supp.2d 288, 326 (E.D. Pa. 2006)) (internal quotations omitted).  However, because a pro tanto settlement shifts risk from the settling PRPs to non-settling PRPs, the pro tanto approach can create a "potential for unfairness or collusive settlements."  *AmeriPride Servs. Inc.*, 782 F.3d 484. If earlier-settling defendants underpay, the later-settling defendants could be forced to pay more than their proportionate share of the liability.

On the other side, the pro rata approach will often result in a "more precise equitable allocation of response costs" because a court must determine each PRPs share of fault at trial. *Hobart Corp.*, 2016 U.S. Dist. LEXIS 202349, at *67.  The pro rata approach places the risk of a deficient settlement with the plaintiff because the defendants who proceed to trial will not be forced to pay more than the proportionate share of the liability.  But the pro rata approach is "potentially at odds with CERCLA's goals of ensuring prompt and efficient cleanup of hazardous waste sites and placing the costs of those cleanups on the PRPs." *Id.* (citation and internal quotations omitted); *see also Am. Cyanamid Co. v. Capuano*, 381 F.3d 6, 20 (1st Cir. 2004) (citation omitted) (the pro rata approach "can lead to a 'complex and unproductive inquiry' and may be unrealistic in situations where waste was deposited by hundreds of polluters for years, if not decades, prior to the litigation.").  When there are several PRPs, the pro rata approach "encourages defendants to hold out until a fault-based allocation can be made, requiring the plaintiff to continuing litigating and thereby reduce its net recovery." *Veolia Es Special Servs., Inc. v. Hiltop Invs. Inc.*, No. CIV.A. 3:07-0153, 2010 WL 898097, at *7 (S.D.W. Va. Mar. 12, 2010); *AmeriPride Servs. Inc.*, 782 F.3d at 487.

The Sixth Circuit has not addressed which method should be applied when crediting private-party CERCLA settlements. The Supreme Court has also not addressed this issue. In *McDermott, Inc. v. AmClyde*, 511 U.S. 202 (1994), an admiralty case, Court explained that the pro rata method was preferred in admiralty cases and highlighted the potential for unfairness with the pro tanto approach:

> "Sometimes the pro tanto approach will better promote settlement. This beneficial effect, however, is a consequence of the [potentially inequitable apportionment of liability] discussed above. The rule encourages settlements by giving the defendant that settles first an opportunity to pay less than its fair share of the damages, thereby threatening the nonsettling defendant with the prospect of paying more than its fair share of the loss. By disadvantaging the party that spurns settlement offers, the pro tanto rule puts pressure on all defendants to settle. While public policy wisely encourages settlements, such additional pressure to settle is unnecessary."

*Id.* 214–15. However, as the Ninth Circuit has explained, *McDermott* is not controlling in CERCLA cases because of the different considerations at play in CERCLA cases:

> "In *McDermott*, the Supreme Court concluded that the UCFA proportionate share approach was 'superior' to the UCATA pro tanto approach in admiralty because it was consistent with the rule that damages in an admiralty suit be assessed on the basis of proportionate fault. CERCLA has no similar rule. Rather, we have recognized that CERCLA contemplates that responsible parties who fail to enter into an early settlement agreement 'may ultimately bear a disproportionate share of the CERCLA liability.' *United States v. Coeur d'Alenes Co.*, 767 F.3d 873, 875 (9th Cir. 2014)."

*AmeriPride Servs. Inc.*, 782 F.3d at 487 (internal citation and quotations omitted); *Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d at 308 (explaining that *McDermott* is not controlling in CERCLA cases, and adopting rule requiring application of the pro tanto method in CERCLA cases). The Ninth Circuit and the First Circuit, weighing the advantages and disadvantages of each approach, take the position that district courts have discretion to determine the most equitable method of crediting private-party settlements in a particular CERCLA case. *AmeriPride Servs. Inc.*. 782 F.3d at 488; *Am. Cyanamid Co.*, 381 F.3d at 20. The Seventh Circuit *mandates*

8

application of the pro tanto approach in private-party CERCLA cases. *Akzo Nobel Coatings, Inc.*, 197 F.3d at 308. No circuit mandates application of the pro rata approach on private-party CERCLA settlements.

This Court agrees with the reasoning of the Ninth Circuit and the First Circuit. *AmeriPride Servs. Inc.*. 782 F.3d at 488; *see also Am. Cyanamid Co.*, 381 F.3d at 21 ("CERCLA provides the district court with the discretion to allocate response costs among liable parties, and we believe that determining how a settlement affects the liability of the non-settling parties is within that discretion."). The Court has "discretion to choose a method to allocate liability to non-settling defendants in private-party contribution actions under CERCLA," the Court "must exercise this discretion in a manner consistent with § 9613(f)(1) and the purposes of CERCLA." *AmeriPride Servs.*, 782 F.3d at 488 "Choosing a method that would discourage settlement or produce plainly inequitable results could constitute an abuse of discretion." *Id.* Thus, the Court must apply a method best calculated to accomplish the goals of CERCLA while still ensuring that each settlement is fair to non-settling Defendants.

In this case, the pro tanto method is most consistent with the goals of CERCLA. It will encourage prompt settlements, lead to a faster cleanup of the Closed Loop facilities, and will not lead to "plainly inequitable results[.]" *Id.*

### 2. The pro tanto method is preferred based on the circumstances of this case

The Court has utilized the pro tanto method in each of the prior opinions approving settlements between Plaintiffs and PRPs. The Court explained in its August 2020 opinion that "the Court [was] confident that application of the pro tanto approach will best serve the purposes of CERCLA at this time" but did not commit to crediting all settlements in the case pro tanto, thus

9

leaving the door open for non-settling defendants to object to future settlements seeking to utilize the pro tanto approach. *Garrison Southfield Park LLC*, 2020 WL 4435130, at *11.

The Court now finds it appropriate to commit to applying the pro tanto approach to all settlements in this case. Inconsistent application of the pro rata method, after already crediting over 20 settlements in this case pro tanto, will hamstring this litigation and "thwart CERCLA's goal of encouraging settlements[.]" *Hobart*, 2016 U.S. Dist. LEXIS 202349, at *66. Failing to commit to a single approach after three years of litigation will create uncertainty in settlement negotiations and will increase litigation costs for all parties by requiring the re-argument of this issue on every motion for settlement. Applying the pro rata approach could also lead to a confusing and inefficient apportionment of liability should this case proceed to trial. The remaining parties would be required to litigate the proportionate share of fault of Defendants dismissed from this litigation years prior to the trial. Even then, it is far from a guarantee that the Court will be able to make an accurate apportionment of proportionate fault among the parties remaining at trial.

While the OEM Defendants added in the Second Amended complaint were not parties to the litigation when the Court approved prior settlements—and therefore did not have the opportunity to raise arguments against application of the pro tanto approach on the prior settlements—the pro tanto approach is warranted for more reasons than just consistency and judicial efficiency. Encouraging prompt settlement and cleanup of hazardous waste sites is paramount in CERCLA cases. *Veolia Es Special Servs., Inc.*, 2010 WL 898097, at *7; *AmeriPride Servs.*, 782 at 486 (citation omitted) (explaining that flexibility to choose a particular method as equity in a particular case dictates furthers "CERCLA's core purposes of 'foster[ing] settlement through its system of incentives and without unnecessarily further complicating already complicated litigation.'"). Leaving the pro rata approach on the table only incentives the Objecting

Defendants to hold out until a fault-based allocation can be made. Committing to the pro tanto approach places all Defendants on notice "that responsible parties who fail to enter into an early settlement agreement 'may ultimately bear a disproportionate share of the CERCLA liability.'" *AmeriPride Servs. Inc*., 782 F.3d at 487 (citing *Coeur d'Alenes Co.*, 767 F.3d at 875). This approach thus encourages PRPs to come to the table and commit a fair share toward cleaning up the 100 million+ pounds of hazardous e-waste left at the Closed Loop facilities.

True, the pro tanto method shifts the risk of a shortfall onto non-settling defendants, and therefore leads to a higher risk of unfairness to those defendants. But the circumstances of this case do not give rise to a concern of unfairness so great as to outweigh the important goals of encouraging prompt settlement and private cleanup of the Closed Loop facilities. *See, e.g.*, *Hobart*, 2016 U.S. Dist. LEXIS 202349, at *68 ("Not only is the pro tanto approach generally more conducive to achieving CERCLA's goals, but it is the better approach given the circumstances of this particular case."); *Veolia Es Special Servs., Inc. v. Hiltop Invs. Inc.*, No. CIV.A. 3:07-0153, 2010 WL 898097, at *7 (S.D.W. Va. Mar. 12, 2010) (concluding that, under the circumstances of the case, the pro tanto method was appropriate). Plaintiffs, through an agreement with the Ohio EPA, are already financing the cleanup of the Closed Loop facility. They do not have an incentive to accept disproportionately low offers to settle. *See, e.g.*, *Hobart*, 2016 U.S. Dist. LEXIS 202349, at *67–68 ("In a typical CERCLA contribution case, the plaintiffs are also PRPs, and often face significant liability for the response costs at the site."). And the fact that each settlement will shift risk onto non-settling parties is something for which the Court will account in evaluating the substantive fairness of each settlement.

In sum, under the circumstances of this case, the pro tanto method is most consistent with the purposes of CERCLA and will lead to a fair and efficient outcome of this case.

## B. Evaluation of the Proposed Sony Settlement

Plaintiffs and Sony seek the Court's approval of their settlement. (ECF No. 616.) Sony is the first OEM added to this case in the Second Amended Complaint to enter a settlement with Plaintiffs. The Second Amended Complaint alleges Sony arranged for the transport of e-waste to the Closed Loop facilities from 2012 to 2016 "in an effort to demonstrate compliance with extended producer responsibility obligations under various state e-waste recycling laws." (Second Am. Compl. ¶ 38.) Ten Defendants oppose the proposed settlement—nine Defendants have filed a response in opposition while the tenth Defendant, Samsung Electronics America, Inc., joined Defendant Electronic Manufacturers Recycling Management Company's objections. The Court will refer to this group collectively as "Objecting Defendants."

### 1. The settlement agreement

Under the proposed settlement agreement, Sony agrees to pay Garrison and Olymbec $1.2 million as its share of the environmental cleanup costs at the Closed Loop facilities. (Settlement Agreement, Appendix A, ECF No. 616-2.) The agreement is contingent upon a contribution bar— an order from this Court that the Court "discharge and bar all past, and future counterclaims, cross-claims, and other claims relating to the Facility, as contemplated by this Agreement, including claims for contribution against [Sony] by any person or entity, except for Non-Released Claims[.]" (*Id.* at ¶ 6.) Once approved, the settlement amount will be placed into escrow pursuant to an agreement between Garrison, Olymbec, and the Ohio EPA to fund cleanup of the Closed Loop site. (Settlement Agreement at ¶ 5; Ex. G., ECF No 616-8.) Originally, the agreement was also contingent upon an order that the settlement be credited pro tanto, and not pro rata, (*id.*), but Plaintiffs and Sony indicated in their reply brief (in response to Objecting Defendants' opposition to the pro tanto method) that they will accept the settlement credited pro rata. (ECF No. 667 at

36.) However, Plaintiffs make clear that their acquiescence to pro rata allocation only applies to the Sony settlement and that pro tanto is still superior in CERCLA cases. (*Id.* at 36–40.)

In the prior settlements approved in this case, Plaintiffs relied on a "straightforward cost recovery formula in settlement negotiations that allocates a percentage of the remediation costs to each PRP based on records that identify the total weight of E-Waste that the PRP shipped to the Facility, as compared to the total weight of the E-Waste shipped by all PRPs." *Garrison Southfield Park LLC*, 2020 WL 4435130, at *8. Plaintiffs deviate from that formula now, asserting that, as an OEM (unlike prior settlors in the case), it is "exceedingly difficult to ascribe" specific weights of e-waste to support the same formula used for prior settlements. (Heisler Decl. ¶ 12, ECF No. 616-3.) Plaintiffs place significant weight on Sony's national market share for electronics. Plaintiffs estimate that Sony's national market share is approximately 4.38% for the type of equipment found at the Closed Loop facility. (Furman Decl. ¶ 4, ECF No. 667-1.) According to Plaintiffs:

> "OEMs are subject to various state [extended producer responsibility ("EPR")] laws requiring them to arrange for the disposition and treatment of E-Waste in exchange for authorization to sell electronic equipment in that state. State EPR laws thus create a basis for CERCLA arranger liability for those OEMs that elect to participate in the electronic equipment market, but in a way that is different from CERCLA arranger liability for the prior Settlors, which contracted directly with Defendant Closed Loop. An OEM's EPR obligation to any given state is generally based on the OEM's market share."

(Heisler Decl. ¶ 12.)

Plaintiffs assert that, in reaching the settlement, Plaintiffs considered:

> "(a) information provided by Settlor regarding Settlor's national market share of the electronic equipment sales that generate the type of E-Waste abandoned at the Facility; (b) Settlor's commitment from the outset of settlement negotiations to participate in the funding of cleanup activities; (c) Settlor's commitment to continue to cooperate with Plaintiffs; (d) records and information provided by the Settlor relevant to the matter; (e) the availability of settlement proceeds to address a portion of the growing orphan share created by other PRPs, including PRPs that are

13

> bankrupt, defunct, dissolved, or otherwise lack ability to pay; and (f) the inclusion
> of a 'No Windfall' provision in the Settlement Agreement designed to prevent a
> double recovery by Plaintiffs."

(*Id.* at ¶ 13.)  Plaintiffs claim that, based on this information, $1.2 million is a fair, reasonable,

and adequate settlement.  (*Id.* at ¶ 15.)  Plaintiffs claims that the discovery necessary to attribute

specific weights of e-waste to Sony would be "costly and potentially inconclusive" because of

the way OEMs dispose of e-waste in order to comply with state EPR obligations.  (*Id.* at ¶ 12(b).)

### 2. Analysis

Objecting Defendants raise various challenges the fairness of the settlement agreement.

While there are nine different memoranda in opposition to the proposed settlement, the objections

raised largely overlap.  First, the Objecting Defendants uniformly challenge application of the pro

tanto method.  The Court resolved this issue above and will apply the pro tanto method.  Second,

Objecting Defendants maintain that the settlement is premature.  No discovery has been conducted

regarding Sony because Sony was only recently added to the litigation before reaching a

settlement.  Third, Objecting Defendants object to the market share/EPR credit method Plaintiffs

used to calculate Sony's share of the cleanup costs.  Fourth, Objecting Defendants challenge the

breadth of the contribution bar, arguing that it is too broad, particularly because the settlement will

be credited pro tanto.

The Court agrees with Objecting Defendants' argument that the Sony settlement is

premature.  Objecting Defendants present evidence that Sony directed at least "11,040,671

pounds" of e-waste to the Closed Loop facility through contracts with Defendant RCRR

specifying that the waste would be transported to Closed Loop.  (Whyte Aff. ¶ 13, ECF No. 653-

1; ECF No. 645 at 5; ECF No. 653 at 6–10.)  This evidence undercuts Plaintiffs' contention that

the discovery necessary to attribute specific amounts of e-waste to Sony would be "costly and

14

potentially inconclusive" and suggests that Sony may be in possession of records showing that it is responsible for a greater share of the e-waste at the Closed Loop facilities than the current proposed settlement accounts for.

Defendant MRM, joined by Defendant Samsung, raises the compelling argument that "Discovery would [ ] likely show that Settlor directed its third-party recyclers to send as much material as possible to Closed Loop—while receiving proof of such deliveries—and that these materials comprised a significant portion of the CRT glass found at the warehouses in this litigation." (ECF No. 642 at 18; ECF No. 646.) While the EPR market share method utilized by Plaintiffs for OEM Defendants bears a rational connection to Closed Loop, that method may be arbitrary if evidence exists showing that Sony played a more significant role in directing CRT materials to Closed Loop than other OEM Defendants that have a larger market share. This evidence may or may not exist. But the Objecting Defendants are entitled to conduct some level of discovery to find out, unless Plaintiffs and Sony can present the Court with a more specific showing that the proposed settlement is fair.

As the court in *Hobart* recognized, "*some* discovery is obviously needed before the fairness of any proposed settlement can be assessed[.]" *Hobart*, 2016 U.S. Dist. LEXIS 202349, at *71 (emphasis in original). This proposition does not mean that "no pro tanto settlement can be approved until all discovery is complete, and each party's proportionate liability conclusively established[.]" *Id.* That rule "would defeat any possibility for early settlement, thereby thwarting CERCLA's goals." *Id.* But here, no discovery has been conducted. Plaintiffs assert that Sony's "market share was simply one factor that Plaintiffs and Settlor considered in reaching a fair settlement, along with available records and other factors reflecting Settlor's nexus to the e-waste at the Properties." (ECF No. 667 at 20.) But Plaintiffs do not provide specific information about

15

those other "available records." Plaintiffs and Sony seem to recognize as much; they abandoned their initial request to credit the settlement pro tanto in an effort to expedite approval of the settlement agreement. Indeed, in replying to the objections regarding the breadth of the proposed settlement's contribution bar, Plaintiffs argue that those objections may be moot now "given Plaintiffs' willingness to agree to a pro rata application for [Sony]." (ECF No. 667 at 40.) And they also contend that "pro rata allocation for this settlement will moot the Objecting Defendants' insistence on discovery or a fairness hearing against Settlor, since Plaintiffs alone [would] bear any risk that Settlor's payment is too low." (*Id.* at 39.) But, as discussed earlier, the circumstances of this case now dictate uniform application of the pro tanto method in crediting approved settlements.

At bottom, while CERCLA does not require "mathematical precision," *Cannons Eng'g Corp.*, 899 F.2d at 90, the Court cannot determine on the evidence before it that the $1.2 million settlement—credited pro tanto and combined with a broad contribution bar—is fair, reasonable and adequate under CERCLA. *Responsible Envtl. Sol. All.*, 2011 WL 382617, at *2 (quoting *Akzo Coatings*, 949 F.2d at 1435). Plaintiffs' and Sony's motion for settlement approval is therefore **DENIED** due to an insufficient showing of substantive fairness.

### C. Evaluation of the Proposed Kuusakoski Settlement

The Court turns next to Plaintiffs' and the Kuusakoski Defendants' Motion for Settlement Approval.[2] (ECF No. 669.) The Second Amended Complaint alleges that, "[s]tarting in 2012 and extending into 2016, Defendant Kuusakoski Inc. and/or one or more of its related entities, Defendants Kuusakoski US LLC, Kuusakoski Recycling, and Vintage Tech, arranged for the

---

[2] The "Kuusakoski Defendants" consist of Defendants Kuusakoski, Inc., Kuusakoski US LLC, Kuusakoski Glass Recycling LLC, Vintage Tech, LLC a.k.a. Vintage Tech Recyclers, Inc., and Vintage Tech Recycling ("Vintage Tech"). (ECF No. 669 at 1.)

transport of over 46 million pounds of CRTs and other e-waste to the Properties, representing more than 35% of the total amount of e-waste abandoned by Defendant Closed Loop at the Properties." (Second Am. Compl. ¶ 12.) Plaintiffs allege that the Kuusakoski Defendants "were the top CRT shipper to the Properties[.]" (*Id.* at ¶ 251.)

The following Defendants object to the settlement: Defendant ASUS Computer International ("ACI") (ECF No. 699); Defendant L.G. Electronics, U.S.A., Inc. ("LG") (ECF No. 703); Defendant GEEP USA, Inc. and GEEP Holdings, Inc. (ECF No. 704): Defendant Samsung Electronics America, Inc. ("Samsung") (ECF No. 706); and Defendant Electronic Manufacturers Recycling Management Company ("MRM" (ECF No. 707). The Court will refer to this group collectively as "Objecting Defendants."

### 1. The Settlement Agreement

The proposed settlement agreement between Plaintiffs and the Kuusakoski Defendants is by far the most significant settlement to date in this litigation. Like the previous approved settlements in this case, Plaintiffs used a "straightforward cost recovery formula in settlement negotiations that allocates a percentage of the response costs to each PRP based on records that identify the total weight of E-Waste that the PRP shipped to the Facility, as compared to the total weight of the E-Waste shipped by all PRPs." (Heisler Decl. ¶ 11, ECF No. 669-3.) Plaintiffs then applied this percentage to the combined cleanup cost estimate of $21,933,193. Using this formula, Plaintiffs calculated [the Kuusakoski's Defendants'] share for settlement purposes at $8,242,482." (*Id.*) However, Plaintiffs state that:

"exceptions to this formula may be made for some PRPs when circumstances warrant. In this case, Plaintiffs have taken into consideration additional information provided by Settlor that is relevant to the matter, including actionable information regarding the identity and role of other PRPs, including original equipment manufacturers, as well as Settlor's commitment to continue to cooperate with Plaintiff. Plaintiffs have also taken into consideration the fact that Settlor obtained

and paid the premiums for pollution legal liability insurance that provided coverage
for cleanup costs."

(*Id.*) Based on those additional factors, Plaintiffs arrive at a settlement figure of $6 million, representing approximately 73% of the e-waste the Kuusakoski Defendants' shipped to the Closed Loop facilities. (*Id.*) Specifically, the settlement agreement identifies that the Kuusakoski Defendants arranged for the transport of 49,047,630 pounds of e-waste to the Closed Loop facilities. (Settlement Agreement, Appendix A, ECF No. 669-2.)

The settlement is also contingent on the Court issuing a "contribution bar"—an order that will "discharge and bar all past, present, and future counterclaims, cross-claims, and other claims relating to the Facility, as contemplated by this Agreement and consistent with past court approved settlement agreements, including claims for contribution under 42 U.S.C. § 9613(f)(1), which have been made or could be made against SETTLOR by any person or entity, except for Non-Released Claims[.]" (*Id.* at ¶ 6.) Furthermore, the agreement is contingent on an order that the Court credit the agreement "pro tanto, and not pro rata, in determining the equitable share at trial of defendants other than [the Kuusakoski Defendants]." (*Id.*)

If approved, the $6 million settlement proceeds will be used by Plaintiffs to "pay necessary removal or remediation costs that Ohio EPA determines are consistent with the U.S. Environmental Protection Agency National Contingency Plan in 40 C.F.R. Part 300." (*Id.* at ¶ 5 (a).) The settlement also contains a "reopener." (*Id.* at ¶ 9.) The reopener allows Plaintiffs to seek further relief if "significant new information is discovered" that the Kuusakoski Defendants were affiliated with another non-settling PRP, or that the weight of the materials attributable to the Kuusakoski Defendants was at least 500,000 pounds in excess of the 49,047,630 pounds identified in Appendix A to the agreement. (*Id.*) It also contains a "No Windfall" provision specifying that Plaintiffs will refund a proportionate amount if the funds recovered from other PRPs exceed

exceed the environmental investigation and cleanup costs, attorneys' fees, consultant fees, lost rent, and other costs incurred by" Plaintiffs. (*Id.* at ¶ 13.)

### 2. Analysis

The Court must now analyze whether the settlement agreement is procedurally and substantively fair. *Responsible Envtl.*, 2011 WL 382617, at *2 (citing *Cannons Eng'g Corp.*, 899 F.2d at 86). Evaluating the settlement and considering the objections raised in the parties' thorough briefing, the settlement agreement satisfies procedural fairness; however, it does not satisfy substantive fairness because Plaintiffs' and the Kuusakoski Defendants' proposed contribution bar is overbroad.

Starting with procedural fairness, the parties were represented by independent counsel and engaged in good faith negotiations. (Heisler Decl. ¶ 13, ECF No. 669-3; Womack Decl. ¶ 13, ECF No. 669-4.) The parties represent that they retained the services of an independent, third-party mediator with experience in CERCLA litigation to facilitate the settlement. (ECF No. 722 at 15.) They further represent that the mediator, along with two assistants, "dedicated nearly 160 hours over a five-month period of time to complete the mediation that resulted in settlement." (*Id.*)

Defendant Samsung and Defendant LG argue that the agreement does not satisfy procedural fairness. (ECF No. 703 at 6; ECF No. 706 at 23.) Samsung argues that it did not have equal access to the information underlying the settlement because the OEM defendants were only recently added to the litigation. (ECF No. 706 at 23.) Plaintiffs' reply indicates that they will allow for additional time for the new "OEM Defendants to evaluate this process—specifically, to allow for additional time for the new OEM Defendants to review prior productions and to submit a supplemental response to the Motion thereafter based on this additional review for the limited

purpose of commenting on the Settlement Agreement's substantive fairness." (ECF No. 722 at 15.)

Defendant LG claims that it should be allowed discovery on the financial status of the Kuusakoski Defendants "if the ability to pay beyond insurance proceeds is a factor in the $2.2 million discount as alluded to in" the settlement motion. (ECF No. 703 at 6–7.) That LG does not have discovery on the Kuusakoski Defendants' financial status, however, does not render the agreement procedurally unfair. Objecting Defendants have pointed to nothing about the bargaining process or the parties' representation that overcomes the presumption of procedural fairness when parties voluntarily enter a settlement. *See 3M Co.*, 2014 U.S. Dist. LEXIS 63934, at *12 (citing *Akzo Coatings*, 949 F.2d at 1436). Samsung argues that approving the contribution bar would be procedurally unfair, but this argument goes to the substantive fairness of the agreement. (ECF No. 706 at 24.) The agreement satisfies procedural fairness.

More difficult here is the question of substantive fairness. Recall that, in evaluating substantive fairness, "settlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Cannons Eng'g Corp.*, 899 F.2d at 87.

Objecting Defendants raise several challenges to the substantive fairness of the proposed settlement. These challenges can be grouped into three categories: (a) challenges to apportionment of liability; (b) the settlors' request to credit the settlement pro tanto; and (c) the settlors' request to approve the agreement's contribution bar. Plaintiffs and the Kuusakoski Defendants make a sufficient showing of substantive fairness as to the first two categories, but the proposed contribution bar pushes the proposed settlement outside the bounds of substantive fairness.

20

### a. Fair apportionment of liability

In the proposed settlement, Plaintiffs utilized the volumetric cost-recovery formula utilized in the prior approved settlements in this case. The Court discussed at length in those opinions why this formula is substantively fair. *See Garrison Southfield Park LLC*, 2020 WL 4435130, at *8; *Garrison Southfield Park LLC*, 2019 WL 3997683, at *4.

The bigger issue on this motion is whether the Plaintiffs' rationale for the "discount" given to the Kuusakoski Defendants is adequate. Utilizing the volumetric approach this Court approved in prior settlements, Plaintiffs calculated the Kuusakoski Defendants' share of the e-waste at the Closed Loop facilities at $8,242,482." (Heisler Decl. ¶ 11, ECF No. 669-3.) But Plaintiffs and Kuusakoski Defendants agreed to a settlement of $6 million, taking into account "additional information provided by Settlor . . . including actionable information regarding the identity and role of other PRPs, including original equipment manufacturers, as well as Settlor's commitment to continue to cooperate with Plaintiff. Plaintiffs have also taken into consideration the fact that Settlor obtained and paid the premiums for pollution legal liability insurance that provided coverage for cleanup costs." (*Id.*) Additionally, the Kuusakoski Defendants maintain liability and allocation defenses, creating uncertainty as to the ultimate amount recoverable. (Ford Decl. ¶ 5, ECF No. 669-5; ECF No. 669 at 7.)

In reaching a CERCLA settlement, parties may "factor into the equation any reasonable discounts for litigation risks, time savings, and the like that may be justified." *United States v. Davis*, 261 F.3d 1, 26 (1st Cir. 2001) (citing *United States v. Charles George Trucking, Inc.*, 34 F.3d 1081, 1087 (1st Cir. 1994)). Even if a party's "case is sturdy, it may take time and money to collect damages or to implement private remedial measures through litigatory success. To the extent that time is of essence or that transaction costs loom large, a settlement which nets less than

full recovery of cleanup costs is nonetheless reasonable." *Cannons Eng'g Corp.*, 899 F.2d at 90. And it is not this Court's role to determine whether the settlement is the "best possible settlement that could have been obtained, but only whether it is fair, adequate and reasonable." *Akzo Coatings*, 949 F.2d at 1436.

Considering the foregoing, the Court finds that the $6 million apportionment is fair, adequate, and reasonable. While the Kuusakoski Defendants are not paying for 100% of the e-waste attributable to them as calculated by Plaintiffs, 100% recovery is not required for a Court to approve a CERCLA settlement. *See Cannons Eng'g Corp.*, 899 F.2d at 90. Plaintiffs' have provided plausible explanations for the discount: the value of the information provided by the Kuusakoski Defendants regarding other PRPs, the litigation uncertainty created by the Kuusakoski Defendants legal defenses, and the ability to commit funds toward the cleanup costs through the Kuusakoski Defendants' liability insurance that provide coverage for cleanup costs. Indeed, the certainty of the Kuusakoski Defendants' committing $6 million *now*, as opposed to the uncertain amount that may be recovered potentially years down the line, is valuable in and of itself. CERCLA's primarily goal is to facilitate the prompt cleanup of hazardous waste sites. That amount would immediately go toward the cleanup effort at the Closed Loop facilities, furthering CERCLA's goal of prompt, private remediation.

Objecting Defendants argue that more discovery is necessary. But Plaintiffs have obtained enough discovery to determine the exact amount of CRT materials attributable to the Kuusakoski Defendants. And Plaintiffs have given the newly added OEM Defendants additional time to review this discovery. As this Court explained in its prior settlement orders, "lengthier and more thorough examination of discovery would likely yield greater accuracy in apportionment of liability[.]" *Garrison Southfield Park LLC*, 2020 WL 4435130, at *9. But Plaintiffs and

22

Kuusakoski Defendants "have sensibly resolved their disputes in a manner that aligns with CERCLA's principal purposes which include the achievement of prompt settlement and a concomitant head start on response activities." *Id.* (citing *Akzo Coatings*, 949 F.2d at 1433) (internal quotations omitted).

Objecting Defendants also argue that the Plaintiffs' allocation will result in a double recovery if they are permitted to pursue claims against OEM Defendants. (*See, e.g.*, ECF No. 699 at 8; ECF No. 703 at 18; ECF No. 706 at 24.) They argue that claims cannot be maintained against an OEM Defendant based on the same material attributable to the Kuusakoski Defendants. The Court disagrees. OEM Defendants, if they arranged for the transport of hazardous CRT material to Closed Loop, are jointly and severally liable the site contamination. 42 U.S.C. § 9607. And contrary to Objecting Defendants' argument, § 9614(b) does not prevent Plaintiffs from pursuing cleanup costs against OEM Defendants based on waste for which another Defendant also bears responsibility. That section states that "[a]ny person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law." *Id.* By its terms, that section applies to recovery under "any *other* State or Federal law." *Id.* Furthermore, the concept of double recovery is meant to prohibit a plaintiff from receiving a windfall. There is no indication that Plaintiffs in this case will recover more than necessary to remediate the Closed Loop facilities. To the extent Plaintiffs may eventually recover more than is necessary to remediate the Closed Loop facilities, the inclusion of the no-windfall provision in the settlement agreements in this case will prevent Plaintiffs from ultimately receiving a windfall.

Lastly, Defendant ACI argues that the proposed settlement ignores the operator (Closed Loop's) share of liability. (ECF No. 699 at 8.) The Court addressed this argument in its August 2020 settlement approval:

> "In a real sense, Plaintiffs cannot expect to recoup cleanup costs from defunct entities, and little would have been gained through settlement efforts directed towards that end. The Court also notes that Plaintiffs are attempting to recoup certain costs from the insurance agencies that covered the aforementioned entities, but there is no guarantee that those efforts will bear fruit since, as Plaintiffs contend, the insurance carriers are litigating against their claimed liability."

*Garrison Southfield Park LLC*, 2020 WL 4435130, at *9. In sum, $6 million apportionment is fair, adequate, and reasonable, and is consistent with the purposes of CERCLA.

### b. Pro tanto allocation

All Objecting Defendants challenge Plaintiffs' and the Kuusakoski Defendants' request that the settlement be credited pro tanto. For the reasons the Court discussed in Part II.A. of this opinion, the Court finds it appropriate to credit all settlements in this case pro tanto. While the pro tanto allocation of the $6 million settlement would place all remaining Defendants at risk of having to make up the potential shortfall, that is precisely the reason so many courts approve of the pro tanto method in CERCLA cases. *See, e.g.*, *Action Mfg. Co. v. Simon Wrecking Co.*, 428 F. Supp. 2d 288, 326 (E.D. Pa. 2006), *aff'd sub nom. Action Mfg., Co. v. Simon Wrecking Co.*, 287 F. App'x 171 (3d Cir. 2008) ("In a pro tanto scheme, there is incentive for contribution defendants to settle early, because if they wait to settle and force plaintiff PRPs to litigate against them, they would likely face increased liability as a result of the favorable settlements of other PRPs."); *Veolia Es Special Servs., Inc.*, 2010 WL 898097, at *7 ("As several courts have found, the promotion of settlement early in the proceedings, though favorable in all litigation, takes on special importance in the context of CERCLA."); *Hobart*, 2016 U.S. Dist. LEXIS 202349, at *66 ("As several courts have noted, the pro tanto approach facilitates the goals of CERCLA").

24

### c. Contribution bar

Objecting Defendants Samsung, LG, and MRM challenge the settlement's contribution bar as overbroad and beyond the Court's power under CERCLA.  (ECF No. 706 at 13; ECF No. 703 at 10; ECF No. 707 at 16.)  The proposed contribution bar reads that the Court will "discharge and bar all past, present, and future counterclaims, cross-claims, and other claims relating to the Facility, as contemplated by this Agreement and consistent with past court approved settlement agreements, including claims for contribution under 42 U.S.C. § 9613(f)(1), which have been made or could be made against SETTLOR by any person or entity, except for Non-Released Claims[.]" (Settlement Agreement ¶ 6, ECF No. 669-2.)

The precise issue in dispute is whether "other claims relating to the Facility . . . including claims for contribution under 42 U.S.C. § 9613(f)(1)" includes claims for express breach of contract and contractual indemnification.  Objecting Defendants oppose the contribution bar as unfairly prejudicial because, under Plaintiffs' and Kuusakoski Defendants' reading, contractual indemnification claims qualify as "claims for contribution."  (ECF No. 722 at 32.)  Defendants Samsung, LG, and MRM each contracted with Defendant Vintage Tech (a Kuusakoski Defendant) to handle recycling of electronic materials and claim that Vintage Tech breached that contract and must indemnify them pursuant to the contract.  (ECF No. 706 at 13; ECF No. 703 at 10; ECF No. 707 at 16.)  After Defendant Samsung was added to this lawsuit in August 2020, Samsung requested indemnification from Vintage Tech under the contract.  (ECF No. 706 at 13.)  After Vintage Tech rejected Samsung's indemnification request, Samsung filed suit against Vintage Tech in the U.S. District Court for the Southern District of New York for breach of contract.  (*Id.*)

This Court has approved the same contribution bar now at issue in the prior 24 settlement approvals in this case and expressly barred contract claims.  But the Objecting OEM Defendants

were not parties to the case when those settlements were reached.  And whether a contribution bar should extend to express contract claims was not at issue on those prior settlement motions because there were no parties to the case asserting rights to maintain contract claims against the settling Defendant.  While contribution bars are key tools for incentivizing settlement in CERCLA cases— and while ensuring prompt remediation of the hazardous waste at the Closed Loop facilities is paramount—Plaintiffs and the Kuusakoski Defendants ask the Court to exceed the bounds of substantive fairness in extinguishing Vintage Tech's contractual obligations to non-settling Defendants.

Federal courts may approve private-party CERCLA settlements barring contribution claims against the settling defendant. *Responsible Env't Sols. All.*, 2011 WL 382617, at *4–5; *see also, e.g.*, *San Diego Unified Port Dist. v. Gen. Dynamics Corp.*, No. 07-CV-01955-BAS-WVG, 2017 WL 2655285, at *10 (S.D. Cal. June 20, 2017) (barring all claims by any party for contribution "regardless of whether they are brought pursuant to any federal or state statute, common laws, or any other theory[.]"). Such contribution bars "rest[ ] on equitable considerations . . . and foster the voluntary settlement of complex CERCLA lawsuits, a goal which is worthy of being furthered." *Id.*  As one court explained:

> "It is hard to imagine that any defendant in a CERCLA action would be willing to settle if, after the settlement, it would remain open to contribution claims from other defendants. The measure of finality which a cross-claim bar provides will make settlements more desirable. A settling defendant therefore 'buys its peace' from the plaintiff, as being relieved of liability to co-defendants frees the settling defendant from the litigation."

*Allied Corp. v. ACME Solvent Reclaiming, Inc.*, 771 F. Supp. 219, 222 (N.D. Ill. 1990).

Plaintiffs and the Kuusakoski Defendants cite to no case in which a court has approved a private-party CERCLA settlement that expressly bars breach of contract and contractual indemnification claims of a non-settling PRP against the settling defendant.  In *United States v.*

*Pretty Prod., Inc.*, 780 F. Supp. 1488, 1495 (S.D. Ohio 1991), the Court explained that, unlike "contribution," the right to "indemnity" arises from contract. And because the party seeking equitable indemnification did not allege the existence of a contract, the indemnification claim was merely a contribution claim in disguise. *Id.* The Court went on to explain in dicta: "Even if Pretty Products' claim for indemnification was based on a contractual provision, this Court would be skeptical of any attempt to make an end run around CERCLA's contribution immunity." *Id.* at 1496 n.7; *see also Asarco LLC v. Union Pac. R. Co.*, No. 8:12CV416, 2013 WL 3989181, at *7 (D. Neb. Aug. 2, 2013), *aff'd* 762 F.3d 744 (8th Cir. 2014) (relying in part on *Petty Products* and dismissing contractual indemnification claims because "allow these claims to proceed would again eradicate the contribution protection permitted upon settlement with the government."). The Court's skepticism, however, referred to the contribution bar in § 9613(f)(2)—the CERCLA provision applicable to settlements between the government and a private party. That section provides that a "person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613 (f)(2). The statute contains no such express bar for settlements between private parties. And the OEM Defendants are not attempting to make an end run around contribution immunity *already granted* to a private party through settlement with the government. *Pretty Prod., Inc.*, 780 F. Supp. at 1496 n.7.

Contribution bars in private-party settlements rest on equitable considerations and ultimately fall within the overall substantive fairness analysis. *Id.* § 9613(f)(1); *Responsible Env't Sols. All.*, 2011 WL 382617, at *4–5. Barring statutory and common law contribution claims is one thing. Barring contractual claims is another. Vintage Tech and the OEM Defendants privately allocated liability risks in a bargained-for exchange on top of those risks existing in statute and the

common law. It would be patently unfair to relieve Vintage Tech of its contractual duties through a private settlement with a non-party to those contracts. *See, e.g.*, *United States v. Hardy*, No. C90-0695-L(J), 1992 WL 439759, at *2 (W.D. Ky. Sept. 9, 1992) (stating in dicta that "nothing in the statute operates to prevent enforcement of contractual indemnification rights against settling parties. If a party has a contractual agreement for indemnification, it will not be deprived of protection 'bought and paid for'."); *City of San Diego v. Nat'l Steel & Shipbuilding Co.*, No. 09CV2275 WQH JLB, 2014 WL 3489282, at *20 (S.D. Cal. July 10, 2014) (applying the Uniform Comparative Fault Act and determining that claims for express breach of contract were excluded from the contribution bar in that CERLCA settlement).

Examination of the circumstances surrounding the settlement demonstrates the unfairness of relieving Vintage Tech from its contractual obligations in a settlement that does not include the OEM Defendants. Plaintiffs and Vintage Tech reached the instant proposed settlement shortly after Plaintiffs added these OEM Defendants to the case in the Second Amended Complaint. Through the parties' briefing, it appears that these OEM Defendants were added to this litigation precisely because of their contractual relationship with Vintage Tech. Thus, approving the proposed contribution bar would allow Vintage Tech to cut and run—stripping the OEM Defendants of their bargained-for contractual rights while at the same time leaving them exposed to liability in this case solely because of those contracts. Especially considering the discount the Kuusakoski Defendants are receiving and the Court's preference to credit settlements pro tanto, such a result would in no way be substantively fair. True, leaving the OEM Defendants' contractual indemnification rights in place may disincentivize the Kuusakoski Defendants from settling. That cuts against CERCLA's goal of encouraging prompt settlement. The Court is cognizant of the very real environmental consequences that come with delaying the cleanup of the

28

hazardous CRT waste. But the Court cannot throw all considerations of fairness to non-settling Defendants out the window.

Accordingly, the Court **DIRECTS** Plaintiffs to inform the Court, within **TEN DAYS** of this opinion, whether: (1) Plaintiffs and the Kuusakoski Defendants will accept the Court's approval of the settlement agreement on the understanding that the contribution bar does not extend to claims for express breach of contract and contractual indemnification; or (2) Plaintiffs and the Kuusakoski Defendants intend to withdraw from the settlement. The Court will hold the motion for settlement approval in **ABEYANCE** until Plaintiffs file their notice. Plaintiffs and the Kuusakoski Defendants note that the addition of the OEM Defendants to this case in August 2020 completed the classes of the defendants to this litigation. Plaintiffs and the Kuusakoski Defendants are encouraged to jointly negotiate with the OEM Defendants to resolve the indemnification issue.

### d. Request for a fairness hearing and oral argument

Objecting Defendants also request oral argument and a fairness hearing before the settlement is approved. The Court does not find a fairness hearing necessary to gauge the procedural and substantive fairness of the settlement. The Objecting Defendants have thoroughly briefed their objections. Given the thoroughness of the parties' briefing on the matter, the Court finds that a fairness hearing is not needed. *See, e.g.*, *Hobart*, 2016 U.S. Dist. LEXIS 202349, at *73 ("In this case, the non-settling defendants have had the opportunity to file memoranda in opposition to the motions for approval of the settlement agreements . . . [a]bsent evidence that raises a red flag, there is little need for a substantive 'good faith' fairness hearing.")

### 3. Request that final judgment be entered

Plaintiffs and the Kuusakoski Defendants request that the Court's order be entered as a final judgment under Federal Rule of Civil Procedure 54(b). Because the Court has not yet

approved the settlement agreement, the Court need not consider whether to enter the order as a final judgment.

### III. Motion to Stay

The Kuusakoski Defendants filed a Motion to Stay Response Deadlines and Enjoin Samsung from Proceeding with Duplicative Closed Loop Claims in New York. (ECF No. 708.) The Kuusakoski Defendants ask the Court to (1) stay deadlines for Kuusakoski's response deadlines to LG's cross claims and Samsung's cross claims until resolution of the pending motion to approve settlement, and (2) to enjoin Samsung from proceeding with its contract and indemnification claims in the Southern District of New York against Vintage Tech, until resolution of the pending motion for settlement in this action. (*Id.* at 1–2.)

Considering the foregoing section analyzing the settlement agreement, the Court (1) **GRANTS** the motion as to the response deadlines in this case and **STAYS** the Kuusakoski Defendants' response deadlines for period of **TEN DAYS**; and (2) **DENIES** the motion as to the Kuusakoski Defendants' request to enjoin Samsung from proceeding with its contract and indemnification claims in the Southern District of New York.

### IV. Vintage Tech Motion to Dismiss Samsung Cross Claims

Defendant Vintage Tech also moves to dismiss Defendant Samsung's cross claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (ECF No. 717.) Vintage Tech moves to dismiss on grounds that the pending motion for settlement, if approved, will bar Samsung from maintaining its cross claims for CERCLA contribution, common law contribution, negligence, and declaratory judgment. Considering the Court's decision on the pending motion for settlement, the Court will hold the motion in **ABEYANCE** until Plaintiffs and the Kuusakoski Defendants provide

the Court with notice on whether they intend to proceed with the settlement or withdraw from the settlement.

### V. Motions to File Sur-Reply and to File Under Seal

Defendant Samsung and Defendant LG have filed motions for leave to file a sur-reply to Plaintiffs and the Kuusakoski Defendants' motion for settlement approval and have moved to file certain documents under seal. (ECF Nos. 746, 752.)

In general, "sur-replies are 'highly disfavored, as they usually are a strategic effort by the nonmoving party to have the last word on a matter.'" *Loomis v. Unum Grp. Corp.*, No. 1:20-CV-251, 2021 WL 1928545, at *3 (E.D. Tenn. May 13, 2021) (citing *Crenshaw v. Portfolio Recovery Assocs., LLC*, 433 F. Supp. 3d 1057, 1063 (W.D. Ky. 2020)). "However, a sur-reply may be appropriate when the movant raises new issues in its reply brief, and the decision to permit a sur-reply is one within the Court's discretion." *Id.*

After Objecting Defendants filed their responses in opposition to the motion for settlement between Plaintiffs and the Kuusakoski Defendants, Plaintiff and the Kuusakoski Defendants agreed to give OEM Defendants 30 days to review prior productions in this case and to file supplemental responses addressing the issue of substantive fairness. (ECF No. 722 at 14.)

#### A. Defendant Samsung's Motion

The Kuusakoski Defendants oppose Samsung's motion because Samsung did not seek consent to file a sur-reply pursuant to Local Rule 7.3(b). (ECF No. 747.) However, Local Rule 7.3(b) does not require a party to seek the other parties' consent before moving for leave to file a sur-reply. The Court finds Samsung's proposed sur-reply necessary to inform the Court of the preliminary injunction opinion issued in the Southern District of New York action between

Samsung and Vintage Tech in Case No. 20-cv-10711, which was issued after the replies were filed on the motion for settlement approval with the Kuusakoski Defendants.

Furthermore, this Court has previously granted Samsung leave to file the Master Services Agreement and confidential documents under seal and to file its memorandum on the docket with redactions of those portions that describe the terms of, or quote from, the Master Services Agreements executed between Samsung and Vintage Tech as well as the confidential documents that flow from those Agreements. (ECF No. 727.) Thus, for the same reasons discussed in that Order, the Court will grant Samsung leave to file under seal, subject to the same parameters established in ECF No. 727.

Accordingly, the Court **GRANTS** Samsung's motion for leave to file a sur-reply and to file under seal. (ECF No. 746.)

### B. Defendant LG's Motion

The Kuusakoski Defendants and Plaintiffs oppose LG's motion on grounds that LG's proposed sur-reply does not limit itself to new arguments raised in Plaintiffs' and the Kuusakoski Defendants' reply in support of their motion for settlement approval. (ECF Nos. 754, 755.) The Court agrees. LG's proposed sur-reply does not limit itself to new information contained in the productions made available to the OEM Defendants, nor is it limited to new arguments raised in Plaintiffs' and the Kuusakoski Defendants' reply. The Court therefore **DENIES** LG's Motion. (ECF No. 752.)

### VI. Conclusion

For the foregoing reasons, the Court:

(1) **DENIES** Plaintiffs' Motion for Settlement with Sony Electronics. (Garrison **ECF Nos. 614, 616**; Olymbec **ECF No. 484**.)

(2) Holds in **ABEYANCE** Plaintiffs' Motion for Settlement with the Kuusakoski Defendants. (Garrison **ECF No. 669**; Olymbec **ECF No. 534**.)  Plaintiffs are **DIRECTED** to file a notice within **TEN DAYS** informing the Court whether the parties intend to either (1) accept the Court's approval of the settlement agreement on the understanding that the contribution bar does not extend to claims for express breach of contract and contractual indemnification; or (2) withdraw from the settlement agreement.

(3) **GRANTS IN PART** and **DENIES IN PART** the Kuusakoski Defendants' Motion to Stay and Enjoin. (Garrison **ECF No. 708**; Olymbec **ECF No. 567**.) The Kuusakoski Defendants' deadlines to respond to the cross claims of Defendants LG and Samsung are **STAYED** for a period of **TEN DAYS**.  The motion is denied as to the request to enjoin Samsung from proceeding with its claims in the Southern District of New York.

(4) Holds in **ABEYANCE** Defendant Vintage Tech's Motion to Dismiss.  (Garrison **ECF No. 717**; Olymbec **ECF No. 575**.)

(5) **GRANTS** Defendant Samsung's Motion for Leave to file Sur-Reply to Plaintiffs' Motion Seeking Approval of Settlement with the Kuusakoski Defendants and to File Sur-Reply Under Seal.  (Garrison **ECF No. 746**; Olymbec **ECF No. 605**.)

(6) **DENIES** Defendant LG's Leave to File to File Sur-Reply to Plaintiffs' Motion Seeking Approval of Settlement with the Kuusakoski Defendants and to File Certain Exhibits Under Seal.  (Garrison **ECF No. 752**; Olymbec **ECF No. 612**.)

This case is to remain open.

       **IT IS SO ORDERED.**

<u>9/27/2021</u>                        <u>s/Edmund A. Sargus, Jr.</u>
**DATE**                             **EDMUND A. SARGUS, JR.**
                                     **UNITED STATES DISTRICT JUDGE**